WonderGel, LLC
Casey K. McGarvey (4882)
123 East 200 North
Alpine, Utah 84004
(801) 936-1039
casey@edizone.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE, a Delaware limited liability company,<br><br>                                            Plaintiff,<br><br>vs.<br><br>TEMPUR SEALY INTERNATIONAL, INC., a Delaware corporation,<br><br>                                            Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:16-cv-00162-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff, WonderGel, LLC dba Purple ("Purple"), hereby alleges and claims against

Defendant, Tempur Sealy International, Inc. ("Tempur + Sealy"), as follows:

PARTIES, JURISDICTION & VENUE

1.      Purple is a Delaware limited liability company with its principal place of business

in Alpine, Utah.  All of Purple's members are citizens of the State of Utah.  Purple is not a dba of

EdiZONE, LLC.  EdiZONE, LLC is sister company but it does not make or sell any mattress

products.

2.      Purple is a startup ecommerce company just now entering the consumer mattress

market with a new mattress product it markets solely online, principally through its

www.onpurple.com website, to mattress consumers throughout United States.

3.      Tempur + Sealy is a Delaware corporation with its principal place of business in Lexington, Kentucky.  Tempur + Sealy is a citizen of Delaware and Kentucky.

4.      Tempur + Sealy was formed when Tempur-Pedic International Inc. acquired Sealy Corporation for the strategic purpose of leveraging each company's capabilities in order to increase their combined share of the consumer mattress market.

5.       Tempur + Sealy now is the world's largest bedding provider, having net sales in 2015 of $3.151 billion dollars, and it markets mattress products to consumers throughout the United States.

6.      Tempur + Sealy has integrated the combined businesses of its two predecessor companies into two segments called North America and International, and the North America segment includes segments that previously were called Tempur North America and Sealy.

7.      The Tempur North America and Sealy segments, and now the North America segment, sell primarily through the brick-and-mortar retail store channel and own as subsidiaries Tempur-Pedic North America, LLC located in Lexington, Kentucky and Sealy Mattress Manufacturing Company, Inc. located in Trinity, North Carolina, both of which are registered with the State of Utah and have a registered agent in Salt Lake City, Utah.

8.      Tempur + Sealy sells at least one of the following branded mattresses through various retail stores located throughout the State of Utah: Tempur-Pedic; Tempur; Sealy; Sealy Posturepedic; Optimum by Sealy Posturepedic; and Stearns & Foster.  Those stores include approximately 22 Mattress Firm stores located within the State of Utah.  True and correct copies of pages from Mattress Firm's website, showing some of Tempur + Sealy's many mattress products, are attached as Exhibit 1.  Mattress Firm accounts for more than 10% of Tempur + Sealy's consolidated worldwide net sales.

9.      Tempur + Sealy distributes mattresses with the express intent that they be sold in the State of Utah, conducts continuous and systematic business in the State of Utah and avails itself of the privileges and protections of Utah law.

10.      Tempur + Sealy also has sent to Purple, a citizen of Utah, a threat of suit claiming violations of the federal Lanham Act and thereby causing harm to Purple in the State of Utah as alleged below.  That threat was received through EdiZONE, LLC, a sister company of Purple, who Tempur + Sealy erroneously believed was doing business as Purple.

11.      Having received Tempur + Sealy's threat of suit, Purple is forced to initiate this action for a declaratory judgment and for the recovery of damages caused by that wrongful conduct, including for monopolization under the federal Sherman Antitrust Act.

12.      The matter in controversy, arising from Tempur + Sealy's threat of suit, exceeds the sum or value of $75,000, exclusive of interest and costs.

13.      Tempur + Sealy is subject to personal jurisdiction in the State of Utah and accordingly is a resident of the State of Utah for purposes of venue.

14.      Upon these facts, this Court has subject matter and personal jurisdiction over Tempur + Sealy and venue is proper in this Court.  Subject matter jurisdiction and venue are founded upon 28 U.S.C. §§ 1331, 1332, 1338 and 1391.

## GENERAL ALLEGATIONS

15.      Purple has developed a beneficial mattress product that uses proprietary and patented technologies, and it is in the business of improving lives through selling its mattress product to consumers throughout the United States through the ecommerce channel from its own website.

3

16.     As described through content available on its website, Purple's new mattress product is unique in that it is firm enough to provide necessary support and yet soft enough that pressure is reduced beneath protuberances such as a hip or shoulder.  Purple's mattress technology will firmly support larger surface areas but easily give-way under small surface areas, as visually demonstrated by what Purple calls the raw egg test.  When raw eggs fixed beneath an object with a larger surface area are dropped on the cushioning element of Purple's mattress product that cushioning element is seen to "cradle" the eggs without breaking them.

17.     Purple's new and unique mattress product has the potential of significantly impacting the market for consumer mattresses, much like Tempur + Sealy's old "tempur" pressure relieving material reinvented the consumer mattress market in the 1990's.  Consumers have expressed to Purple their preference of Purple's mattress over previously used mattresses, including brands made by Tempur + Sealy.

18.     On February 22, 2016, Purple received a letter from Tempur + Sealy claiming that Purple was violating the federal Lanham Act, citing 15 U.S.C. § 1125(a)(1)(B), with content on its www.onpurple.com website, specifically including a video linked thereto and available at https://youtu.be/gN9ayoV1EXg .  A true and correct copy of that letter is attached as Exhibit 2.

19.     The video is entitled "How to Use a Raw Egg to Determine if Your Mattress is Awful - #Purple," and in it the Goldilocks character, from the Goldilocks and the Three Bears fable, demonstrates how a raw egg is crushed when placed under pressure on the cushioning elements of mattresses that are relatively "hard," "soft" and even "just right," but not on the cushioning element of Purple's new mattress.  A true and correct copy of the page of Purple's website where there is a link to that video is attached as Exhibit 3.

20.     Tempur + Sealy demands that Purple promptly change its website and video or else Tempur + Sealy will sue Purple for willfully violating Tempur + Sealy's rights in its intellectual property under the Lanham Act.

21.     Purple's website and video do not violate Tempur + Sealy's rights under the Lanham Act.

22.     Purple does not and never has used any of Tempur + Sealy's trademarks on or in its website or video.

23.     Purple only posted the video on its website and used in the video one of the many models of mattresses sold by Tempur + Sealy, but without identifying it as one of Tempur + Sealy's mattress products.

24.     The video plays for a total of 3:58 minutes and shows the outside of the Tempur + Sealy mattress for a total of about 7 seconds in three separate, fast-paced and entertaining scenes involving a lot of visual and auditory content.

25.     It is shown first for approximately 1 second where Goldilocks is falling backward onto and impacts the relatively hard mattress; and the viewer's focus is on Goldilocks and not the design features or brand of the mattress.

26.     It is shown second for approximately 2 seconds after a discussion on egg "cradling" where Goldilocks is standing in front of the relatively hard mattress stating "well if a hard bed is bad at cradling;" and the viewer's focus is on what is being said about "cradling" in the context of mattresses that differ in their relative perception of being hard or soft and not the specific design features or brand of any mattress.

27.     It is shown third, and last, for approximately 4 seconds after asking the viewer to purchase Purple's mattress where Goldilocks is again standing in front of the relatively hard

5

mattress stating "say good-bye to the rock hard prison bed;" and again the viewer's focus is on what Goldilocks is saying about all relatively hard beds and not the specific design features or brand of any mattress.

28.    The Tempur + Sealy mattress is not predominately displayed and no observable features of the design of that model of mattress are highlighted, emphasized or even mentioned.

29.    As displayed, the ordinary consumer would not recognize the Tempur + Sealy mattress as being any particular company's mattress, let alone one of the numerous Tempur + Sealy models.

30.    The Tempur + Sealy mattress is used only to represent any of the numerous brands and models of mattresses made available to consumers by numerous manufacturers that when compared to other mattresses are relatively hard as opposed to soft.

31.    Without identifying Tempur + Sealy or any brand, and only when referring to the mattress generically as representing all relatively hard mattresses, Goldilocks, who is well known from the fable to have tested how different beds subjectively felt to her, states humorously: "Looking for some shoulder pain, try a hard mattress.  It may feel like a rock and put pressure on your hips but it's the perfect way to tell your partner, 'hey baby, want some arthritis.'"; "Well, if the hard bed is bad at cradling, . . ."; and "Say good bye to your rock hard prison bed . . .".

32.    It is true that when compared to a relatively softer mattress a relatively harder mattress subjectively is hard, can cause a user to experience pain, can feel like a rock and can put pressure on a user's hips.

33.    There is no statement or reasonable inference that there is a causal link between a hard mattress and arthritis.  In context, a reasonable consumer only could understand Goldilocks' words "hey baby, want some arthritis" as hyperbole emphasizing the pain one may experience

6

from a relatively hard mattress and not as a statement of the literal cause of any medical condition.

34.     It is true that as "cradling" of an egg is described in the video, a relatively hard mattress is bad at "cradling."  Even if a consumer recognized the relatively hard mattress as being one of Tempur + Sealy's models, that mattress failed the egg test, as truthfully shown on the video, and it is in fact bad at "cradling" as that term is used in the video.

35.     These statements are true and not misleading in the context of the video where the Goldilocks character is talking about the subjective feel of mattresses that are "hard," "soft" and "just right" and the objective results of how each failed the raw egg test by not providing the "cradling" that is provided by Purple's mattress.

36.     Nothing in the video is capable of deceiving any ordinary, reasonable mattress consumer, let alone a substantial portion of such consumers, about the subjective differences in mattress types, or more particularly about any of the characteristics of Tempur + Sealy's particular model of mattress, or about which types of mattresses can and cannot "cradle" a raw egg without breaking.

37.     The clear message of the video is simply that if a person wants a mattress that, subjectively, is not too hard, too soft or even just right, but instead a mattress that is comfortable because it can "cradle" a raw egg and prevent it from being crushed when under pressure, that person should buy a Purple mattress.

38.     Tempur + Sealy has not suffered and cannot suffer any wrongfully caused harm as a result of the video but instead only is subject to losing sales to consumers who want a mattress that is different than other mattresses because it can "cradle" a raw egg unlike other mattresses.

7

39.     There is no reasonable basis for Tempur + Sealy's claim, and upon information and belief Tempur + Sealy has made its claim against and threatened to sue Purple to interfere with Purple's lawful and proper competitive efforts to enter the United States consumer mattress market with a new type of mattress product that has the potential of providing consumers with something so different that it will diminish Tempur + Sealy's share of the market.

40.     Purple is in reasonable apprehension that Tempur + Sealy, a multi-billion dollar company, will in fact initiate litigation against Purple if it does not bend to Tempur + Sealy's improper demand to change its website and video based on its erroneous claim that they violate the Lanham Act.

41.     Upon information and belief, Tempur + Sealy's intent is to harm a smaller competitor by making a knowingly, and at least recklessly, false claim of a violation of the Lanham Act in order to cause Purple to either interrupt its current marketing campaign by changing its website and video or engage in costly, distracting litigation with a multi-billion dollar company.

42.     To date, Purple has spent hundreds of thousands of dollars on its marketing campaign that uses the video on its website, and that video has gained impressive traction through building "likes" and "views" resulting in a growing demand for Purple's new mattress product, even apparently gaining the attention of Tempur + Sealy.

43.     Obtaining "likes" and "views" is an important part of ecommerce marketing because it accelerates the public's awareness of the marketing materials that consumers use to learn about and complete purchases of products marketed in this channel.

44.     Purple will suffer a loss of momentum in its campaign and corresponding loss of sales, and will lose the full benefit of the hundreds of thousands of dollars it already has invested

in its marketing campaign and incur increased costs to change that campaign, if it bends now to Tempur + Sealy's wrongful demand and changes its website and video thereby starting over in building consumer awareness and obtaining the benefit of "likes" and "views" for a changed website and video.

45.    Purple already is suffering the cost and distraction of having to respond to Tempur + Sealy's wrongful demand by having to initiate this action for its protection from Tempur + Sealy's threat.

46.    This litigation expense caused by Tempur + Sealy's wrongful conduct is particularly damaging to Purple because Purple is just beginning to market its new mattress product and capital is expensive at this early stage of its business.

47.    Moreover, Tempur + Sealy's wrongful threat is extremely damaging to Purple because lenders and investors will increase the cost of capital to Purple when they learn of the increased risk Purple faces from a threat of litigation made by a multi-billion dollar company.

48.    Also, Tempur + Sealy's wrongful threat is extremely damaging to Purple because it will impede Purple's ability to attract key employees at this critical stage of its growth, causing them either to not consider joining Purple or demanding more compensation to offset the risk Purple faces from a threat of litigation made by a multi-billion dollar company.

49.    Purple needs additional financing to hire key employees, acquire production equipment and expand its marketing campaign, and it will suffer an irreparable loss of momentum if it is impeded from growing its sales at the rate it otherwise could grow had Tempur + Sealy's wrongful conduct not impeded Purple's ability to obtain needed capital for these purposes, and not caused Purple to incur litigation expenses that otherwise could be invested in growth.

50.     Purple is being damaged until, and will incur irreparable harm unless, Tempur +

Sealy's wrongful claim and threat is withdrawn or found in this action to be without merit and

dismissed by the Court.

51.     This action is brought by Purple to have Tempur + Sealy's claim of Purple's

violation of the Lanham Act declared to be without merit and dismissed, and to recover its

damages caused by Tempur + Sealy's wrongful claim and threat.

52.     If Tempur + Sealy does not immediately withdraw its claim, and its improper

demand that Purple change its website and video to avoid being sued, and instead continues to

assert in response to this action against it that Purple's website and video violate the Lanham

Act, Purple believes, and therefore alleges, that Tempur + Sealy will be doing so without a good

faith basis in fact or law and will be using litigation to stop or impede a competitor and protect

its market share that is being threatened by Purple's new mattress product.

FIRST CLAIM FOR RELIEF<br>(Declaratory Judgment under 28 U.S.C. §§ 2201-2202)

53.     Purple incorporates here all of the above allegations.

54.     There is a justiciable controversy within the meaning of 28 U.S.C. § 2201

between Tempur + Sealy, on the one hand, and Purple, on the other hand, regarding whether

Purple and its website and video posted on that website violate the Lanham Act, 15 U.S.C. §

1125(a)(1)(B).

55.     Neither Purple nor its website or the video available on that website violate the

Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

56.     Purple is entitled to a declaration by the Court that Purple and its ecommerce marketing materials have not and do not violate Tempur + Sealy's rights in its intellectual property or otherwise under that statute.

SECOND CLAIM FOR RELIEF
(Monopolization under 15 U.S.C. § 2)

57.     Purple incorporates here all of the above allegations.

58.     Tempur + Sealy has monopoly power in the market of consumer mattresses within the United States because it holds a relatively large percentage of the share of that market, it dominates that market as the world's largest bedding provider and it has the power to exclude smaller competitors from that market.

59.     The dominance of Tempur + Sealy arising from the vastness of its size and associated economies of scale, including the financial ability to dominate nationwide marketing and the creation of strong brands, creates a barrier to new entrants into and the growth potential of small competitors in the United States consumer mattress market.

60.     Purple is trying to overcome that barrier, and to enter that market and grow its sales within that market, through nationwide ecommerce marketing using its website and video to build its own strong brand in competition with Tempur + Sealy.

61.     Tempur + Sealy acted to willfully maintain its monopoly power in that market by means other than selling superior products, exercising business acumen or historic accident when it, in the absence of any reasonable basis in fact or law, threatened to sue Purple, a new competitor in that market, for violating the Lanham Act if it did not change its marketing website and video.

11

62.     Because Purple is a new company in its early stages of entering that market, this threat has the potential of harming the competitive process by stopping or at least delaying Purple's entry into that market.

63.     Purple's failure to enter or its delay in entering that market will harm mattress consumers who will be denied the opportunity to meaningfully choose to purchase Purple's innovative different type of mattress product over Tempur + Sealy's numerous branded models of mattress products.

64.     Accordingly, Tempur + Sealy has committed the crime of unlawful monopolization under 15 U.S.C. § 2.

65.     Purple has suffered damages as a result of Tempur + Sealy's illegal conduct by being forced to use its resources to respond to Tempur + Sealy's threat rather than to use them for its entry into that market, and as a result of Tempur + Sealy's threat Purple will suffer irreparable harm in the future from being either unable to successfully enter that market or delayed in its entry into that market due to its inability to obtain or the increased cost of obtaining sufficient financing and resources necessary to survive or otherwise continue its efforts to overcome the barrier caused by Tempur + Sealy's power in that market.

66.     Purple is entitled to have the Court enjoin Tempur + Sealy's anti-competitive, bullying conduct in threatening to sue Purple for violating the Lanham Act, remove the cloud of such a violation by declaring that claim lacks merit and dismissing it, and award to Purple a monetary judgment to compensate Purple for the damages caused by Tempur + Sealy's claim and threat.

67.     Purple also is entitled to recover treble-damages to counterbalance the difficulty

to Purple, a startup company, of maintaining a private suit against monopolization by Tempur +

Sealy, a multi-billion dollar company.

THIRD CLAIM FOR RELIEF
(Abuse of Process)

68.     Purple incorporates here all of the above allegations.

69.     If Tempur + Sealy follows through on its threat and uses legal process, such as

through a counterclaim to this action alleging a violation of the Lanham Act by Purple, Tempur

+ Sealy will be using legal process primarily to accomplish the purpose of preventing or

impeding lawful competition by Purple, thereby causing harm to Purple, and not the purpose of

protecting its own lawful rights under that statute.

70.     Because no reasonable person could conclude that Purple has violated that statute,

and by virtue of the warning given to Tempur + Sealy in this pleading, if Tempur + Sealy uses

legal process as alleged here, Purple believes, and therefore alleges, that Tempur + Sealy will be

doing so with malice.

71.     Purple is entitled to have the Court dismiss that counterclaim, if pled, and award

to Purple a monetary judgment to compensate Purple for the damages caused by Tempur +

Sealy's abuse of process, including but not limited to being compelled to undergo time-

consuming and distracting litigation and to incur litigation expenses.

FOURTH CLAIM FOR RELIEF
(Intentional Interference with Economic Relations)

72.     Purple incorporates here all of the above allegations.

73.     Tempur + Sealy, through illegal monopolization and abuse of process alleged

above, employed and will continue to employ improper means to interfere with Purple's existing

13

and/or potential economic relations with at least customers, lenders, investors, marketing vendors and employees.

74.    Tempur + Sealy's conduct has been and will continue to be intentional in that Tempur + Sealy has no good faith basis in fact or law to claim Purple is violating the law and to threaten to sue Purple based upon the content of Purple's website and video.

75.    Upon information and belief, Tempur + Sealy's motive and the purpose of its claim and threat are to stop or slow Purple's entry as a competitor in the United States consumer mattress market with a new mattress product.

76.    If Tempur + Sealy's claim and threat is not immediately withdrawn, it is probable that Tempur + Sealy's conduct will cause injury to Purple through at least increased costs if not also a loss of customers, capital from lenders and investors, its investment in marketing vendors and key employees.

77.    Purple is entitled to have the Court enjoin Tempur + Sealy from threatening to sue Purple for violating the Lanham Act, remove the cloud of such a violation by declaring that claim lacks merit and dismissing it, and award to Purple a monetary judgment to compensate Purple for the damages caused by Tempur + Sealy's claim and threat.

PRAYER

WHEREFORE, Purple prays for the following relief:

1.    A declaratory judgment that Purple and its ecommerce marketing materials have not and do not violate Tempur + Sealy's rights in its intellectual property or otherwise under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and dismissal of that claim with prejudice;

2.    A preliminary and permanent injunction enjoining Tempur + Sealy from continuing to threaten suing Purple for violating the Lanham Act by using its website and video;

3.    A monetary judgment to compensate Purple for the damages caused by Tempur +

Sealy's claim and threat;

4.    A monetary judgment trebling the amount awarded for compensatory damages;

5.    Other costs, including attorney fees and litigation costs, and interest allowed by

law; and

6.    All such other relief as the Court deems necessary and appropriate in law or

equity.

<u>JURY DEMAND</u>

Purple demands a trial by jury on all issues triable of right by a jury.

DATED this 26th day of February, 2016.

WonderGel, LLC

  /s/ Casey K. McGarvey
Casey K. McGarvey
Attorney for Plaintiff