Mark D. Taylor (9533)
Brandee R. Lynch (13550)
**LEWIS | HANSEN**
The Judge Building, Suite 410
Eight East Broadway
Salt Lake City, Utah 84111-2239
Telephone:  (801) 746-6300
Facsimile:  (801) 746-6301
mtaylor@lewishansen.com
brandee@lewishansen.com

Casey K. McGarvey (4882)
123 East 200 North
Alpine, Utah 84004
Telephone:  (801) 936-1039
casey@edizone.com

*Attorneys for Plaintiff WonderGel, LLC d/b/a Purple*

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE, a Delaware limited liability company,<br><br>Plaintiff<br><br>vs.<br><br>TEMPUR SEALY INTERNATIONAL INC., a Delaware corporation,<br><br>Defendant. | **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**<br><br>**(Oral Argument Requested)**<br><br>Case No. 2:16-cv-00162-BSJ<br><br>Hon. Bruce S. Jenkins |

Plaintiff, WonderGel, LLC dba Purple (hereinafter "Purple"), by and through counsel of

record, hereby moves this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for

entry of a temporary restraining order and preliminary injunction that restrains and enjoins Defendant Tempur Sealy International Inc. and its officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Tempur + Sealy, (hereinafter, individually and collectively, "Tempur + Sealy"), from proceeding with the Second Filed Action Tempur + Sealy filed on March 15, 2016, in the United States District Court for the Eastern District of Kentucky as Civil Action No. 5:16-cv-00083-DCR (the "*Second Filed Action*") including, but not limited to, moving to enforce any order of the Kentucky Court on Tempur + Sealy's Motion for Temporary Restraining Order and Preliminary Injunction filed on March 25, 2016 (with oral argument held on March 30, 2016).  Pursuant to Fed. R. Civ. P. 65(b)(1)(B), Purple has made every effort to serve Tempur + Sealy with this Motion.[1]

## I.   RELIEF SOUGHT AND GROUNDS

1.     The Court is requested to set an expedited hearing date for this temporary restraining order/preliminary injunction, which is estimated to last approximately four hours;

2.     Purple seeks an order restraining and enjoining Tempur + Sealy from prosecuting its Second Filed Action, based on the Court's inherent power under the "first-to-file rule" as set forth more fully in Purple's Motion for Order Enjoining Defendant's Prosecution of Second-Filed Action and Memorandum in Support, *see* Doc. 5 (hereinafter referred to as "Motion to Enjoin Prosecution of Second-Filed Action");

3.     In conjunction with the above, Purple seeks an order restraining and enjoining Tempur + Sealy from moving to enforce any order of the Kentucky Court on Tempur + Sealy's

---

[1] See Affidavit of Mark D. Taylor, Esq., attached hereto as Exhibit 1.

Motion for Temporary Restraining Order and Preliminary Injunction filed on March 25, 2016 (with oral argument held on March 30, 2016);

4.      Purple requests that the Court allow service of orders related to this Motion to be effected upon Tempur + Sealy by electronic mail;

5.      Purple also requests that the Court waive the requirement of a bond to enforce the restraining order and preliminary injunction; and

6.      Finally, Purple seeks any such other relief that the Court deems just and proper.

## II.      STATEMENT OF MATERIAL FACTS

1.      WonderGel, LLC d/b/a Purple (hereinafter referred to as "Purple") is a Utah company that is engaged in the e-commerce business of making and selling mattresses over the Internet through its website www.onpurple.com.  *See* Affidavit of Casey McGarvey, Esq., attached as Exhibit 2, ¶ 2.

2.      Tempur + Sealy is a Delaware corporation with its principal place of business in Lexington, Kentucky.  Tempur + Sealy is a citizen of Delaware and Kentucky.  *Id.* at ¶ 3. Tempur + Sealy is the world's largest mattress company, and conducts regular and continuous business activities through the sales of its many brands of mattresses throughout the State of Utah.  DN 2 at ¶ 3.

3.      Purple has been selling its mattresses through its website since only January 2016. *Id.* ¶ 3.

4.      Purple's only advertising has been over the Internet through social media channels such as YouTube and Facebook.  *Id.* ¶ 4.

5.      Purple has used in these channels a video entitled "How to Use a Raw Egg to Determine if Your Mattress is Awful - #PURPLE," found at https://youtu.be/gN9ayoV1EXg, to direct customers to its website where its mattresses can be purchased.  *Id*. ¶ 5.

6.      In this video, Goldilocks, a bed expert from the Goldilocks and Three Bears fable, discusses the subjective feel of different types of mattresses that are "hard," "soft" and "just right," and the objective comparison between those mattresses and a Purple mattress in relation to the raw egg test she describes and demonstrates.  In this video, Goldilocks calls upon viewers to visit www.onpurple.com to purchase a Purple mattress.  *Id*. ¶ 6.

7.      As of March 31, 2016, it is reported to Purple that the Goldilocks video has had more than 15,000,000 "views" on Facebook and 7,000,000 "views" on YouTube since it went public in January 2016.  *Id*. ¶ 7.

8.      This is phenomenal growth in such a short amount of time and is commonly referred to as a "viral video," meaning a video that has become popular through the viral process of sharing over the Internet through social media.  *Id*. ¶ 8.

9.      This growth in "views" attracts even more viewers, and as the number of views has increased so have the sales of Purple's mattresses by those who respond to the call to action and visit Purple's website.  *Id*. ¶ 9.

10.      Without this video, Purple would not have a video that has become a viral video calling upon potential customers to visit Purple's website to purchase a Purple mattress.  *Id*. ¶ 10.

11.      Purple is informed and believes that in accordance with the capabilities of Facebook and YouTube, if its Goldilocks video was removed from their platforms and in its

4

place a new video were used, that new video would not have the benefit of all the views, comments and shares of the Goldilocks video and would start at zero.  *Id.* ¶ 11.

12.     Purple also is informed and believes that in accordance with the capabilities of Facebook and YouTube, if its Goldilocks video were removed from their sites and then reloaded on those sites it too would not have the benefit of all the views, comments and shares it previously enjoyed and also would start again at zero.  *Id.* ¶ 12.

13.     Purple is informed and believes that the loss of the Goldilocks video will stop its sales momentum, and an attempt to use that video again after having been removed will tarnish the goodwill it has obtained through its popularity in social media.  *Id.* ¶ 13.

14.     Inasmuch as Purple derives the majority of its sales from the Goldilocks video, and the benefits derived from it becoming a popular viral video, without that video and the many views, comments and shares it has received Purple estimates its sales would decrease more than 50%.  *Id.* ¶ 14.

15.     Being a startup in the mattress industry, Purple has limited resources and has invested its resources in, among other things, obtaining needed equipment, developing its supply chain and hiring many new employees to keep up with the growing demand from its Internet sales, and it is believed that such a substantial reduction in revenue at this critical stage would jeopardize its viability, and at least would impair its ability to meet its obligations and disrupt its relationships with vendors, suppliers and employees that, if possible at all, would be difficult and time consuming to restore or repair.  *Id.* ¶ 15.

16.     Purple's ability to maintain the Goldilocks video on the Facebook and YouTube social media platforms is crucial to its business, and it would be impossible to assign a monetary

value to compensate Purple for all the harm that would result should it be enjoined from using this video at this critical time on social media platforms. *Id.* ¶ 16.

17.    On February 22, 2016, "EdiZone, LLC[2] dba Purple" received a cease-and-desist letter from Tempur + Sealy, dated February 19, 2016, accusing Purple of violating the Lanham Act (15 U.S.C. § 1125(a)) with its above-described video used for advertising on social media platforms. *See* DN 2-2.

18.    On February 26, 2016, WonderGel, LLC d/b/a Purple, filed the Present Action in this Court against Tempur International, Inc. seeking not only a declaratory judgment that it is not violating the Lanham Act (15 U.S.C. § 1125(a)) but also seeking damages and an injunction for the harm this accusation is causing and will cause Purple under the circumstances of Tempur + Sealy, a billion dollar company and the largest mattress company in the world, making accusations against Purple when it is in the early stage of its attempt to enter into the mattress industry currently dominated by Tempur + Sealy. *See* DN 2.

19.    On the same day, February 26, 2016, Purple gave notice to Tempur + Sealy of the Present Action, and emailed to its counsel a copy of the Complaint. *See* DN 5-1 Exhibit 1 to Motion to Enjoin Prosecution of Second-Filed Action.

20.    Rather than respond to Purple's allegations in Utah, Tempur + Sealy filed its Second Filed Action nearly three weeks later on March 15, 2016.  Tempur + Sealy, along with several of its' subsidiaries, filed the Second Filed Action in U.S. District Court for the Eastern

---

[2] EdiZONE, LLC is a sister company of WonderGel, LLC d/b/a Purple, and does not control WonderGel, LLC or do business as Purple.

District of Kentucky, Lexington Division.  *See* Doc. No. 5-2, 5-3, Exhibits 2 and 3 to Motion to Enjoin Prosecution of Second-Filed Action.

21.     In the Second Filed Action, Tempur + Sealy asserted claims of unfair competition and false advertising in violation of the Lanham Act (15 U.S.C. § 1125(a)) and other state laws based on Purple's use of the Goldilocks video on YouTube as well as other social media platforms.  *Id.* at ¶¶ 1, 29-77.

22.     In an attempt to circumvent the Utah court's "first-to-file" jurisdiction, Tempur Sealy immediately filed a Motion for a Temporary Restraining Order and Preliminary Injunction in Kentucky involving the very same dispute already pending before this Court.  *See* Tempur Sealy's Motion for TRO attached hereto as Exhibit 3; *See* Purple's Memo in Opp. to Tempur Sealy's TRO submitted in Second Filed Action attached hereto as Exhibit 4.  Therefore, as it stands, the issues in this case are currently pending before this Court and the U.S. District Court for the Eastern District of Kentucky, Lexington Division.

23.     On March 29, 2016, Purple filed its Motion to Enjoin Prosecution of Second-Filed Action in the Present Action and provided notice of that filing to Tempur + Sealy on that same date by sending copies of the same to Tempur + Sealy's legal counsel via electronic mail.  *See* Doc. 5.

24.     In addition, on March 29, 2016, Purple filed its Motion to Dismiss or to Transfer or Stay Proceedings in the Second-Filed Action (hereinafter "Motion to Dismiss") based on the "first-to-file rule" and issues of personal jurisdiction, and provided notice of that filing to Tempur + Sealy on that same date.  *See* a true and correct copy of Motion to Dismiss, submitted in Second Filed Action attached hereto as Exhibit 5 and incorporated herein by reference.

25.     Notwithstanding the "first-to-file rule", on March 30, 2016, in the Second Filed Action, the Kentucky Court indicated during the hearing that he did not think a Utah court could tell him what to do and thereafter granted Tempur + Sealy's motion for TRO after oral argument. *See* true and correct copy of Minute Entry in Second Filed Action, attached hereto at Exhibit 6 and incorporated herein by reference.

26.     Based on the Minute Entry, it is anticipated that the Kentucky Court will be entering an order restraining Purple from using its "Goldilocks Video" for marketing on social media and thereby causing Purple economic and non-economic, unquantifiable harm.

27.     In addition, the Kentucky Court declined to rule on the issue of personal jurisdiction during the Kentucky TRO Second Filed Action hearing despite Purple's pending motion and objection to the Kentucky Court exercising personal jurisdiction over Purple, as more fully set forth in Purple's Motion to Dismiss. *See* Ex. 5.

28.     As of the date of the instant Motion, the Kentucky Court has not ruled on Purple's Motion to Dismiss.

29.     Purple is seeking an order restraining and enjoining Tempur + Sealy from prosecuting its Second Filed Action, based on the Court's inherent power under the "first-to-file rule. In addition, Purple is seeking an order restraining and enjoining Tempur + Sealy from moving to enforce the Kentucky Court's Temporary Restraining Order issued in violation of the "first-to-file" rule and without first establishing personal jurisdiction over Purple.

### III.     ARGUMENT AND AUTHORITIES

Notwithstanding (1) Purple's filing of this Present Action prior to Tempur + Sealy filing its Second Filed Action in Kentucky, (2) Purple's filing of its Motion to Enjoin Prosecution of the

8

Second-Filed Action, and (3) Purple's filing of its Motion to Dismiss in the Second Filed Action, Tempur + Sealy has vigorously pursued relief in the Second Filed Action in Kentucky via its Second Filed Action and own TRO wrongfully sought in the Second Filed Action.   As a result, Tempur + Sealy has improperly circumvented this Court's jurisdiction pursuant to the "first-to-file rule."  Moreover, the Kentucky Court has inappropriately taken the bait and attempted to preempt this Court's jurisdiction by exercising control over Purple without even resolving basic principles of civil procedure and due process, which require a court to obtain personal jurisdiction over a party prior to exercising any control over the party or requiring that party to comply with a court order.  These actions have necessitated Purple's filing of this motion requesting immediate relief in the form of a temporary restraining order and preliminary injunction against Tempur + Sealy's continued prosecution of the Second Filed Action, and enforcement of any TRO entered in the Second Filed Action, as Purple faces irreparable harm if it is not permitted to maintain the status quo through the continuing use of its viral online advertising video pending this Court's determination of the issue of its exercise of jurisdiction over this first filed Present Action and any motion file by Tempur + Sealy in this Present Action for the relief it wrongfully has sought in Kentucky.

First, Purple is likely to succeed on the merits of its Motion to Enjoin Prosecution of the Second-Filed Action because this Court has initial jurisdiction to determine if the "first-to-file rule" operates to enjoin prosecution of the Second Filed Action in the Kentucky Court, or if an exception exists that allows the Second Filed Action in the Kentucky Court to proceed and decide the issues amongst the parties.  Because Tempur + Sealy will likely not meet its burden of showing any applicable exception to the "first-to-file rule,"—nor has it even attempted to argue in the

Present Action that an applicable exception exists—the Second Filed Action should be enjoined from proceeding in tandem with or in lieu of this Present Action.  Moreover, Purple is likely to succeed on the merits of its Motion to Dismiss in the Second Filed Action because Purple does not have sufficient contacts with Kentucky.

Second, Tempur + Sealy's actions in pursuing the Second Filed Action, if not enjoined by the Court in the Present Action, will cause irreparable harm to Purple as it will be forced to follow the Kentucky Court's order restraining Purple from advertising its popular marketing video known as "Goldilocks Video" on social media and thereby causing Purple economic and non-economic harm.  Such restraint, even temporary, will cause Purple to lose potential and existing customers, and irreparable damage to Purple's budding reputation.

Finally, the balance of hardships heavily favors Purple and the requested relief is in the public interest.  Because the balance of factors weighs overwhelmingly in Purple's favor, Purple respectfully requests that the requirement of a bond be waived.

## A.  THE COURT SHOULD GRANT INJUNCTIVE RELIEF TO PURPLE

### I.    Purple is Entitled to an Ex Parte Temporary Restraining Order Against Tempur + Sealy and Its Agents

Federal Rule of Civil Procedure 65 authorizes a federal court to issue injunctive relief, including a temporary restraining order and preliminary injunction.  A temporary restraining order may provide for immediate ex parte relief if (1) the plaintiff establishes that immediate, injury, loss or damage will result to the plaintiff before the defendant can be heard in opposition; and (2) the plaintiff's attorney certifies to the Court any efforts that have been made to give notice and why it should not be required.  Fed. R. Civ. P. 65(b)(1).  In this case, Purple establishes both of these elements.

First, as discussed in more detail below, Purple is suffering immediate and irreparable harm from Tempur + Sealy's prosecution of the Second Filed Action and resulting improper circumvention of this Court's priority and jurisdiction.  If Tempur + Sealy is allowed to continue to prosecute the Second Filed Action, Purple will be forced to follow the Kentucky Court's order restraining Purple from advertising its popular marketing video known as the "Goldilocks Video" on social media and thereby suffer irreparable economic and non-economic harm.  Such restraint, even temporary, will cause Purple to lose potential and existing customers, and irreparable damage to Purple's budding reputation.  Moreover, this irreparable harm is exacerbated by the fact that the rulings in this Court could be inconsistent with the ruling of the Kentucky Court, should Tempur + Sealy seek here the relief it improperly sought in Kentucky, yet this Court would be incapable of then maintaining the status quo after Purple has been forced to comply the ruling of the Kentucky Court and sustain the irreparable harm such compliance will cause.

Second, Purple and its counsel have placed Tempur + Sealy on notice of the Present Action and of the motions Purple filed indicating that this Court has priority to decide whether the "first-to-file rule" is applicable or whether an exception exists to allow the Second Filed Action to take priority over the parties' issues.  Despite such notice, Tempur + Sealy continues to prosecute the Second Filed Action in complete disregard of this Court's prior right to decide whether to exercise jurisdiction over the issues first raised by Purple in the Present Action.  Likewise, Purple's counsel has given Tempur + Sealy prompt notice of the instant motion necessitated by Tempur + Sealy's continuing conduct in the Second Filed Action.

Consequently, an *ex parte* temporary restraining order should immediately be issued.

**II.      Purple is Entitled to a Preliminary Injunction Against Tempur + Sealy and Its Agents**

The standard for a temporary restraining order is the same as for a preliminary injunction. *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F.Supp.2d 1248, 1250 (D. Utah 2013). A federal court must consider four factors when deciding a motion for preliminary injunction: (1) movant's substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs any damage the proposed injunction may cause the opposing party; and (4) an injunction would not be adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). Although "[i]t is the movant's burden to establish that each of these factors tips in his or her favor," as long as "the moving party has established that the three harm factors [(2), (3), and (4)] tip decidedly in its favor, the [first] 'probability of success requirement' [1] is somewhat relaxed." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001)). In such cases, the movant need only show "questions going to the merits so serious, substantial, difficult, and doubtful to make them fair ground for litigation." *Heideman*, 348 F.3d at 1189 (quoting *RTC v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992).

At the preliminary injunction stage, the court may consider sworn proof such as affidavits, along with hearsay based on information and belief, although the weight given to the hearsay evidence may be different. *Pharmanex, Inc. v. HPF*, No. 99-4116, 2000 WL 703164, *3 (10th Cir. Apr. 20, 2000) (unpublished) (citing James W. Moore, MOORE'S FEDERAL PRACTICE § 65.23 (3d 1999)). Further, the Federal Rules of Evidence do not apply to preliminary injunction hearings. *Heideman v. South Salt Lake*, 348 F.3d 1182, 1188 (10th Cir. 2003). Therefore, preliminary injunctive relief is "customarily granted on the basis of procedures that are less formal

and evidence that is less complete than in a trial on the merits." *Id.* (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

The facts of this case warrant an order by this Court immediately protecting Purple from Tempur + Sealy's prosecution of the Second Filed Action and resulting improper circumvention of this Court's priority and jurisdiction.   As demonstrated from the arguments below and declarations submitted herewith, each of the four grounds stated above are satisfied and therefore, a temporary restraining order and preliminary injunction are appropriate.

## II.   Purple is Substantially Likely to Succeed on the Merits

### a.   The First-To-File Rule Is Applicable and No Exception Exists to Divest this Court from Jurisdiction over the Present Action

The first-to-file rule provides that when essentially the same lawsuit involving substantially similar parties and issues is pending in two different federal courts, there is a "strong presumption" that the case filed earlier will take priority. *See, e.g., Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008); *see Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 510 (S.D.N.Y. 2004) (quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001)); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergt Assocs.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001)).   The first-to-file rule allows a court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court. *See Portman v. Wilson*, No. 10-CV-169-KSF, 2010 U.S. Dist. LEXIS 73433, *16-17 (E.D. Ky. July 19, 2010).   "The Tenth Circuit has stated it is a general rule that where the jurisdiction of a federal district court has attached, that right cannot be arrested or taken away by proceedings in another federal district court." S*hannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F.Supp.2d 1261,1278 (D. Utah 2010).  A federal district court which "*first obtains jurisdiction*

*of the parties and issues* may preserve its jurisdiction by enjoining proceedings involving the same issues and parties," begun in another federal district court. *Id. (emphasis added)* (enjoining defendant from pursuing any further action in second filed action).

Federal courts have warned that the first-to-file rule "should not be disregarded lightly" as it is designed to prevent inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes. *Commer v. Am. Fed'n of State, Cty. & Mun. Employees*, 272 F. Supp. 2d 332, 339 (S.D.N.Y. 2003), aff'd, 390 F.3d 203 (2d Cir. 2004); *800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F. Supp. 128, 132 (S.D.N.Y. 1994).

Importantly, established controlling case law in this jurisdiction and case law in the Kentucky Court's jurisdiction, ***requires the first-filed court to decide whether the first-to-file rule applies and which of the two cases should proceed***.   Indeed, the Tenth Circuit has created a presumption that the court that first obtains jurisdiction over the same parties and issues is the appropriate court to resolve the case.  See *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court."); *Hospah Coal Co. v. Chaco Energy Co*., 673 F.2d 1161, 1163 (10th Cir. 1982) ("[W]hen two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case.") (citing *O'Hare International Bank v. Lambert*, 459 F.2d 328 (10th Cir. 1972)); *see also*, *Ontel Products, Inc. v. Project Strategies Corp*., 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995); *see also Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993); *see also Allen v. Rohm & Haas Co. Ret. Plan*, No.

3:06CV-25-S, 2006 U.S. Dist. LEXIS 47154, *3-5 (W.D. Ky. July 10, 2006) (noting that once the second filed district court found the issues might substantially overlap, the proper course of action was for the court to transfer the case to determine which case should proceed); *see also Pacesetter Sys. V. Medtronic, Inc.,* 678 F.2d 93, 96 (9th Cir. 1982) ("normally the forum non conveniens argument should be addressed to the court in the first-filed action").  In *Ontel Products, Inc.*, the federal court held that the sister court presiding over the second-file suit could not usurp the role of the first-filed court.  *Ontel Products, Inc.,* 899 F. Supp. at 1150 n.9.  While the judge in the Kentucky Court declined to follow the "first-to-file rule" and indicated he did not think a Utah court could tell him what to do, this is simply not what the controlling case law requires.  [SMF 25].

As set forth more fully in Purple's Motion to Enjoin Prosecution of the Second-Filed Action, the three elements of the first-to-file rule[3] are satisfied and operate to allow this Court to enjoin Tempur + Sealy from prosecuting its Second Filed Action in the Kentucky Court.  First, it is undisputable that the Present Action was commenced first in time by Purple's filing of the Complaint with this Court on February 26, 2016, and that Tempur + Sealy's complaint in the Second Filed Action was not filed until March 15, 2016—more than 2.5 weeks after Purple commenced the Present Action.  Second, there is substantial similarity between the parties in the Present Action and the Second Filed Action, as each of the entities named is either a principal, subsidiary, or related entity of the main parties named in both Actions or otherwise directly involved in the issues.  Finally, there is similarity of the issues, as the two Actions hinge on the

---

[3]  Federal courts have established three threshold elements for application of the first-to-file rule: (1) the chronology of the parties; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

outcome of virtually identical operative facts and legal claims as they both arise from and relate to a dispute about Purple's advertising its mattress product via a marketing video that was shot and created in Utah and features actors from Utah

While there are exceptions to the first-to-file rule, it is the burden of the party opposing application of the rule to demonstrate that an exception actually exists. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001). Tempur + Sealy cannot show that (1) Purple engaged in forum-shopping or (2) the Present Action was an "anticipatory" lawsuit, and therefore, this Court has jurisdiction to enjoin the prosecution of a later-filed Second Filed Action in the Kentucky Court. *See* C*ity of New York v. Exxon Corp*. 932 F.2d 1020, 1025; *see also EEOC v. Univ. of Pa.*, 850 F.2d 969, 972, 976 (3d Cir. 1988).

First, Purple's filing of the Present Action in Utah is not indicative of improper forum shopping as Purple's place of business is located in Utah, Purple has a volume of contacts with Utah, and the majority of anticipated witnesses and documents relevant to the issues raised by the litigation are located in Utah. *See Novo Nordisk v. Genentech, Inc.*, 874 F. Supp. 630, 633 (S.D.N.Y. 1995). Forum shopping occurs only when a litigant selects a forum with slight connection to the factual circumstances of his action—this is not the case here.

Second, the Present Action was not an "anticipatory suit" filed to precede an adversary filing by Tempur + Sealy. Case law requires an overt statement that a party intends to commence litigation with specified dates and forum. *See J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995); s*ee Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 271 (C.D. Cal. 1998); *see Intersearch Worldwide, Ltd.,* 544 F. Supp. 2d at 961. With facts similar hereto, the *J. Lyon* court held that the alleged infringers did not have actual notice of

16

any anticipated litigation by the trademark holder, even after the trademark holder sent the alleged infringers a cease-and-desist letter indicating that if they did not stop the alleged infringement, the trademark holder would be "constrained to pursue appropriate legal steps against" them, and its attorneys would then be "authorized to consider taking suitable legal and equitable action." *See J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F.Supp.486, 491, 271 (S.D.N.Y. 1995). While Purple admits that Tempur + Sealy sent Purple a cease-and-desist letter dated February 19, 2016, that letter did not contain an imminent threat of a lawsuit as it did not explicitly mention an intent to sue, a tentative filing date, and a specific forum. Purple's knowledge of a potential dispute with Tempur + Sealy does not, without more, satisfy the definition of an "anticipatory suit."

Moreover, the courts have interpreted a delay of time between the commencement of the first action and the filing of the Second Filed Action, as evidence that the party filing the Second Filed Action was not prepared to file a lawsuit at the time the first action was filed, and the first action was not an "anticipatory suit." *See M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, No. C03-3082 SBA, 2003 WL 24056263, at *4 (N.D. Cal. Oct. 27, 2003). Here, Tempur + Sealy waited almost a month after sending the cease-and-desist letter of February 19, 2016 to initiate the Second Filed Action (and 2.5 weeks after notice of the Present Action to initiate the Second Filed Action). This delay strongly supports a finding that Tempur + Sealy had no immediate intention of commencing the Second Filed Action at the time Purple instituted the Present Action and therefore, the Present Action was not an "anticipatory suit".

In sum, Purple is substantially likely to succeed on the merits of its Motion to Enjoin Prosecution of the Second-Filed Action as the first-to-file rule elements are satisfied and Tempur

+ Sealy has not, and will not, succeed in showing that an exception to the rule divests this Court of its priority in deciding the issues between the parties.

### b.     The Kentucky Court Likely Does Not Have Personal Jurisdiction over Purple

Additionally, based on Purple's arguments contained within the Motion to Dismiss, it is likely that the Kentucky Court does not have personal jurisdiction over Purple and this Court will still have to decide the parties' issues.  *See arguments contained in Motion to Dismiss.*

### III.    Purple's Threatened Injury Outweighs Any Damage to Tempur + Sealy

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int.l, Inc*., 903 F.2d 904, 907 (2d Cir. 1990)). "Typically, irreparable harm exists where monetary compensation is insufficient for resulting damage or monetary damages are difficult to calculate." *Deer Valley Resort Co. v. Christy Sports, LLC*, 2007 U.S. Dist. LEXIS 94212 *6 (D. Utah, Dec. 21, 2007) (citing *Close to My Heart, Inc. v. Enthusiast Media, LLC*, 508 F.Supp. 2d 963, 970 (D. Utah 2007)).  The Tenth Circuit has stated that a finding of irreparable harm is justified where the finding is "based on such factors as the difficulty in calculating damages, the loss of a unique product, and [the] existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video*, 356 F.3d at 1262.

Here, Tempur + Sealy's actions in pursuing the Second Filed Action, if they have not already caused, will likely cause irreparable harm to Purple as it will be forced to follow the

18

Kentucky Court's order restraining Purple from advertising its popular marketing video known as "Goldilocks Video" on social media and thereby causing Purple economic and non-economic harm.  Such restraint, even temporary, will cause Purple to lose potential and existing customers, and irreparable damage to Purple's budding reputation.

Specifically, if Purple is forced to comply with the TRO from the Kentucky Court, it will be forced to take down the "Goldilocks Video" that has garnered a lot of attention, currently having more than 15,000,000 "views" on Facebook and 7,000,000 "views" on YouTube since it went public in January 2016.   This "Goldilocks Video" has been a surprise hit for Purple: a small fledging company that invested considerable time, resources, and effort in promoting its mattress product in a market that is saturated with much larger corporations that have considerably more money and resources to counter any advertising of smaller companies.   Once Purple is forced to take down the "Goldilocks Video," it will lose any type of traction that it has made in this competitive market and the video will not be accessible to the public, or useable to drive sales, or increase views and likes—which has been key to converting views to sales.  Additionally, there is a real risk that the number of views and likes will be lost if complete public access is denied on Facebook, YouTube and other social media sites.   Moreover, being forced to comply with the Kentucky Court TRO would gravely impact Purple's business—not just in sales, but in the impact it would have on the company's ability to maintain its increasing overhead and newly hired employees required to keep up with demand.  If forced to take down this video, there is a legitimate chance Purple's business will fail entirely.  This harm cannot be quantified or fully compensated by money damages alone.  Without an order of injunction restraining Tempur + Sealy from prosecution of the Second Filed Action, Purple stands to lose competitive position and goodwill

in the social media marketplace, harms that are unquantifiable and relate to Purple's unique market position, and consequently, are irreparable.

In determining whether to grant an injunction, consideration must be given to whether the defendant would suffer greater harm than the plaintiff if injunctive relief is granted. *Davis v. Minetta*, 302 F.3d 1104, 1116 (10th Cir. 2002). If a defendant's alleged harm from an injunction is of a "self-inflicted nature," this consideration will weigh in favor of granting injunctive relief. *Id.* (cited by analogy *Pappan Enters, Inc. v. Hardee's Food Sys. Inc.*, 143 F.3d 800, 806 (3d Cir. 1998).

Unlike the irreparable harm to Purple, if Tempur + Sealy is restrained from prosecuting the Second Filed Action and from moving to enforce the TRO of the Kentucky Court, Tempur + Sealy can still attempt to obtain temporary relief in the Present Action and suffer little to no harm. Nothing prevented Tempur + Sealy from filing its motion in the Present Action without wasting the parties' time and resources by wrongfully initiating the Second Filed Action and filing its motion there instead. Any harm arising from a delay in obtaining the relief it seeks, assuming this Court will rule consistently with the Kentucky Court, is caused by its own decision to disregard the prior jurisdiction and authority of this Court. The scale of equities weighs in favor of granting Purple's injunctive relief because whatever harm Tempur + Sealy may purport to claim as a result of the injunction, is harm for which only Tempur + Sealy is responsible as it chose to improperly circumvent this Court's jurisdiction and seek affirmative relief in the Second Filed Action. Accordingly, the balance of harms weighs in favor of Purple.

**IV.     An Injunction Serves the Public Interest**

In view of the foregoing, and the likelihood of success argument above, the requested injunctive relief would not be adverse to the public interest.  The public interest should favor this Court from following case precedent in determining whether the "first-to-file rule" provides it, or another court, jurisdiction to decide the issues.  Public policy should encourage litigants to respect this sensible rule to avoid wasting the resources and time of their adversaries and of the courts.

Tempur + Sealy is a large corporation that has accused Purple, a small company, of violating of the Lanham Act via its marketing video; however, Tempur + Sealy's accusations have caused Purple to expend a considerable amount of time and money defending these accusations in two different federal courts.  Tempur + Sealy was well aware that Purple had already filed its Present Action in this Court when Tempur + Sealy disregarded the priority of this Court and raced to the Kentucky courthouse in the Second Filed Action to obtain an injunction against Purple—a remedy that Tempur + Sealy was fully capable of seeking in the Present Action.

An injunction would deter other large corporations from attempting to usurp the control and priority of the first-filed forum and instead, force large corporations that have a presence in the first-filed forum to seek remedies in that particular forum.  While it is obvious that Tempur + Sealy prefers to seek remedies in its home state of Kentucky, it should not be allowed to run roughshod over Purple's choice of forum.  Finally, an injunction would serve the public interest by preventing Tempur + Sealy from seeking remedies in a forum that is simply too far removed from the issues, and is an inconvenient forum for relevant witnesses and documentation.

**V.      The Court Should Waive the Requirement of Posting a Bond**

Although Rule 65 of the Federal Rules of Civil Procedure normally calls for the Court to require the applicant to post security, a trial court has "wide discretion" under Rule 65(c) in determining whether to require security.  *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003).  Thus, a trial court may, in its discretion, determine a bond is unnecessary to secure injunctive relief if there is an absence of proof showing a likelihood of harm to the party against whom injunctive relief is sought.  *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987). As a result, this Court should waive the requirement that Purple post a bond in light of the balance of equities that weighs in favor of Purple.

## V. CONCLUSION

The Second Filed Action violates the first-to-file rule, it was filed to force Purple to litigate in Kentucky the issues previously raised in the Present Action, and it now should be enjoined from proceeding in tandem with or in the place of this proceeding before the Court in the Present Action. For the reasons discussed above, Purple requests that this Court enter a temporary restraining order and preliminary injunction against Tempur + Sealy from proceeding with the Second Filed Action in Kentucky including any action to enforce any TRO (or subsequent orders) of the Kentucky Court.

WHEREFORE, Purple respectfully requests the Court grant Purple the relief requested in its Motion herein, and for other and further relief as this Court deems just and proper.

DATED the  31st  of March, 2016.

LEWIS | HANSEN

*/s/Mark D. Taylor,*
*Attorneys for Plaintiff WonderGel, LLC d/b/a*
*Purple*

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>1st</u> of April, 2016, I have caused a true and correct copy

of the forgoing to be served via electronic mail to the following:

Amy Sullivan Cahill
CAHILL IP, PLLC
4965 U.S. Highway 42, Suite 1000
Louisville, Kentucky 40222
Tel. 502-855-3424
Email: acahill@cahill-ip.com
COUNSEL FOR
TEMPUR SEALY INTERNATIONAL, INC.,
TEMPUR-PEDIC INTERNATIONAL INC.,
TEMPUR-PEDIC MANAGEMENT, LLC.,
TEMPUR-PEDIC NORTH AMERICA, LLC,
and DAN-FOAM APS

David A. Owen
Matthew A. Stinnett
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, KY 40507-1621
Tel. 859-899-8700
Email: mstinnett@dickinsonwright.com
Email:  DOwen@dickinsonwright.com
COUNSEL FOR
TEMPUR SEALY INTERNATIONAL, INC.,
TEMPUR-PEDIC INTERNATIONAL INC.,
TEMPUR-PEDIC MANAGEMENT, LLC.,
TEMPUR-PEDIC NORTH AMERICA, LLC,
and DAN-FOAM APS

LEWIS | HANSEN

/s/Mark D. Taylor
*Attorneys for Plaintiff WonderGel, LLC d/b/a Purple*

23