Kenneth B. Black (#5588)
   Email: *ken.black@stoel.com*
David L. Mortensen (#8242)
   Email: *david.mortensen@stoel.com*
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

David A. Owen (Pending *Pro Hac Vice* admission)
   Email: *DOwen@dickinsonwright.com*
Matthew A. Stinnett (Pending *Pro Hac Vice* admission)
   Email: *MStinnett@dickinsonwright.com*
Dickinson Wright PLLC
300 West Vine Street, Suite 1700
Lexington, KY  40507
Telephone:  (859) 899-8700
Facsimile: (859) 899-8759

*Attorneys for Defendant Tempur Sealy International Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE<br><br>Plaintiff,<br><br>v.<br><br>TEMPUR SEALY INTERNATIONAL, INC.,<br><br>Defendant. | **TEMPUR SEALY INTERNATIONAL, INC.'S OPPOSITION TO WONDERGEL, LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No.:  2:16-cv-00162-BSJ<br><br>Hon. Bruce Jenkins |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
I.     INTRODUCTION ..................................................................................................... 1
II.    BACKGROUND ....................................................................................................... 2
       A.    Tempur-Sealy Has Expended Significant Time and Resources to Establish
             Its Brand in the Marketplace .......................................................................... 2
       B.    Purple's Goldilocks Video is Unlawful and Harmful to Tempur Sealy ............... 5
       C.    Correspondence Between the Parties and Prior Proceedings in the District
             Courts ........................................................................................................... 10
III.   ARGUMENT .......................................................................................................... 12
       A.    Rule 65 Was Never Intended To Allow A Party to Receive An Injunction
             Based on a Procedural Motion ...................................................................... 12
       B.    Standard for Injunctive Relief ....................................................................... 14
       C.    Purple Cannot Establish the Necessary Elements for Injunctive Relief ............ 15
             1.    Purple has Not Shown Likelihood of Success on the Merits ................... 15
             2.    Purple Does Not Face Irreparable Harm ................................................ 26
             3.    The Injunction Will Harm Others ......................................................... 29
             4.    This Injunction is not in the Public's Interest ........................................ 29
       D.    If Injunctive Relief is Granted, Purple Should be Required to Post a Bond ........ 30
IV.    CONCLUSION ....................................................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
   946 F.2d 622 (9th Cir.1991) ......................................................15

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric
   Surgery, Inc.,*
   185 F.3d 606 (6th Cir. 1999) ....................................................25

*AmSouth Bank v. Dale,*
   386 F.3d 763 (6th Cir. 2004) ....................................................20

*Balance Dynamics Corp. v. Schmitt Indus., Inc.,*
   204 F.3d 683 (6th Cir. 2000) ....................................................25

*Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.,*
   189 F.3d 477, 1999 WL 682883 (10th Cir. Sept. 2, 1999) ..........................15, 16, 17

*Castrol, Inc. v. Pennzoil Co.,*
   987 F.2d 939 (3d Cir. 1993)......................................................25

*Catholic Health Partners v. CareLogistics, LLC,*
   973 F. Supp. 2d 787 (N.D. Ohio 2013)............................................20

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,*
   511 F.3d 535 (6th Cir. 2007) ....................................................21

*Church of Scientology of California v. U.S. Dep't of Army,*
   611 F.2d 738 (9th Cir. 1979) ....................................................15, 16, 23, 24

*Circuit City Stores, Inc. v. CarMax, Inc.,*
   165 F.3d 1047 (6th Cir. 1999) ...................................................28

*Continental Oil Co. v. Frontier Refining Co.,*
   338 F.2d 780 (10th Cir. 1964) ...................................................31

*Coquina Oil Corp. v. Transwestern Pipeline Co.,*
   825 F.2d 1461 (10th Cir. 1987) ..................................................31

*Crawford v. Bell,*
   599 F.2d 890 (9th Cir. 1979) ....................................................15, 24

*DigiTrax Entertainment, LLC v. Universal Music Corp.,*
   21 F. Supp. 3d 917 (E.D. Tenn. 2014).............................................21, 22

# TABLE OF AUTHORITIES
(continued)

**Page**

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
  356 F.3d 1256 (10th Cir. 2004) ...............................................................26, 27, 28

*E.E.O.C. v. Univ. of Pennsylvania*,
  850 F.2d 969 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed.
  2d 571 (1990)...........................................................................................15, 16, 17

*Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,
  Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005) .............................21

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008).......................................................................................15, 24

*Great Northern Railway Co. v. National Railroad Adjustment Board*,
  422 F.2d 1187 (7th Cir. 1970) .........................................................................................16

*Greater Yellowstone Coal. v. Flowers*,
  321 F.3d 1250 (10th Cir. 2003) .......................................................................................15

*Group SEB US, Inc. v. Euro-Pro Operating, LLC*,
  774 F.3d 192 (3d Cir. 2014)..............................................................................................28

*ICON Health & Fitness, Inc. v. Beachbody, LLC*,
  No. 1:11-CV-00024-TC, 2011 WL 1899390 (D. Utah May 19, 2011) ......................18, 19, 22

*Innovation Ventures, LLC v. N.V.E., Inc.*,
  694 F.3d 723 (6th Cir. 2012) ...........................................................................................25

*Johnson & Johnson, Inc. v. GAC Int'l, Inc.*,
  862 F.2d 975 (2d Cir. 1988).............................................................................................25

*Limitless Worldwide, LLC v. AdvoCare Int'l, LP*,
  926 F.Supp.2d 1248 (D. Utah 2013)...........................................................................14, 17

*LLC v. Englert*,
  No. 2:06-CV-378 TS, 2007 WL 1933147 (D. Utah Mar. 28, 2007) ......................................30

*MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*,
  No. 1:05 CV 115, 2006 WL 581018 (D. Utah Mar. 7, 2006)....................................16, 20, 22

*In re Morgan David Wine Corp.*,
  372 F.2d 539, 152 USPQ 593 (CCPA 1967) ........................................................................3

*Nacogdoches Oil & Gas, v. Leading Solutions*,
  No. 06–2551–CM, 2007 WL 2402723 (D.Kan. Aug. 17, 2007) ............................................16

## TABLE OF AUTHORITIES
(continued)

**Page**

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm.*
  *Co.*,
  290 F.3d 578 (3d Cir. 2002)...................................................25

*O'Hare Int'l Bank v. Lambert*,
  459 F.2d 328 (10th Cir. 1972) ........................................22, 23

*PPX Enters., Inc. v. Audiofidelity Enters., Inc.*,
  818 F.2d 266 (2d Cir. 1987)...................................................25

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ...........................................16, 24

*Plymouth Press v. Klutz, Inc.*,
  1997 U.S. Dist. LEXIS 12185 (E.D.Mich.1997) ...................16

*Prairie Band*, 253 F.3d at 1246 (10th Cir. 2001).........................15

*Reuters Ltd. v. United Press Int'l, Inc.*,
  903 F.2d 904 (2d Cir.1990)..........................................26, 28

*SCFC ILC, Inc. v. Visa USA, Inc.*,
  936 F.2d 1096 (10th Cir. 1991) ...........................................15

*Schrier v. Univ. Of Co.*,
  427 F.3d 1253 (10th Cir. 2005) ...........................................27

*Shannon's Rainbow, LLC v. Supernova Media, Inc.*,
  683 F. Supp. 2d 1261 (D. Utah 2010)..................................15

*SKS Merch, LLC v. Barry*,
  233 F. Supp. 2d 841 (E.D. Ky. 2002) ..................................30

*Stevens v. Ocwen Fed. Bank FSB*,
  No. 2:06-CV-397 TS, 2006 WL 1409139 (D. Utah May 17, 2006).......14

*Sutter Corp. v. P & P Indus., Inc.*,
  125 F.3d 914 (5th Cir.1997) ................................................16

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir.1987) ................................................19

*Time Warner Cable, Inc. v. DIRECTTV, Inc.*,
  497 F.3d 144(2d Cir. 2007)..................................................29

# TABLE OF AUTHORITIES
(continued)

**Page**

*Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.*,
No. 2:00CV738K, 2001 WL 670926 (D. Utah Jan. 19, 2001) ...............................30

*U–Haul Int'l, Inc. v. Jartran, Inc.*,
793 F.2d 1034 (9th Cir. 1986) ........................................................................25

*UAW v. Dana Corp.*,
1999 WL 33237054 (N.D. Ohio 1999).............................................................20

*Van Andel Institute v. Thorne Research, Inc.*,
Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012) .............20, 21

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
679 F. Supp. 2d 1287 (D. Kan. 2010) ...............................................................16

*White v. Goff*,
348 F. App'x 366 (10th Cir. 2009) ....................................................................15

*Wynn Oil Co. v. American Way Service Corp.*,
943 F.2d 595 (6th Cir. 1995) ..........................................................................28

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*,
16 Fed. Appx. 433 (6th Cir. 2001)................................................................17, 22

**Statutes**

15 U.S.C. § 1125..........................................................................................25

35 U.S.C. § 171..............................................................................................2

15 USC § 1051, Lanham Act .................................................................... passim

**Rules**

Fed. R. Civ. P. 65(c) ..............................................................................12, 13, 30

**Other Authorities**

*#Purple*, YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg ..............................8, 17

BACKSTAGE, http://www.backstage.com/casting/goldilocks-94777/goldilocks-
352438/ (last visited March 24, 2016) ..............................................................6

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Comfort and Sleep*, KICKSTARTER,
 https://www.kickstarter.com/projects/227992716/purple-the-latest-
 technology-in-comfort-and-sleep?ref=nav_search (last visited March 24,
 2016) .................................................................................................................5

https://www.youtube.com/watch?v=TYgaMWGjUXY ...............................................4

MCCARTHY, T. J., MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
 § 30:47.30 (Thomson Reuters 4th ed. 2014)...........................................28

Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last
 visited March 24, 2015) ...........................................................................8

PURPLE, http://onpurple.com/ ...................................................................................8

*Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA
 https://www.sleepsherpa.com/performance-mattresses/purple-mattress-
 review-purple-reign/ (last visited March 24, 2015) ................................9

www.tempurpedic.com...............................................................................................5

Defendant Tempur Sealy International, Inc. ("Tempur Sealy"), by counsel, submits the following opposition to Wondergel, LLC's (d/b/a Purple) ("Purple") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") pursuant to Federal Rule of Civil Procedure ("Rule" or "Rules") 65.  For the reasons set forth below, Purple's Motion should be denied.

## I.      INTRODUCTION

With every day that passes, more and more people are viewing or have viewed Purple's false advertisement that states that lying on a Tempur Sealy mattress is painful and likely to lead to arthritis.  And with every view, the harm to Tempur Sealy grows.  Yet, Purple is taking every procedural step to delay removal of its obvious falsehood.  Purple would prefer to deflect attention from the false advertisement and focus this Court on the question of procedure.  This dispute is not about the irreparable harm to Purple for removing a single, false advertisement, but the harm that would be caused to Tempur Sealy and the general public by permitting Purple's behavior to continue.

A federal district court in the Eastern District of Kentucky agrees with Tempur Sealy.  When the parties litigated these same issues in Kentucky, the district court recognized that, under these circumstances and in line with numerous Sixth Circuit decisions, it need not adhere to the first-to-file rule.  The Kentucky federal court then granted Tempur Sealy's request for an injunction and ordered Purple to immediately remove the false advertisement ("Kentucky Injunction Order").  After losing in the Eastern District of Kentucky, Purple now seeks not only judicial review of the Kentucky Injunction Order from the Sixth Circuit, but also asks this Court

to enjoin the force and effect of that order.  In short, Purple is litigating this issue in three separate courts in the hope of perpetuating its false advertisement.

For the reasons set forth below, Tempur Sealy asks this Court, in its discretion and in line with the Kentucky Injunction Order, to decline to apply the first-to-file rule and deny Purple's Motion.

## II.      BACKGROUND

### A.    TEMPUR-SEALY HAS EXPENDED SIGNIFICANT TIME AND RESOURCES TO ESTABLISH ITS BRAND IN THE MARKETPLACE

Tempur Sealy promotes and sells high-quality TEMPUR-PEDIC Products nationwide, including on television and on the Internet, under the TEMPUR-PEDIC, TEMPUR-PEDIC & RECLINING FIGURE Design and TEMPUR word marks.[1]  As part of those efforts and as is common in the industry, Tempur Sealy has designed and utilizes distinctive trade dress in connection with the TEMPUR-PEDIC Products that distinguishes its products from those of its competitors ("Tempur Sealy Trade Dress").[2]  Tempur Sealy has even obtained a design patent that protects the distinctive features of the TEMPUR-CONTOUR mattress cover.  Tempur Sealy's investment in design patent protection for its TEMPUR-CONTOUR mattress design is further evidence of its investment in its products.[3]

---

[1] *See* Affidavit of Tiffane Thompson, Director of Marketing at Tempur Sealy International, ¶¶ 9, 13 (March 15, 2016) ("Tempur Sealy Affidavit"); a copy of the Tempur Sealy Affidavit is attached as Exhibit 1.

[2] *See* Tempur Sealy Affidavit, Exhibit 1, ¶¶ 4-7.

[3] Design Patent, No. US D746,082 S issued December 29, 2015.  A copy of the patent is attached as Exhibit 2.  Design patents protect non-functional, ornamental features and configurations for new and non-obvious features of an article of manufacture.  35 U.S.C. § 171. Dual protection under trademark law and patent law is always possible where the configuration or shape of an article serves to identify and distinguish the commercial source of the goods and

For example, the TEMPUR-CONTOUR mattress includes a distinctive contoured pattern on the surface and sides of the mattress, a specifically placed orange zipper band around the sides of the mattress, and a contrasting colored fabric on the lower one-third of the mattress.[4] Mattresses are difficult to mark with traditional word marks.  As a result, consumers look to distinctive exterior product features for indications of source associated with a particular brand, including Tempur Sealy's TEMPUR-PEDIC brand.[5]  Stated another way, a customer needs only to see a TEMPUR-PEDIC mattress to know that it is a TEMPUR-PEDIC mattress.[6]



To promote the Tempur Sealy Trade Dress, Tempur Sealy has spent millions of dollars in advertising efforts, including the prominent display of its distinctive trade dress.[7]  Since at least March 2014, Tempur Sealy has used the Tempur Sealy Trade Dress on the TEMPUR-

---

otherwise meets design patent requirements.  One form of protection does not preclude the other. *In re Morgan David Wine Corp.*, 372 F.2d 539, 152 USPQ 593 (CCPA 1967).

[4] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.

[5] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.

[6] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.

[7] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.

CONTOUR mattress as a commercial indicator to communicate to consumers who are shopping for mattresses that the product comes from Tempur Sealy.[8]  In fact, Tempur Sealy designed the Tempur Sealy Trade Dress and has undertaken extensive targeted advertising to secure the commercial significance of the trade dress in the minds of the relevant consumers as a source identifier.[9]

As one example, Tempur Sealy's broadcast television advertisement titled "Tempur-Pedic Covers" is intended to, and does in fact, draw the attention of the relevant consumers directly to the commercially distinctive features of the product, namely the Tempur Sealy Trade Dress.[10]  The "Tempur-Pedic Covers" advertisement is effective in emphasizing the Tempur Sealy Trade Dress as applied to the product by featuring the trade dress prominently.[11]  The "Tempur-Pedic Covers" advertisement aired on national broadcast television over 4,000 times during 2014 alone, including most recently during the highly ranked nationally broadcast television show NCIS.[12]  The "Tempur-Pedic Covers" television advertisement prominently featuring the Tempur Sealy Trade Dress created 939,916,133 commercial impressions among consumers who have viewed the advertisement.[13]

---

[8] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.

[9] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.

[10] Tempur Sealy Affidavit, Exhibit 1, ¶¶ 9-10; screen shots taken from the "Tempur-Pedic Covers" advertisement featuring the trade dress are attached, collectively, as Exhibit 3.  *See also* https://www.youtube.com/watch?v=TYgaMWGjUXY. The Affidavit of Amy Sullivan Cahill authenticating the website references and screen shots contained herein is attached hereto as Exhibit 4.

[11] Tempur Sealy Affidavit, Exhibit 1, ¶ 9.

[12] Tempur Sealy Affidavit, Exhibit 1, ¶ 11.

[13] Tempur Sealy Affidavit, Exhibit 1, ¶ 12.

All advertising for Tempur Sealy's TEMPUR-CONTOUR product, including advertising on Tempur Sealy's commercial web site www.tempurpedic.com, features the TEMPUR-CONTOUR Trade Dress prominently.[14]  Although Tempur Sealy could display its mattresses in advertisements with sheets in a "made bed" fashion, it intentionally displays and emphasizes the Tempur Sealy Trade Dress as a way for consumers to identify Tempur Sealy as the source of the Tempur Sealy Products.[15]  Sales of the TEMPUR-CONTOUR model alone were $135,998,639 in 2014 and exceeded $148,838,218 in 2015.[16]  Total sales of products bearing the TEMPUR-CONTOUR Trade Dress have exceeded $300,000,000 since its introduction in early 2014.[17]

In the end, Tempur Sealy has spent millions of dollars advertising its products bearing the Tempur Sealy Trade Dress.  As a result, its trade dress has become well-known among consumers as an indicator of a single commercial source and a reputation for high quality.[18]

**B.    PURPLE'S GOLDILOCKS VIDEO IS UNLAWFUL AND HARMFUL TO TEMPUR SEALY**

Upon information and belief, Purple engaged in a crowd-funding campaign to raise capital to promote its new business beginning in September 2015 using the Internet based crowd-funding web site Kickstarter.[19]  After the capital fundraising campaign, in or around December

---

[14] Tempur Sealy Affidavit, Exhibit 1, ¶ 13; *see* an example of Tempur Sealy's TEMPUR-CONTOUR trade dress as featured on Tempur Sealy's web site appears below and is attached hereto as Exhibit 5.

[15] Tempur Sealy Affidavit, Exhibit 1, ¶ 14.

[16] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[17] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[18] Tempur Sealy Affidavit, Exhibit 1, ¶ 13.

[19] *See Purple: The Latest Technology in Comfort and Sleep*, KICKSTARTER, https://www.kickstarter.com/projects/227992716/purple-the-latest-technology-in-comfort-and-sleep?ref=nav_search (last visited March 24, 2016).

2015, Purple hired a third-party well-known for "viral" Internet advertising to conduct a "talent search" with the purpose of creating an online advertisement with the hope that it would "go viral." Purple and its production company used an interactive web site inviting applicants to submit an audition video for this purpose.[20] A script for the advertisement was included on the web site used to solicit actors to submit an audition tape for the video advertisement. The script for the advertisement includes a reference to the intended use of the "Tempurpedic logo" in one frame of the video.[21]

In December 2015 and/or January 2016, Purple created and published the "Goldilocks Video" ("False Advertisement") in which it featured the TEMPUR-CONTOUR mattress as shown in the screenshot below.

---

[20] *See Goldilocks (Lead)*, BACKSTAGE, http://www.backstage.com/casting/goldilocks-94777/goldilocks-352438/ (last visited March 24, 2016).

[21] A copy of the script is attached as Exhibit 6 ("False Advertisement Script").



The False Advertisement features an actor/spokesperson identified by Purple as "Goldilocks" who makes the following statements directed to the TEMPUR-Contour mattress:

> **Looking for some shoulder pain?**
> **Try a hard mattress.**
> **It may feel like a rock and put pressure on your hips.**
> **But it's the perfect way to tell your partner:**
> **"Hey baby; Want some arthritis?"**[22]

The False Advertisement includes the Goldilocks character falling back onto the TEMPUR-CONTOUR mattress in a manner and accompanied by a facial expression and sound effects that suggest that the mattress is extremely hard and painful for those who use it, as shown in the screenshot below.

---

[22] False Advertisement Script, Exhibit 6 (emphasis added).



The False Advertisement was posted to YouTube.com in January 2016 and had received over three million (3,000,000) views by March 25, just three months later.[23]  The False Advertisement was also posted on the home page of Purple's commercial web site[24] and Facebook page.[25]  The False Advertisement on Facebook had received nearly fourteen million (14,000,000) views, over seventy-nine thousand likes (79,000) and had been shared over fifty-three thousand times (53,000) by late March.[26]  Some of the comments to the Facebook post include:

---

[23]  Purple, *How to Use a Raw Egg to Determine if Your Mattress is Awful - #Purple*, YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg (last visited March 24, 2016).

[24]  PURPLE, http://onpurple.com/ (last visited March 24, 2016).

[25]  Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last visited March 24, 2015) (showing the video as the initial post on Purple's timeline and on its "ABOUT" page).

[26]  *Id.* (the video information indicates that it has been viewed over thirteen million (13,000,000) times and shared over fifty-two thousand (52,000) times).

> Just bought a $5000 Tempurpedic.  wish I saw this first ☹
> This looks like an affordable alternative to Tempurpedic
> maybe we can try this before buying a tempurpedic?   100 day
> money back guarantee?[27]

The False Advertisement was also posted on the Sleep Sherpa web site.[28]

Consumers who have viewed the False Advertisement have shown that they recognize the mattress as a TEMPUR-PEDIC product by leaving "comments" on the YouTube site where the video is displayed.[29]  For example, one consumer writes:

> Awesome commercial and rather convincing, but I must say - the
> Purple Bed could have been tweaked to where it would keep an
> egg from breaking (the purple bedding accommodates an egg
> rather well) but that doesn't necessarily mean it is a good bed for
> human support. For example, **a tempur pedic might be great for
> support but might not keep an egg for breaking simply because
> it wasn't designed for that**.[30]

And another consumer offers the separate comment:

> **[T]he only thing that gives me pause to question is the fact that
> it doesn't mention if it is better than the tempurpedic**. I want
> one but if I'm going to get it I want to make sure that it is truly the
> best bed I can get.[31]

---

[27] Screenshots of these comments on Facebook are attached as Exhibit 7.

[28] *Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA https://www.sleepsherpa.com/performance-mattresses/purple-mattress-review-purple-reign/  (last visited March 24, 2015).

[29] *See supra* note 22; *see also* YouTube comments, all YouTube comments are attached collectively as Exhibit 8 (emphasis added) ("YouTube Comments").

[30] YouTube Comments, Exhibit 8 (emphasis added).

[31] YouTube Comments, Exhibit 8 (emphasis added).

The Facebook comments discussed above mirror this recognition.[32]   And if there was any question regarding what brand of mattress Purple intended to display in the False Advertisement, it was put to rest by this comment from Purple itself:

> PURPLE RESPONSE: **Tempurpedic was the hard mattress in the video**.[33]

## C.   CORRESPONDENCE BETWEEN THE PARTIES AND PRIOR PROCEEDINGS IN THE DISTRICT COURTS

On February 19, 2016, counsel for Tempur Sealy transmitted  to Purple a cease and desist letter setting forth Tempur Sealy's objection to the False Advertisement, including the display of Tempur Sealy's TEMPUR-CONTOUR product accompanied by Purple's false and/or misleading commercial representations.[34]   Seven days later, Purple responded, refusing to remove the False Advertisement and giving Tempur Sealy notice that Purple filed a pre-emptive declaratory judgment action ("Utah Pre-emptive Action") against Tempur Sealy "to protect [Purple's] interests."[35]   The Utah Pre-emptive Action seeks, among other things, a declaratory judgment that the False Advertisement does not violate the Lanham Act.[36]   Despite filing the

---

[32] *See* Exhibit 8.

[33] YouTube Comments, Exhibit 8 (emphasis added).

[34] February 19, 2016 Letter is attached as Exhibit 9.

[35] A copy of the February 26, 2016 Letter is attached as Exhibit 10.

[36] *See generally* Complaint, R. 2.  The Complaint also includes a count for abuse of process (even though Tempur Sealy had yet to file suit), a claim for monopolization (that does not even both to define the geographical scope of the market in question) and a tortious interference claim (despite never even identifying any specific customers of Purple for which Tempur Sealy was allegedly interfering).  As the Kentucky District Court noted at oral arguments, these additional claims are specious, at best.

Utah Pre-emptive Action, Purple did not bother to issue a summons to serve Tempur Sealy until over a month later.  In fact, Purple did not serve Tempur Sealy with the Utah Pre-emptive Action until March 29, 2016, the eve of the injunction hearing in Kentucky.

Meanwhile, on March 15, 2016, Tempur Sealy filed an action in the Eastern District of Kentucky ("Kentucky Coercive Action") against Purple and EdiZone, LLC (collectively, "Kentucky Defendants")[37] and immediately issued a summons to each.[38]  Service was effected on Purple in the Kentucky Coercive Action just a day later.[39]  Shortly thereafter, on March 25, 2016, Tempur Sealy filed a motion for temporary restraining order and preliminary injunction ("Tempur Sealy's Motion for Injunctive Relief").[40]  In response, Purple filed a Motion to Dismiss, Stay or Transfer, including an argument addressing the first-to-file rule.  The Kentucky District Court heard oral arguments on Tempur Sealy's Motion for Injunctive Relief on March 30, 2016.[41]  Subsequently, the Kentucky District Court denied Purple's Motion to Dismiss, Stay or Transfer and found that the first-to-file rule was not appropriate under the present circumstances.[42]  After jurisdiction was established, the Kentucky District Court heard oral arguments on the injunctive relief requested by Tempur Sealy.[43]  The Kentucky District

---

[37] A copy of the Complaint filed in the Kentucky Coercive Action is attached as Exhibit 11 ("Kentucky Coercive Action Complaint").

[38] Kentucky Coercive Action Complaint, Exhibit 11.

[39] Kentucky Coercive Action Complaint, Exhibit 11.

[40] Kentucky Coercive Action Complaint, Exhibit 11.

[41] Kentucky Coercive Action Complaint, Exhibit 11.

[42] A copy of the Kentucky Injunction Order is attached as Exhibit 12.

[43] Kentucky Coercive Action Complaint, Exhibit 11.

Court found that all of the relevant factors were met, that injunctive relief was warranted, and it issued the Kentucky Injunction Order.[44]

After all of the above was completed in the Kentucky Coercive Action, only then did Purple file the present Motion.  That same day, Purple filed a motion in the Kentucky Coercive Action requesting a stay of the Kentucky Injunction Order pending a yet unfiled appeal ("Kentucky Motion to Stay").[45]  Consequently, if Purple's pleadings are taken to be true, then Purple's actions in this matter will result in three courts hearing this dispute – this Court, the Kentucky District Court and the Sixth Circuit Court of Appeals.

## III.    ARGUMENT

### A.    RULE 65 WAS NEVER INTENDED TO ALLOW A PARTY TO RECEIVE AN INJUNCTION BASED ON A PROCEDURAL MOTION

Like fitting a square peg into a round hole, Purple has moved for an injunction under Rule 65 seeking relief the Rule was never intended to provide.  As described below, the quixotic nature of Purple's request is the first among several red flags that warrants a denial of the Motion.

First, Purple seeks to have this Court enjoin the effect of an order of another federal district court.  Purple fails to cite **any** precedent where a federal district court has enjoined the force and effect of another federal district court's injunction.  Rather, the Rules provide a procedure for challenging an injunction if a party believes it was incorrectly granted – namely, an appeal.  Purple acknowledged that the correct procedure for challenging the Kentucky

---

[44] Kentucky Injunction Order, Exhibit 12.

[45] A copy of the Motion to Stay filed by Purple in the Kentucky Coercive Action is attached as Exhibit 13 ("Kentucky Motion to Stay").

Injunction Order is an appeal when it filed its Kentucky Motion to Stay indicating its intent to appeal.[46]   Now, Purple is filing multiple motions in multiple courts in the hope that it can continue its promotion of the False Advertisement.  Tempur Sealy must now fight this battle in three courts.

Second, Purple moves to enjoin a party not on the basis of a substantive claim, but on purely procedural grounds.  Like so many other arguments, Purple fails to cite to **any** cases stating that an issue of jurisdiction regarding the first-to-file rule can be properly resolved through Rule 65.  The Rule was never designed to resolve a jurisdictional question.  Like Purple's prior argument, such a notion is unprecedented and unfounded in jurisprudence.

Moreover, Purple's Motion attempts to lower its standard for meeting the necessary legal argument.  Purple has previously filed in this action a Motion to Enjoin the Kentucky action[47] where Purple argues for the application of the first-to-file rule.  Although Purple could have sought to expedite briefing on that Motion to Enjoin, Purple instead filed the present Motion. Thus, rather than actually succeeding on the application of the first-to-file rule, Purple now asks for relief by merely showing a likelihood of success on the merits – **that there is a likelihood that this Court should excise jurisdiction as opposed to actually exercising jurisdiction**. Stated another way, rather than pursue the Motion to Enjoin, Purple has sought relief under Rule 65 with the hopes of using a lower standard to gain permission to continue promoting and marketing the False Advertisement.  Before proceeding, Purple must actually demonstrate that

---

[46] Kentucky Motion to Stay, Exhibit 13.

[47] Motion to Enjoin Prosecution of the Second-Filed Action, D.E. 5.

this Court should exercise jurisdiction, not merely default to an exercise of jurisdiction under the guise of an injunction.

Finally, there is a substantial question whether Purple's Motion, even if successful, will be effective given that Purple has failed to name all the relevant parties.  Tempur Sealy, like most modern companies, has multiple entities that market and sell its products in various markets and each of those entities shares in different intellectual property.  In Kentucky, Tempur Sealy is properly and fully represented through five different entities: Tempur Sealy International, Inc., Tempur-Pedic International Inc., Tempur-Pedic Management, LLC, Tempur-Pedic North America, LLC, and Dan Foam ApS.  Purple has only named one of these entities in this lawsuit. If relief is given to Purple and structured in such a way as to prevent Tempur Sealy from taking certain action, the remaining four entities will proceed as they are not before this Court.

Purple's requested injunctive relief simply is not proper.  Moreover, as detailed below, Purple cannot show a substantial likelihood of success on its Motion.

**B.    STANDARD FOR INJUNCTIVE RELIEF**

A district court balances the following four factors when ruling on a motion for a temporary restraining order or preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.[48]  "As

---

[48] Motion, D.E. 6, p. 12 (citing *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F.Supp.2d 1248, 1250 (D. Utah 2013); *Stevens v. Ocwen Fed. Bank FSB*, No. 2:06-CV-397 TS, 2006 WL 1409139, at *1 (D. Utah May 17, 2006) ("[t]he standard for granting a TRO is the same as that for a preliminary injunction").

the Tenth Circuit has stated, because injunctive relief "is an extraordinary remedy, the [requesting party's] right to relief must be clear and unequivocal."[49]

## C.   PURPLE CANNOT ESTABLISH THE NECESSARY ELEMENTS FOR INJUNCTIVE RELIEF

### 1.   Purple has Not Shown Likelihood of Success on the Merits

The first-to-file rule provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the district court in the subsequently filed action is **permitted** to decline jurisdiction.[50]   Three threshold elements must be shown before the first-to-file rule is applicable: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues.[51]   Both the letter and the spirit of the "first-to-file" rule are grounded in these principles of equity and comity.[52]   "Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with

---

[49] *Prairie Band*, 253 F.3d at 1246 (10th Cir. 2001) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)) (internal quotations omitted); *see White v. Goff*, 348 F. App'x 366, 369 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

[50] *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477 (table), 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999)) (the first-to-file rule "**permits** a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court) (emphasis added); *see Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278 (D. Utah 2010) ("A Federal District Court which first obtains jurisdiction of parties and issues **may** preserve its jurisdiction by enjoining proceedings involving the same issues and parties") (emphasis added).

[51] *Shannon's Rainbow*, 683 F. Supp. 2d at 1278 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)).

[52] *See Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) ("embodies considerations of judicial administration and conservation of resources" and duplicative litigation); *see E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990); *see Buzas Baseball*, 1999 WL 682883, at *2 (the first to file rule was developed to "aid" in these goals); *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (quoting *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979)).

each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'"[53]  The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."[54]

"District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule."[55]  Circumstances that have historically been considered grounds for departing from the rule in other circuits include: (1) bad faith;[56] (2) forum shopping;[57] (3) when the second action has been litigated further than the initial suit;[58] (4) when a party filed the initial litigation in one forum in anticipation that another

---

[53] *Buzas Baseball*, 1999 WL 682883, at *2 (quoting *Sutter Corp. v. P & P Indus., Inc*., 125 F.3d 914, 917 (5th Cir.1997)); *see Church of Scientology*, 611 F.2d at 750 (quoting *Great Northern Railway Co. v. National Railroad Adjustment Board*, 422 F.2d 1187, 1193 (7th Cir. 1970)) ("The doctrine [of comity] is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."); *see E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 974 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990) (citing quoting *Kline*, 260 U.S. at 229, 43 S.Ct. at 81).

[54] *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982)

[55] *Univ. of Pennsylvania*, 850 F.2d at 972; *see MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006) ("District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand.").

[56] *See, e.g., Plymouth Press v. Klutz, Inc.*, 1997 U.S. Dist. LEXIS 12185, *5–6 (E.D.Mich.1997) (did "plaintiff in the earlier-filed declaratory action misle[a]d the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse.").

[57] *See, e.g., Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. 2010) (citing *Nacogdoches Oil & Gas, v. Leading Solutions*, No. 06–2551–CM, 2007 WL 2402723, *2 (D.Kan. Aug. 17, 2007) (a court may suspend application of the first-to-file rule for "bad faith, anticipatory filing, and forum shopping")).

[58] *Church of Scientology*, 611 F.2d at 750 ("Under the circumstances, the goal of judicial efficiency will be best met if we overlook the "first to file" rule, and defer to the litigation in progress in the D.C. Circuit.").

suit was imminent in another forum.[59]   For example, in *Buzas Baseball*, the Tenth Circuit held

that the district court did not abuse its discretion by declining to follow the first-to-file rule.[60]

The plaintiff's admission that "one consideration" in its decision to file the action was a concern

that the other party would file suit first in a court of concurrent jurisdiction was sufficient to

decline to follow the rule.[61]   Indeed, as another Court in this District previously stated, the

exceptions should "discourage a race 'to the courthouse door in an attempt to preempt a later suit

in another forum.'"[62]   Consequently, district courts are given "the discretion to dispense with the

first-to-file rule where equity so demands."[63]

Moreover, despite Purple's attempt to distinguish Utah's first-to-file jurisprudence from

that in the Sixth Circuit,[64] courts in the Tenth Circuit have reached similar holdings under

analogous fact patterns.  The *ICON Health and Fitness v. Beachbody, LLC* matter is particularly

---

[59] *See, e.g., Buzas Baseball*, 1999 WL 682883 at *3 ("A district court may decline to follow the first-to-file . . . if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction"); *see Univ. of Pennsylvania*, 850 F.2d at 977 (the Court found that after "viewing the totality of the circumstances, the district court did not abuse its discretion by declining to dismiss the second-filed suit.").

[60] *Buzas Baseball*, 1999 WL 682883, at *3 ("A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction").

[61] *Id.* ("plaintiff has admitted that one consideration in filing this action was its concern that defendant would file suit.").

[62] *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331 (D. Utah 2014) (*MedSpring Grp.*, 2006 WL 581018 at *3).

[63] *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001).

[64] Motion, D.E. 6, p. 16.

apposite.[65]   In that case, both parties were home fitness program competitors.[66]   On February 1, 2011, Beachbody sent a cease and desist letter to ICON "notifying ICON that it was making false and unsubstantiated advertising claims disparaging to Beachbody's products...."[67] Beachbody identified the specific advertisement and informed ICON that the false advertisement would cause Beachbody injury and liability under the Lanham Act.[68]   During negotiations between the parties, ICON filed a declaratory judgment action.[69]   ICON did not, however, serve Beachbody with the complaint and continued to correspond with Beachbody.[70]   After Beachbody sent ICON an additional letter asking it to comply with the request to remove the false advertisement, Beachbody filed a false advertisement complaint in the United States District Court for the Central District of California.[71]   Beachbody immediately served ICON with a copy of its coercive complaint.[72]   Subsequently, ICON served Beachbody with the declaratory judgment complaint.

Upon its review of the first-to-file rule, the Utah district court found that the preceding facts constituted "procedural fencing" and refused to apply the rule.[73]   As an initial mater, the court stated that the fact that ICON filed a declaratory judgment action made the complaint

---

[65] *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *1 (D. Utah May 19, 2011).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at *3.

immediately suspect.[74]  The court was additionally persuaded to apply an exception to the first-to-file rule because: "Beachbody delayed filing the California action in a good faith attempt to pursue settlement negotiations[;]" Beachbody's cease and desist letter included the language that the "dissemination by ICON of false and misleading claims is likely to cause serious injury to Beachbody, LLC, and give rise to liability under the federal Lanham Act" and stated that it would take all necessary actions if ICON did not comply with its request; "ICON's complaint makes clear that it filed the declaratory judgment action in anticipation of Beachbody's threatened action. ICON, by its own admission, understood Beachbody's February 1 letter as 'rais[ing] a reasonable apprehension of the filing of a lawsuit against ICON[;]'" and "ICON did not serve its declaratory judgment complaint on Beachbody until March 9, one day after Beachbody filed its false advertising complaint."[75]   "ICON's delay in serving Beachbody, combined with the other factors discussed above, have persuaded the court" that the first-to-file rule was inapplicable.[76]

Importantly, the Sixth Circuit, the jurisdiction in which the Kentucky district court sits, has held that "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing.  Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping."[77]   The Sixth Circuit and district courts within it have generally

---

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987) ("[T]he mere fact that [plaintiff] filed its declaratory judgment action first does not

declined to apply the first-to-file rule when a declaratory judgment action is filed before a coercive action involving the same parties and issues.[78]  As the Sixth Circuit wrote in *AmSouth Bank v. Dale*, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, **a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit**."[79]  The Tenth Circuit appears to agree with this concept, stating that "[a] declaratory suit is immediately suspect as an improper anticipatory filing because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense."[80]

For example, in *Van Andel*, plaintiffs filed suit alleging trademark infringement and unfair trade practices. The parties had previously made efforts to resolve the dispute, but, on the day those discussions collapsed, defendants filed a declaratory judgment action in Idaho. Plaintiffs soon after filed their coercive action in the Western District of Michigan.  The court, citing the precedents in the Sixth Circuit, declined to follow the first-to-file rule.[81]  The court

---

give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation ... to adopt such a rule here.") (internal citations omitted)).

[78] *See*, *e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004) ("In any case, the first-to-file rule is not a strict rule and more often than not gives way in the context of a coercive action filed subsequent to a declaratory action."); *UAW v. Dana Corp.*, 1999 WL 33237054 at *6 (N.D. Ohio 1999) ("Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit."); *Van Andel Institute v. Thorne Research, Inc.*, Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012); *Catholic Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, (N.D. Ohio 2013).

[79] 386 F.3d at 791 n. 8 (citing *UAW v. Dana Corp.*, Civil Act. No. 3:99-CV-7603, 1999 WL 33237054, *6 (N.D. Ohio Dec.6, 1999)) (emphasis added).

[80] *MedSpring Grp.*, 2006 WL 581018 at *4).

[81] *Van Andel*, 2012 WL 5511912, at *3.

cited several factors, including defendants' filing of the complaint at 7:30 p.m. the night following settlement discussions as clear indication that defendants were clearly forum shopping.[82]  In *Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,[83] a declaratory judgment action was filed by the defendant in its home state before the coercive action was filed by the natural plaintiffs in the Eastern District of Michigan.  Upon review of the factors that weigh against application of the first-to-file rule, the district court rejected defendant's motion to transfer and proceeded with the coercive action.[84]  Similarly, in *DigiTrax Entertainment, LLC v. Universal Music Corp.*,[85] the district court also rejected the first-to-file rule and refused jurisdiction over the pending declaratory judgment action.

> DigiTrax's [Declaratory Judgment Action] states, in the very first paragraph, that "DigiTrax brings this complaint seeking declaratory relief because Universal has *threatened it with litigation*, claiming copyright infringement of Universal's copyrighted content used in DigiTrax's Karaoke Cloud Platform." (emphasis supplied). Thus, there is no dispute that DigiTrax knew that Universal asserted copyright claims against it.[86]

In light of these Sixth Circuit cases, the Kentucky district court agreed with Tempur Sealy, found that application of the first-to-file rule in this case was inappropriate and, based on this ruling, granted Tempur Sealy's Motion for Injunctive Relief.[87]

---

[82] *Id.*

[83] Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005).

[84] *Id.* at *3.

[85] 21 F. Supp. 3d 917 (E.D. Tenn. 2014).

[86] *Id.* at 925-26.

[87] Kentucky Injunction Order, Exhibit 13, p. 3 (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)) ("The court sees no reason to apply the rule in the context of a coercive action filed subsequent to Defendant's anticipatory suit filed in Utah which is, at its heart, an action for a declaratory judgment.").

Here, as in *ICON* and *DigiTrax*, Purple's filing of the Utah Pre-emptive Action was nothing more than procedural fencing.  Purple, in its first-ever correspondence with Tempur Sealy on the topic, said as much when it stated that the Utah Pre-emptive Action was designed "to protect [Purple's] interests."[88]  The Utah Pre-emptive Action seeks, among other things, a declaratory judgment that the False Advertisement does not violate the Lanham Act, the mirror image of Tempur Sealy's claims in the Kentucky Coercive Action.  And like the parties in *DigiTrax*, Purple blatantly states in this Utah Pre-emptive Action that, "[h]aving received Tempur + Sealy's threat of suit, Purple is forced to initiate this action for a declaratory judgment and the recovery of damages caused by that wrongful conduct."[89]  Yet, Purple only issued the summons after Tempur Sealy filed the Kentucky Coercive Action, something that courts have previously described as evidence of "bad faith" and "procedural fencing."[90]  Meanwhile, Tempur Sealy delayed filing its litigation believing that it was negotiating with Purple in good faith and without the involvement of the courts.[91]  The Utah Pre-emptive Action was filed for no reasons other than the hope of keeping any litigation in the confines of Purple's chosen forum and to avoid litigating the False Advertisement in Kentucky where Tempur Sealy is based.

In fact, the Tenth Circuit first-to-file cases that Purple cites actually support Tempur Sealy.[92]  In the *O'Hare* case, the initial suit was initiated in Illinois, but the opinion about

---

[88] A copy of the February 26, 2016 Letter is attached as Exhibit 10; *see* Complaint, D.E. 2.

[89] Complaint, D.E. 2, ¶ 11.

[90] *Zide Sport Shop*, 16 Fed. Appx. at 437.

[91] *See MedSpring Grp.*, 2006 WL 581018 at *4 ("the first-to-file rule is used to protect "those parties who were prepared, and had every intention, to pursue foreseeable legal action but failed to bring suit first due solely to their attempt to settle the matter without court involvement.").

[92] *See* Motion, D.E. 6, pp. 14-15.

whether the first-to-file rule is appropriate stems from an Oklahoma district court decision, a "second-filed" court.[93]   The Illinois Case was dismissed for lack of jurisdiction and during the pendency of the appeal, litigation was also initiated in Arkansas, Texas and Oklahoma.[94] Subsequently, the Seventh Circuit found that jurisdiction was appropriate and reinstated the Illinois cause of action.[95]   As a result, the Tenth Circuit held "[w]here, as here, the complaint and cause of action is identical to that first filed in another federal forum having prima facie jurisdiction, the United States District Court for the Western District of Oklahoma abused its discretion in not granting the Bank's motion to stay proceedings until the first suit had been determined by the United States District Court for the Northern District of Illinois and after all appellate avenues had been availed or waived."[96]   Thus, it was the second-filed court that determined that the rule should be applied and a stay should be invoked, not the first-filed court in Illinois, enjoining a different court from enforcing its orders.[97]

Ultimately, this Court is faced with the prospect of wading into a dispute that is already well under way on the merits in Kentucky.   Such a prospect has parties undertaking multiple fights on multiple fronts with the chance of contradictory outcomes.   It will also unnecessarily waste the Courts' and the parties' resources.   The Ninth Circuit case of *Church of Scientology* is informative.   In that case, the Ninth Circuit held that, because the litigation in the second lawsuit

---

[93] *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 330 (10th Cir. 1972) ("During the pendency of [the Seventh Circuit] appeal from the dismissal order entered by the Illinois Federal District Court, the Bank commenced identical actions in the court below").

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.*

already proceeded, judicial efficiency would no longer be met by following the first-to-file rule and the goals of the rule would be better met by overlooking the rule and deferring to the litigation that was already underway.[98]   In that case, the court held that the realities of the modern judicial system may lead a court to determine that it is better to exercise its discretion and decline to follow the first-to-file approach.[99]   As in *Church of Scientology*, the Kentucky District Court has acted in this matter and made decisions related to the parties' respective positions, including the application of the first-to-file rule based on Sixth Circuit law.  As Purple has shown by filing a Motion to Stay in the Kentucky District Court, it understands that its avenue for judicial relief from the Kentucky Injunctive Order is the Sixth Circuit Court of Appeals, not a competing action in this Court.

Accordingly, Tempur Sealy believes the present dispute, like so many in the cases discussed above, is a perfect example of when a court should decline to follow first-to-file rule. Purple has not shown nor is it likely ever to show that it will succeed on the merits of its first-to-file arguments.

a.   PURPLE'S LIKELIHOOD OF SUCCESS ON THE MERITS PALES IN COMPARISON TO ITS VIOLATIONS OF THE LANHAM ACT.

Purple's arguments, of course, must be contrasted with Tempur Sealy's successful obtaining of injunctive relief in Kentucky.  The Lanham Act ("Act") provides a private right of action to a company whenever its competitor publishes a false or misleading statement of fact

---

[98] *Church of Scientology*, 611 F.2d at 750 (quoting *Crawford*).  Despite Purple's argument otherwise, the Kentucky District Court found that it had both subject matter and personal jurisdiction over Purple.

[99] *Pacesetter Sys.*, 678 F.2d at 95; *see Employers Ins. of Wausau*, 522 F.3d at 275 ("two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action; . . . and (2) where 'special circumstances' warrant giving priority to the second suit").

about the company's products or services.[100]  Liability for false advertising arises under the Act "if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers."[101]   In the first instance, where statements are literally false, a violation may be established without evidence that the statements actually misled consumers.[102]  Instead, actual deception is presumed in such cases.[103]

Purple's statements about Tempur Sealy's products, even when taken alone, are outrageous and literally false:

> **Looking for some shoulder pain?**
> **Try a hard mattress.**
> **It may feel like a rock and put pressure on your hips,**
> **But it's the perfect way to tell your partner,**
> **"Hey baby; Want some arthritis?"**

These commercial statements are literally false because they deliver an immediate message that Tempur Sealy's mattresses are so hard and uncomfortable as to be unusable, physically painful, and physically harmful.  There is no need for viewers or consumers to integrate the components of the message to draw the conclusion.[104]  Purple, in Kentucky, attempted to argue that there should be an exception in the Lanham Act because the advertisement was made in jest or

---

[100] *See* 15 U.S.C. § 1125.

[101] *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735 (6th Cir. 2012) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)) (internal quotations omitted); *see also Castrol, Inc. v. Pennzoil Co*., 987 F.2d 939, 943 (3d Cir. 1993).

[102] *See, e.g., Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatry Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999); *Johnson & Johnson, Inc. v. GAC Int'l, Inc.*, 862 F.2d 975, 977 (2d Cir. 1988); *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 272 (2d Cir. 1987).

[103] *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 694 (6th Cir. 2000); *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040 (9th Cir. 1986).

[104] *Novartis*, 290 F.3d at 586–87.

because the violation was only *de minimis* or that Purple is the "little guy."   In the end, a violation of the law is a violation of the law.   And Purple has unquestionably violated the Lanham Act.

### 2.      Purple Does Not Face Irreparable Harm

Purple has not even attempted to argue that it will suffer irreparable harm by having to litigate in Kentucky rather than in this Court.   Nor could Purple make any such showing even if it had tried.   After all, Purple has engaged Kentucky counsel and is litigating the matter in Kentucky on its merits.   The simple reality is that Purple does not care for the Kentucky District Court's decisions.   But that is no basis for irreparable harm or for injunctive relief here.

For that reason, Purple improperly attempts to shift the playing field and argues about having to take down the False Advertisement as a result of the Kentucky Injunction Order.   Even then, Purple is entirely unable to show the harm it claims.   "[C]ourts have consistently noted that '[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'"[105] In determining what it means to suffer irreparable harm, the Tenth Circuit "case law indicates that the injury must be both certain and great, and that it must not be merely serious or

---

[105] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)).

substantial."[106]   Further, "[i]t is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[107]

Purple has "made no attempt to apprise this court of any evidence in the record showing actual or significant risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages."[108]   Instead, in its filings in Kentucky, Purple has specifically stated that its sales would decrease by more than fifty percent.[109]   In short, Purple's alleged irreparable harm is the damages to its sales, which is solely monetary.

Moreover, the Kentucky Injunction Order only requires that Purple remove the False Advertisement.  It does not prohibit Purple from advertising its products in some other manner or from using any of the other methods in its arsenal to promote its brand.  Purple may continue to participate in all other marketing that it is involved in or begin initiating other marketing campaigns.  The removal of an advertisement says nothing more to a consumer than that a company is changing its tactics or its marketing strategy.  Purple's brand will not be affected.  As the Kentucky District Court specifically stated, "Purple's business should not be significantly affected and consumers will still have complete access to Purple's products."  The fact that Purple may lose customers is entirely compensable by a monetary judgment at the end of the litigation.  To that end, Tempur Sealy was required to post a $100,000 bond in the Kentucky District Court.

---

[106] *Dominion Video Satellite*, 356 F.3d at 1262-63.

[107] *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (internal citations and quotations omitted).

[108] *Id.*

[109] Kentucky Motion to Stay, McGarvey Affidavit ¶ 14, Exhibit 13.

Purple is unable to meet the high threshold for "irreparable harm," and since this prong is dispositive, the Court should deny Purple's Motion.[110]

        a.    *Purple's Irreparable Harm Compared with Tempur Sealy's Irreparable Harm*

The long-standing rule in intellectual property cases is that once a plaintiff shows a likelihood of success on the merits, irreparable harm is presumed.[111]  But, even without that presumption, Tempur Sealy can still establish irreparable harm caused by Purple's continued promotion of the False Advertisement:

- As described above, Tempur Sealy has spent millions of dollars establishing its trade dress and making consumer impressions regarding that trade dress, evidence of which in false advertising litigation supports finding of irreparable harm.[112]

- In false advertising cases, evidence that the parties are direct competitors is evidence of irreparable harm because a direct competitor's reputation is likely to be harmed and this harm is difficult, if not impossible, to quantify.[113]

---

[110] *See Dominion Video Satellite*, 356 F.3d at 1260 (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)).

[111] *See* McCarthy, T. J., McCarthy on Trademarks and Unfair Competition, § 30:47.30 (Thomson Reuters 4th ed. 2014).  *See also Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1995) ("a finding of irreparable injury ordinarily flows when a likelihood of confusion or possible risk to reputation appears …  The above approach is consistent with this court's approach …"); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) ("The law of this Circuit holds that no particular finding of … irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases …[I]rrepable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition …'").

[112] *Group SEB US, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 205 (3d Cir. 2014).

[113] *See generally Groupe SEB* (agreeing with the district court that "SEB is likely to suffer irreparable harm to its brand reputation and goodwill ... by the literally false comparative advertising claims at issue, the competitive relationship between the parties and products, and … [the fact that] harm to SEB's brand reputation and goodwill is impossible to quantify" upholding showing of  likelihood of irreparable harm to its brand reputation and goodwill).

- Evidence that Purple advertisements call to mind the Tempur Sealy products is relevant to a finding of likelihood of irreparable harm.[114]

Purple's false advertising occurred on an extensive basis across the Internet, including in targeted consumer "tracking" advertising.   Absent discovery, there is no way in which to determine the number of commercial impressions Purple created with its false advertisement that is the subject of this lawsuit.   And yet, despite these facts and the established irreparable damage to Tempur Sealy and its brand, Purple now claims the prospect of irreparable harm.   Nothing could be further from the truth.

### 3.        The Injunction Will Harm Others

As mentioned above, the harm to Purple, when compared with the damage to the reputation of Tempur Sealy, is minimal.   The harm Purple claims it will face is entirely different than the irreparable harm the Kentucky District Court found that Tempur Sealy faced to its reputation (not to mention the presumption of irreparable harm found because Purple's violation of the Lanham Act).[115]   Tempur Sealy spent very substantial time and money promoting its brand.   Meanwhile, Purple is being forced to remove a single advertisement, but claims no harm will come to anyone by its continued use and promotion of the False Advertisement to the public.   If the Court grants the Motion, the injunction will "irreparably harm" Tempur Sealy and this substantially outweighs any harm facing Purple.

### 4.        This Injunction is not in the Public's Interest

Since it was in the public's interest for the Kentucky District Court to issue an injunction to prevent consumers from being deceived by Purple's advertisement, the prohibition of the

---

[114] *Time Warner Cable, Inc. v. DIRECTTV, Inc.*, 497 F.3d 144, 161(2d Cir. 2007).

[115] Kentucky Injunction Order, Exhibit 12, p. 11.

enforcement of the Kentucky Injunction Order, will necessarily harm the public.  As courts have previously stated, "[t]he public is obviously not served by ongoing violations of the Lanham Act."[116]  It is plain that, if it is in the public's interest to prevent consumers from being deceived, then allowing them to continue to be misled is against their interest.[117]   In addition, the public is harmed by a waste of judicial resources.  Purple does not suggest that the Kentucky District Court's substantive ruling related to the Kentucky Injunction Order is incorrect, only that it should be addressed by this Court rather than in Kentucky.  Thus, should Purple's Motion be granted, Tempur Sealy will have to refile its motion for temporary relief with this Court, and this Court will have to unnecessarily repeat the Kentucky District Court's substantial work.  Such a request by Purple, that numerous courts expend resources on this matter, harms the public.  Not only is Purple misleading its consumers in its False Advertisement, but it is now attempting to prolong this deception by enlisting multiple forums.  It is in the public's interest that this Court deny Purple's Motion.

## D.   IF INJUNCTIVE RELIEF IS GRANTED, PURPLE SHOULD BE REQUIRED TO POST A BOND

Fed. R. Civ. P. 65(c) requires that a party seeking injunctive relief post security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."   Any

---

[116] *See SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841, 848 (E.D. Ky. 2002) (J. Forester); *see Klein-Becker usa LLC v. Englert*, No. 2:06-CV-378 TS, 2007 WL 1933147, at *6 (D. Utah Mar. 28, 2007) ("not issuing a preliminary injunction would be adverse to the public interest because of the deception)".

[117] *See Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.,* No. 2:00CV738K, 2001 WL 670926, at *6 (D. Utah Jan. 19, 2001) ("the public interest, which is often defined as the right of the public not to be deceived or confused, see Opticians Association, 920 F.2d at 197, would be best served by entry of an injunction.").

discretion the court has to waive the bond is extinguished when there is proof that the party against whom the injunction is sought shows a likelihood of harm.[118]  As stated above and as the Kentucky District Court has already held, Tempur Sealy faces irreparable harm if the False Advertisement remains in circulation.  As a natural consequence of the fact that the harm Tempur Sealy faces is irreparable, such harm is impossible to quantify.  Nevertheless, if it were to grant any relief, this Court should require Purple to post a bond in a significant amount.

<strong>IV.   CONCLUSION</strong>

For the foregoing reasons, Tempur Sealy respectfully requests that this Court deny Purple's Motion.

DATED: April 4, 2016                         STOEL RIVES LLP


                                             */s/ Kenneth B. Black*
                                             Kenneth B Black
                                             David L. Mortensen
                                             STOEL RIVES LLP

                                             DICKINSON WRIGHT PLLC

                                             David A. Owen (pending admission)
                                             Matthew A. Stinnett (pending admission)

                                             *Attorneys for Tempur Sealy International, Inc.*

---

[118] *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (quoting *Continental Oil Co. v. Frontier Refining Co*., 338 F.2d 780, 782 (10th Cir. 1964)) (it may be appropriate to waive the bond requirement when "there is an absence of proof showing a likelihood of harm").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of April, 2016, I caused a true and correct copy of the foregoing **OPPOSITION TO WONDERGEL, LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** to be served via CM/ECF on the following:

- Casey K. McGarvey  casey@edizone.com
- Mark D. Taylor  mtaylor@lewishansen.com

*/s/ Kenneth B. Black*