Mark D. Taylor (9533)
Brandee R. Lynch (13550)
**LEWIS | HANSEN**
The Judge Building, Suite 410
Eight East Broadway
Salt Lake City, Utah 84111-2239
Telephone:  (801) 746-6300
Facsimile:  (801) 746-6301
mtaylor@lewishansen.com
brandee@lewishansen.com

Casey K. McGarvey (4882)
123 East 200 North
Alpine, Utah 84004
Telephone:  (801) 936-1039
casey@edizone.com

*Attorneys for Plaintiff WonderGel, LLC d/b/a Purple*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE, a Delaware limited liability company,<br><br>        Plaintiff<br><br>vs.<br><br>TEMPUR SEALY INTERNATIONAL INC., a Delaware corporation,<br><br>        Defendant. | **PLAINTIFF'S REPLY TO TEMPUR SEALY INTERNATIONAL, INC.'S OPPOSITION TO WONDERGEL, LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(Oral Argument**<br>**and**<br>**Expedited Hearing Requested)**<br><br>Case No. 2:16-cv-00162-BSJ<br><br>Hon. Bruce S. Jenkins |

**TABLE OF CONTENTS**

**Page**

I.     BACKGROUND…………………………………………………………………1

II.    ARGUMENT……………………………………………………………......6

**II.    ARGUMENT**

A.    THE COURT SHOULD GRANT INJUNCTIVE RELIEF TO PURPLE AS NOTHING IN TEMPUR + SEALY'S OPPOSITION PREVENTS THIS COURT FROM ISSUING AN EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST TEMPUR + SEALY AND ITS AGENTS……………………………………………………………......6

I.  Purple is Substantially Likely to Succeed on the Merits………………………6

a.  *The Utah Court Has Initial Jurisdiction to Determine if the First-To-File Rule Is Applicable Or Whether an Exception Exists to Divest the Court's Jurisdiction over the Present Action…………………………….7*

b.  *The First-To-File Rule Is Applicable and There Are No Exceptions That Divests This Court's Jurisdiction over the Present Action……………. 12*

i.  *Purple's Action Is More than a Declaratory Action…………………13*

ii.  *Purple Did Not Engage in Forum Shopping, Anticipatory Filing, or Procedural Fencing………………………………………………….....14*

c.  *Tempur + Sealy Should Not be Rewarded For Its Own Failure to Follow the Law………………………………………………………………….16*

II.  Purple's Threatened Injury Outweighs Any Damage to Tempur + Sealy……17

III.  An Injunction Serves the Public Interest……………………….…………...19

IV.  Purple Should Not Be Required to Post Bond For Injunctive Relief…………20

III.    CONCLUSION……………………………………………………………...20

i

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Allen v. Rohm & Haas Co. Ret. Plan*,
No. CIVA 3:06CV25 S, 2006 WL 1980174, (W.D. Ky. July 10, 2006)……….…..…8, 12

*Alter v. F.D.I.C.*,
57 F. Supp. 3d 1325, (D. Utah 2014)……………………………………………......14

*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*,
562 F.3d 1067, 1070 (10th Cir. 2009)…………………………………………17, 19

*Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*,
189 F.3d 477, (10th Cir. 1999)……………………………………..……….9, 13

*Chicago Pneumatic Tool Co. v. Hughes Tool Co.*,
180 F.2d 97, 101 (10th Cir. 1950)………………………………………….....8

*E.E.O.C. v. Univ. of Pennsylvania*,
850 F.2d 969, 971 (3d Cir. 1988)…………………………………………....10

*Hormel Foods Corp. v. Jim Henson Prods.*,
73 F.3d 497, 502 (2d Cir. 1996)………………………………………………...4

*ICON Health & Fitness, Inc. v. Beachbody, LLC*,
No. 1:11-CV-00024-TC, 2011 WL 1899390, (D. Utah May 19, 2011)………..…15, 16

*J. Lyons & Co. v. Republic of Tea, Inc.*,
892 F. Supp. 486, 491 (S.D.N.Y. 1995)…………………………………………15

*Johnson v. Pfizer, Inc.*,
No. 04-1178-MLB, 2004 WL 2898076, at *2-3 (D. Kan. Dec. 10, 2004)………….....7

*Limitless Worldwide, LLC v. AdvoCare Int'l, LP*,
926 F.Supp.2d 1248, (D. Utah 2013)…………………………………………..6

*M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*,
No. C03-3082 SBA, 2003 WL 24056263, (N.D. Cal. Oct. 27, 2003)…………………..16

*MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*,
  No. 1:05 CV 115, 2006 WL 581018, (D. Utah Mar. 7, 2006)...........................15, 16

*Novo Nordisk v. Genentech, Inc.*,
  874 F. Supp. 630, 633 (S.D.N.Y. 1995)...................................................................14

*O'Hare Intern. Bank v. Lambert,*
  459 F.2d 328, 331 (10th Cir. 1972)..........................................................................8

*Ontel Products, Inc. v. Project Strategies Corp.*,
  899 F. Supp. 1144, (S.D.N.Y. 1995)........................................................................7

*Reliance Ins. Co. v. Six Star, Inc.*,
  155 F.Supp.2d 49, (S.D.N.Y. 2001)........................................................................13

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
  725 F. Supp. 1314, (S.D.N.Y. 1989)........................................................................4

*Shannon's Rainbow, LLC v. Supernova Media, Inc.*,
  683 F. Supp. 2d 1261 (D. Utah 2010)...............................................................8, 9, 12

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
  221 F. Supp. 2d 410 (S.D.N.Y. 2002)....................................................................4, 5

*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*,
  No. CIV.A. 02-2448-KHV, 2002 WL 31898217, (D. Kan. Dec. 10, 2002).................7

*Victor Co. LLC v. Ortho Organizers, Inc.*,
  932 F. Supp. 261, (D. Kan. 1996)....................................................................8, 11, 13

*Water Pik, Inc. v. Med-Sys., Inc.*,
  726 F.3d 1136, (10th Cir. 2013)..............................................................................2

*Winnebago Tribe of Nebraska v. Stovall*,
  341 F.3d 1202, 1206 (10th Cir. 2003)....................................................................20

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
  809 F. Supp. 267 (S.D.N.Y. 1992)..........................................................................4

## Statutes and Rules

15 USC § 1125(a), Lanham Act...............................................................................14

iii

Fed. R. Civ. P. 65 …………………………………………………………………………..11

**Other**

*McCarthy on Trademarks and Unfair Competition* § 31:153 (4th ed. 2001)…………………..4, 5

Plaintiff, WonderGel, LLC dba Purple (hereinafter "Purple"), by and through counsel of record, hereby submits this Reply to the Opposition filed by Defendant Tempur Sealy International Inc. (hereinafter "Tempur + Sealy") as follows:

## I.       BACKGROUND

In Tempur + Sealy's Opposition to Purple's Motion for Temporary Restraining Order/Preliminary Injunction (hereinafter "Purple's Motion for TRO"), a large portion is dedicated to arguing to this Court that Tempur + Sealy has spent significant time and resources establishing its brand in the marketplace, along with arguing the merits of its substantive claims against Purple. *See* Opposition, Pgs. 2-9.  However, Purple's Motion for TRO is focused on one issue: whether this Court has initial jurisdiction to decide whether the "first-to-file rule" applies without exception and if so, Purple seeks an order from this Court enjoining Tempur + Sealy from prosecuting the Second-Filed Action in the Kentucky Court.  Therefore, Purple is not inclined, at this point, to fully address Tempur + Sealy's arguments on the merits about the particular substantive claims when those issues are not properly before the court on this motion.

Notwithstanding the above, it is important to note that viewed in its entirety, there is nothing confusing or misleading about Purple's advertisement.[1]  The advertisement in question is an approximately four minute video in which a narrator dressed as Goldilocks walks the viewer through  "raw egg test" and explains why Purple's mattress is preferable to three generic types of mattresses – too firm, too soft, and somewhere in the middle.  The video called for a mattress that was firm, and Defendant's Tempur-Contour memory-foam style mattress is typically considered

---

[1] See entire video via the following dropbox link:
https://www.dropbox.com/s/abo2ehjqgl7473k/Purple_IntroA_CTAAlt9_16-1-26_v01.mp4?dl=0

1

more firm than other styles of mattresses and was used in the video. But it was not identified as being Defendant's mattress. There was simply nothing confusing or misleading about the advertisement as a whole, or about the very brief appearance of Defendant's product in the advertisement which no reasonable consumer would identify as being Defendant's product.[2]

The advertisement is of a light-natured tone, and full of obvious attempts at humor. Purple encourages this Court to view the subject advertisement video in its entirety with an open mind, unencumbered with Defendant's argument that because it recognizes its own mattress design consumers also would identify Defendant as the source simply because of Defendant's advertising, not because any consumer actual made that connection while enjoying the humorous video. In Purple's attempt to compare its product to three generic types of mattresses, the Goldilocks narrator imparts humor throughout without identifying Defendant or any specific mattress company.

The strength of a trademark is one of the factors courts should evaluate when determining whether an advertisement could cause confusion or is misleading. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). Here, Defendant's mark is not strong. Aside from Defendant's opposition discussing an orange zipper/piping on the mattress cover, and the advertising money spent to create it, there is zero evidence that Defendant's mattress and

---

[2] Despite the advertisement never mentioning Defendant's trademark by name, Defendant argues that its product is so distinctive – a patterned mattress cover with an orange piping/zipper – that all potential customers should be able to tell that it is Defendant's product in Plaintiff's video. Defendant provides zero evidence supporting this assertion. It provides zero testimony, surveys, or other documentary evidence showing that Defendant's mattresses are any more identifiable than the average mattress. Without Defendant's trademark ever mentioned by name, and without any evidence that a substantial amount of the potential audience could accurately identify Defendant's mattress in its seven (7) seconds of total airtime, it is incredibly unlikely Defendant would ever succeed on the underlying merits in this case.

mattress cover is any more recognizable than any other mattress brand.  In fact, Defendant's trademark applications to the United States Patent and Trademark Office (USPTO) seeking to register its designs were rejected.  *See* Orders from the USPTO, attached as Exhibit 1.  In short, the USPTO held that Defendant submitted insufficient evidence to "establish that purchasers will perceive the applied-for repeating patterns as trademarks."  *Id.*  In other words, the USPTO determined that Defendant's mattress cover design was not distinct enough to warrant the protection of a trademark.

This directly contradicts arguments directed towards the underlying merits of this case raised by the Defendant in its memorandum in opposition to Purple's motion for this temporary restraining order, in which Defendant assumes that everyone should know from the seven (7) seconds of airtime in Purple's three (3) minute and fifty-eight (58) second advertisement that it was Defendant's Tempur-Contour mattress which Goldilocks described as too firm.[3]  Because Defendant's mark is not strong, and there is no evidence that a sufficient amount of viewers could even identify Defendant's product in the subject advertisement, it is unlikely that Defendant will succeed on the merits in this case.[4]

---

[3] Indeed, the advertisement in question never mentions Defendant's product or company name. Rather, several generic mattresses are used in the video in question to generally depict mattresses that are too firm, too soft, and somewhere in the middle.  Speaking generally regarding mattresses that are hard, the spokeswoman in the video, who is dressed as Goldilocks, jokingly states that a hard mattress is the perfect way to tell your partner "Hey Baby, want some arthritis?".  Defendant argues that the comments made by the video's Goldilocks' spokeswoman were intended to deceive and mislead potential customers about its specific mattress instead of being a parody on all hard mattresses.  In addition to Goldilocks' arthritis statement being an obvious attempt at humor, it cannot be over-emphasized that the advertisement never identifies Defendant or Defendant's mattress by name.

[4] Defendant cites to three consumer comments to purportedly show that consumers recognize the mattress as a Tempur-Contour, however, the comments cited never actually identify the mattress

Defendant goes to great lengths in its Opposition to establish the value and recognizability of its trademark.  In the usual trademark case, a strong mark is a factor pointing toward a likelihood of confusion.  However, "where the plaintiff's mark is being used as part of a jest… the opposite can be true."  *Yankee Publ'g Inc. v. News Am. Publ'g Inc.,* 809 F. Supp. 267 (S.D.N.Y. 1992) (citing *Hormel Foods Corp. v. Jim Henson Prods.,* 73 F.3d 497, 502 (2d Cir. 1996). "The strength and recognizability of the mark may make it easier for the audience to realize that the use is a parody and a joke on the qualities embodied in trademarked word or image."  *McCarthy on Trademarks and Unfair Competition* § 31:153 (4th ed. 2001) (hereinafter referred to as *McCarthy*). That is, it is precisely because of the mark's fame and popularity that confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody.  *See Hormel Foods,* 73 F.3d at 503; *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F. Supp. 1314, 1324 (S.D.N.Y. 1989). ("Certainly it is unremarkable that [defendant] selected as the target of parody a readily recognizable product; indeed, one would hardly make a spoof of an obscure or unknown product!").

In *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002), Hilfiger Licensing cited to the Lanham Act in objecting to a dog perfume company's

---

shown in the video as a Tempur-Contour.  Indeed, the third comment cited by Defendant actually suggests that the consumer doesn't identify the hard mattress in the video as a Tempur-Contour mattress stating:  "[T]he only thing that gives me pause to question is the fact that it doesn't mention if it is better than the tempurpedic.  I want one but if I'm going to get it I want to make sure that it is truly the best bed I can get."  Def. Memo in Opp. at 9.  This comment doesn't identify the mattress in the video as a Tempur-Contour.  Indeed, even if this consumer was actually identifying the mattress in the video as a Tempur-Contour, as argued by Defendant, then it is clear that the consumer didn't reasonably believe that the Tempur-Contour mattress would actually cause arthritis as a result of Goldilocks' joke referencing hard mattresses.

advertisement that conveyed a joking variation on Hilfiger's famous trademark.  In granting the

defendant's motion for summary judgment, the Court stated:

> Hilfiger, and perhaps some others, would do well to read *McCarthy* on the subject:  No one likes to be the butt of joke, not even a trademark.  But the requirement of trademark law is that a likely confusion of source, sponsorship, or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of.   *McCarthy* § 31:155; *see also Anheuser-Busch,* 962 F.2d at 322 ('The purpose of the Lanham Act is to eliminate consumer confusion, not  to banish all attempts at poking fun or eliciting amusement… [or] deprive the commercial world of all humor and levity.').  Although Hilfiger is unamused, it has not offered evidence on the issue of confusion that would justify denying Nature Labs' motion for summary judgment.  That motion therefore is granted.

*Id.* at 421.

Here, this advertisement very clearly has the tone of a light-hearted parody.  Defendant is

clearly upset that an advertisement with Goldilocks as a sponsor would joke about Defendant's

Tempur-Contour mattress being too firm and jokingly stating that a hard mattress is the perfect

way to tell your partner "Hey Baby, want some arthritis?"    If Defendant's trademark is as strong

as Defendant would like this Court to believe, then there should be no confusion from the audience

and the advertisement in question is an appropriate use of humor.  *See Tommy Hilfiger Licensing,*

*Inc.*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002).  <u>Indeed, when watching the video as a whole, it is easy</u>

<u>to see and understand that "Goldilocks" is not making a literal scientific determination regarding</u>

<u>the medical cause of arthritis.</u>   Moreover, Defendant has offered no evidence that potential

customers would be confused by the use of its product in Purple's video in such a way as to

realistically believe that the firm mattress depicted in the video actually causes serious injury or

arthritis.

In sum, no reasonable consumer would even recognize Defendant's Tempur-Contour mattress briefly shown in the video, but even if that were possible for the reasons argued by Defendant, no reasonable consumer would be confused or misled by the obvious parody on all hard mattresses and other types of mattresses. The video is humorous and fun, not factually misleading as to Defendant's specific Tempur-Contour mattress, and merely provides puffery about Purple's mattress being better than all other types of mattresses.

## II.     ARGUMENT

### A. THE COURT SHOULD GRANT INJUNCTIVE RELIEF TO PURPLE AS NOTHING IN TEMPUR + SEALY'S OPPOSITION PREVENTS THIS COURT FROM ISSUING AN EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST TEMPUR + SEALY AND ITS AGENTS[5]

### I. Purple is Substantially Likely to Succeed on the Merits

Purple has demonstrated that it has a substantial likelihood of success on the merits of its argument that this Court should make the initial determination as to whether the "first-to-file" rule applies or whether an exception to the rule exists. Moreover, Purple has negated Tempur + Sealy's argument for an exception to the first-to-file rule. This Court should find that Purple is substantially likely to succeed on the merits of this procedural argument.[6]

---

[5] As the standard for a temporary restraining order is the same as for a preliminary injunction, in the interest of space, Purple has elected to argue these two forms of relief together. *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F.Supp.2d 1248, 1250 (D. Utah 2013).

[6] Purple is also planning to appeal the Kentucky Court's decision that it had personal jurisdiction over Purple. The Kentucky Court declined to even address this issue during oral argument on Purple's Motion to Dismiss or to Transfer or Stay Proceedings in the Second-Filed Action, a copy attached as Exhibit 5 to Purple's motion for TRO/Preliminary Injunction. Unlike what Tempur + Sealy would like to suggest in its Opposition, pg. 11, the Kentucky Court did not decide whether it had personal jurisdiction over Purple until after it granted Tempur + Sealy's TRO/Preliminary Injunction.

a.   *The Utah Court Has Initial Jurisdiction to Determine if the First-To-File Rule Is Applicable Or Whether an Exception Exists to Divest the Court's Jurisdiction over the Present Action*

Under the first-to-file rule, "the first court to obtain jurisdiction <u>applies</u> the first-to-file rule and <u>exceptions</u> in order to determine the appropriate forum for the case." *Johnson v. Pfizer, Inc.*, No. 04-1178-MLB, 2004 WL 2898076, at *2-3 (D. Kan. Dec. 10, 2004) (emphasis added). In *Johnson*, the federal district court of Kansas referred to case law that "overwhelmingly support[s] the assertion that the court in a second-filed case should not determine the initial question of which court applies the first-to-file rule." *Id.* at *2 (citing *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, No. CIV.A. 02-2448-KHV, 2002 WL 31898217, at *2-3 (D. Kan. Dec. 10, 2002) (holding that the first-filed court should decide whether to apply the first-to-file rule despite the fact that an exception to the rule is appealing) (citing other cases).  As a result, the *Johnson* Court (second-filed action) found that because jurisdiction attached to the District of New Jersey before it attached to the District of Kansas (second-filed action), the first-filed court, District of New Jersey "would normally be the court to apply the first-to-file rule and its exceptions." *Id.*; *see also*, *Ontel Products, Inc. v. Project Strategies Corp*., 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("Case law indicates that court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies.") The *Johnson* Court followed the first-to-file rule and stayed proceedings in its court until the District of New Jersey had decided, among other things, "whether the first-to-file rule should be applied" and "whether the merits of the case should be decided in New Jersey or transferred back to Kansas." *Id.* at * 5.

7

Both the 10th Circuit and Utah District Court courts agree with this proposition that "where the jurisdiction of a federal district court has attached, that right cannot be arrested or taken away by proceedings in another federal district court." *Shannon's Rainbow, LLC,* 683 F.Supp.2d at 1278 (citing *O'Hare Intern. Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir. 1972)) (finding that second-filed court abused its discretion in not granting party's motion to stay second-filed court proceedings until the first-filed suit had been determined and all appellate avenues had been availed or waived)).   Specifically, "The 'first-to-file' rule is well settled law establishing the general principle that the *first court who obtains jurisdiction over the same parties and issues* is the appropriate court to resolve the case." *Id.* (emphasis added).   More importantly, that first court "may preserve its jurisdiction by enjoining proceedings involving the same issues and parties begun thereafter in another [f]ederal [d]istrict [c]ourt." *Id.* (citing *Victor Co. LLC v. Ortho Organizers, Inc.*, 932 F. Supp. 261, 263 (D. Kan. 1996) (quoting *Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 180 F.2d 97, 101 (10th Cir. 1950)).   Even case law from Kentucky is instructive here.   In *Allen v. Rohm & Haas Co. Ret. Plan*, the United States District Court for the Western District of Kentucky, found it compelling that when a second-filed court determines that issues between two suits might substantially overlap, it is not up to the second-filed court to resolve the question of whether both should be allowed to proceed; rather the proper course of action is for the second-filed court to transfer the case to the first-filed court.   See *Allen v. Rohm & Haas Co. Ret. Plan*, No. CIVA 3:06CV25 S, 2006 WL 1980174, at *1 (W.D. Ky. July 10, 2006).[7]

---

[7] Please note the *Allen* Court involved slightly different facts.   Defendant sought to dismiss or transfer Plaintiff Allen's Kentucky action (second-filed action) to Indiana action (first-filed action) where Plaintiff Williams had already filed a class action suit against the same Defendant and was arguing the same issue.

In its Opposition, Tempur + Sealy cites case law supporting its proposition that district courts have discretion to retain jurisdiction if there are appropriate circumstances justifying departure from the first-to-file rule, and also cites to various exceptions.  *See* Opposition, Pgs. 15-23.  However, Tempur + Sealy's characterization of the case law is misleading as that case law deals with district courts deciding whether there is an exception to the first-to-file rule—not whether the first or second-filed court has initial jurisdiction to even take up the issue of the first-to-file rule and any applicable exceptions.  *See e.g.*, *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, (10th Cir. 1999) (upholding decision of first-filed court [Utah] that plaintiff's declaratory judgment action was filed in anticipation of litigation in second-filed court [Georgia] and therefore, first-filed court [Utah] did not error in declining to follow first-to-file rule and granting defendant's motion to dismiss).  As is its pattern, Tempur + Sealy attempts to leapfrog over the pertinent issue, that is, which federal court, the first-filed or second-filed, has initial jurisdiction to determine if the "first-to-file rule" is applicable or whether an exception to the rule applies.  Tempur + Sealy glosses over this issue as it would like this Court to wrongfully believe that the second-filed Court, the Kentucky Court, had "discretion" to decide whether the "first-to-file rule" applied or whether an exception allowed the Kentucky Court to retain jurisdiction.  *See* Opposition, Pg. 16.

While Tempur + Sealy suggests that Purple is asking this Court to do something that is unprecedented, in recent years, this Court has actually enjoined a defendant from pursuing any further action in a second-filed action based on facts similar hereto.  *See* S*hannon's Rainbow, LLC v. Supernova Media, Inc.,* 683 F. Supp. 2d 1261, 1278 (D. Utah 2010).  In *Shannon's Rainbow*, the parties were in conflict over the production, distribution and ownership of a film.  *Id.* at 1264.  The

plaintiffs filed their lawsuit in the United States District Court, District of Utah and thereafter, defendants filed a nearly identical action in the Southern District of New York more than six months later. *Id.* at 1264-65. The defendants argued the Utah Court should be dismissed for improper venue, or in the alternative, transferred to the New York Court. *Id.* at 1265. The plaintiffs argued, among other things, that the Utah Court should enjoin the second action filed in New York based on the first-to-file rule. *Id.* The *Shannon's Rainbow* Court found all of the elements of the first-to-file rule were satisfied as it was undisputed that the plaintiffs filed their lawsuit in the District of Utah first, and there was substantial overlap of the parties and issues. *Id.* at 1279-80. Upon those findings, the *Shannon's Rainbow* Court enjoined the defendants from pursuing any further action in the New York second-filed action based on the proposition that the Utah court was preserving its jurisdiction (and the more appropriate court to resolve the case as it first obtained jurisdiction over the parties and issues). *Id.* at 1280.

Moreover, even though Tempur + Sealy cited to a Third Circuit case for the proposition that district courts have discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule, *see* Opposition, Pg. 16, FN 55; *see also E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990)), that court stated: "[the first-to-file rule] gives a *court 'the power'* to **enjoin the subsequent prosecution** *of proceeding*s involving the same parties[8] and the same issues already

---

[8] In its Opposition, Pg. 14, Tempur + Sealy argues that if this Court grants Purple's relief in the TRO/Preliminary Injunction, there is a question whether the remaining four entities (Tempur-Pedic International Inc., Tempur-Pedic Management, LLC, Tempur-Pedic North America, LLC, and Dan Foam ApS) could still proceed in the Kentucky Court as they are not named in the Present Action. However, Rule 65 provides that an order of injunction or restraining order binds the parties; the parties' officers, agents, servants, employees, and attorneys; and "other persons who are in active concert or participation with" the parties or the parties' officers, agents, servants,

before another district court." *Id.* (emphasis added); *see also Victor Co. LLC v. Ortho Organizers, Inc.*, 932 F. Supp. at 264 (first-filed court enjoining defendant from proceeding in second-filed action against same parties with same issues).

       Throughout its Opposition, Tempur + Sealy attempts to argue that the "first-to-file rule" is inapplicable based on a recognized exception to that rule.  While Tempur + Sealy is free to make that argument—and certainly did in the Kentucky Action—what is misleading about Tempur + Sealy's Opposition, from Pgs. 15-21, is that Tempur + Sealy fails to admit that the federal court where a lawsuit is first filed and involves similar issues and parties has initial jurisdiction to determine if the "first-to-file rule" is applicable or whether an exception applies.  Even assuming this Court were to determine that the "first-to-file rule" is inapplicable and an exception exists that allows the Kentucky Court to proceed, which is denied, this Court is first provided the opportunity to determine those issues—not a court involved in a subsequent filed action.  The Second-Filed Court, the Kentucky Court, simply did not have the authority to decide whether an exception to the first-to-file rule was present to allow it to proceed.  Rather, the Kentucky Court should have declined to decide any issues until this Court had the opportunity to decide whether the first-to-file rule applied or whether an exception to that rule applied.

---

employees, and attorneys.  *See* Fed. R. Civ. P. 65(d)(2)(A)-(C). Defendant "Tempur Sealy International, Inc." is the parent corporation to Tempur-Pedic Management, LLC, and Tempur-Pedic North America, LLC, and Defendant "Tempur Sealy International, Inc." was formerly known as Tempur-Pedic International, Inc. and Defendant "Tempur Sealy International, Inc.'s" wholly owned subsidiary is DanFoam ApS.  Therefore, the remaining four entities would be considered to be in "active concert or participation" with Defendant Tempur Sealy International, Inc. and would be bound by this Court's ruling on Purple's TRO/Preliminary Injunction. Moreover, all of these entities would be bound by the Court's ruling as they are represented by the same attorneys and Rule 65 provides that parties' attorneys are specifically bound to follow an order of injunction or restraining order.

As a result, the parties are compelled to argue in multiple forums regarding the same issues—a result the "first-to-file rule" was enacted to protect against. *See Allen v. Rohm & Haas Co. Ret. Plan*, 2006 WL 1980174, at *1 ("[T]he district court indeed avoided trenching on the authority of its sister court, one of the very abuses the first-to-file rule is designed to prevent.") (internal quotations omitted). Tempur + Sealy's attempt to point the finger at Purple for having to maintain arguments in multiple forums is solely the fault of Tempur + Sealy's leapfrog over the Present Action and race to the Kentucky Court for relief. Nor should this Court seriously entertain Tempur + Sealy argument that Purple's efforts to have this Court determine the "first-to-file rule" will result in a waste of judicial resources, see Opposition, Pg. 30, when Tempur + Sealy purposely chose to circumvent this Court's jurisdiction.

Based on the above, this Court is the first-filed court and has initial jurisdiction to apply the first-to-file rule and determine if there are any exceptions to the rule. In its Opposition, Tempur + Sealy does not dispute that Purple has satisfied the three elements necessary for the "first-to-file rule" to apply (chronology of the actions, similarity of parties, and similarity of the issues). *See* S*hannon's Rainbow, LLC v. Supernova Media, Inc.,* 683 F. Supp. 2d 1261,1278 (D. Utah 2010). As discussed below, Tempur + Sealy cannot demonstrate a viable exception to the first-to-file rule, and therefore, this Court is well within its right to enjoin Tempur + Sealy from continuing to prosecute the second-filed action in the Kentucky Court.

> **b.      *The First-To-File Rule Is Applicable and There Are No Exceptions That Divests This Court's Jurisdiction over the Present Action***

As stated above, Tempur + Sealy does not dispute that the three threshold elements for the "first-to-file rule" have been satisfied. Specifically, there is no dispute that Purple filed the Present Action in this Court weeks prior to Tempur + Sealy filing the Second-Filed Action in Kentucky

nor is there dispute that the Present Action and Second-Filed Action involve a similarity of parties and issues.  Thus, the only question for this Court to consider is whether an exception to the "first-to-file rule" applies that would divest this Court from retaining jurisdiction over Purple's first filed causes of action.

The case law is clear that it is the burden of the party opposing application of the "first-to-file rule" to demonstrate a viable exception.  *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001).   Despite Tempur + Sealy's Opposition, Tempur + Sealy fails to satisfy this burden as discussed below.  *Victor Co. LLC v. Ortho Organizers, Inc.*, 932 F. Supp. at 264 ("The plaintiff's choice of forum in the first-filed suit is entitled to great weight and should not be disturbed absent a strong showing by defendant.").

### i.        *Purple's Action Is More than a Declaratory Action*

Tempur + Sealy argues that an exception to the "first-to-file rule" is present here by improperly characterizing the Present Action a "declaratory judgment action."  To support such, Tempur + Sealy cites case law where the district court declined jurisdiction where it found that the first-filed action was solely a declaratory action.  *See Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, 1999 WL 682883, at *2 (10th Cir. 1999) (unpublished decision).  In *Buzas*, the Tenth Circuit affirmed the Utah district court's application of the anticipatory suit exception to dismiss a declaratory judgment action.  *Id.* at *3.  The court held that a district court "may decline to follow the first-to-file rule and *dismiss a declaratory judgment action* if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."  *Id.* (emphasis added).  In a more recent decision, the Utah district court cited *Buzas* for the proposition that a district court has discretion to dismiss or stay an action *where*

*solely declaratory relief* is sought.   *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331-32 (D. Utah 2014).

Despite Tempur + Sealy's best efforts to define Purple's complaint in the Present Action as seeking solely declaratory relief, Purple seeks declaratory as well as affirmative relief.  Any other characterization is simply disingenuous.  Specifically, Purple's complaint seeks a declaratory judgment that it is not violating the Lanham Act (15 U.S.C. § 1125(a)) but also seeking damages and an injunction for the harm this accusation is causing and will cause Purple under the circumstances of Tempur + Sealy, a billion dollar company and the largest mattress company in the world, making accusations against Purple when it is in the early stage of its attempt to enter into the mattress industry currently dominated by Tempur + Sealy.  Even assuming Purple's complaint is only a declaratory action, which is denied, this Court, as the first-filed court, is first tasked to determine if Purple's declaratory action is an exception to the first-to-file rule and allows this Court to decline jurisdiction over the issues in favor of the Kentucky Second-Filed Action.

### ii. Purple Did Not Engage in Forum Shopping, Anticipatory Filing, or Procedural Fencing

Tempur + Sealy also argues that an exception to the "first-to-file rule" is present here by accusing Purple of engaging in "forum shopping" and characterizing the Present Action as an "anticipatory filing" or "procedural fencing."  These arguments fail for several reasons.

First, Purple's filing of the Present Action in Utah is not indicative of improper forum shopping as Purple's place of business is located in Utah, Purple has a volume of contacts with Utah, and the majority of anticipated witnesses and documents relevant to the issues raised by the litigation are located in Utah.  *See Novo Nordisk v. Genentech, Inc.*, 874 F. Supp. 630, 633

14

(S.D.N.Y. 1995).   Forum shopping occurs only when a litigant selects a forum with slight connection to the factual circumstances of his action—this is not the case here.

Second, the Present Action was not an "anticipatory suit" filed to precede an adversary filing by Tempur + Sealy.   While Purple concedes that Tempur + Sealy sent it a cease-and-desist letter on February 22, 2016, this letter did not contain an explicit intent to sue with a tentative filing date and specified forum.   *See J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995).   In its Opposition, Tempur + Sealy cites to *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *1 (D. Utah May 19, 2011), to support its argument that Purple's Complaint in the Present Action is an improper anticipatory filing and therefore, serves as an exception to the first-to-file rule.   *See* Opposition, Pg. 17-18.   In *ICON*, the Utah federal court found that plaintiff's declaratory judgment action was an improper anticipatory filing and granted defendant's motion to dismiss.   *ICON Health & Fitness*, 2011 WL 1899390, at *1.

First, *ICON* is distinguishable as the plaintiff's complaint in *ICON* solely contained declaratory relief, not affirmative relief.   Here, Purple is seeking both declaratory and affirmative relief.   Purple has not yet had the opportunity to argue the substance of these other claims for relief before this Court and any characterization by Tempur + Sealy that these claims for relief are simply declaratory or specious, is improper.   *See MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *4 (D. Utah Mar. 7, 2006) (declining to impose the anticipatory-filing exception to the first-to-file rule based on the fact the first-filed suit was not a declaratory action and there was a question about whether defendant's delay in filing the second-filed suit was good faith attempt to pursue settlement negotiations).

15

More importantly, *ICON* is supportive of Purple's contention that the first-filed court is to determine whether the "first-to-file rule" applies or whether an exception exists, as the first-filed court, the Utah federal district court, initially determined the application and scope of that rule. *See ICON Health & Fitness*, 2011 WL 1899390, at *1.

Finally, the courts have interpreted a delay of time between the commencement of the first action and the filing of the second action as evidence that the party filing the second action was not prepared to file a lawsuit at the time the first action was filed, and the first action was not an "anticipatory suit." *See M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, No. C03-3082 SBA, 2003 WL 24056263, at *4 (N.D. Cal. Oct. 27, 2003). Here, Tempur + Sealy waited almost a month after sending the cease-and-desist letter of February 19, 2016 to initiate the Second Action (and 2.5 weeks after notice of the Present Action to initiate the Second Action). This delay strongly supports a finding that Tempur + Sealy had no immediate intention of commencing the Second Action at the time Purple instituted the Present Action and therefore, the Present Action was not an "anticipatory suit".

### c.     *Tempur + Sealy Should Not be Rewarded For Its Own Failure to Follow the Law*

Tempur + Sealy's argument that this Court should decline to follow the first-to-file rule as it is faced with "wading into a dispute that is already well under way on the merits in Kentucky," Pg. 23, is asking this Court to reward Tempur + Sealy for its own inactions in failing to follow the controlling case law. This type of windfall should not be granted or considered lightly. In fact, the Utah Federal District Court in *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.* rejected this argument. *See MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *5 (D. Utah Mar. 7, 2006). The *MedSpring* Court, while acknowledging that the

16

second-filed action in Florida had progressed at somewhat quicker pace than the first-filed action in Utah, the court concluded that the "difference in procedural status is not significant enough to warrant suspension of the first-to-file rule." *Id.* This was true despite the fact that in the second-filed Florida action, the parties had entered into a joint scheduling report and MedSpring's counsel had filed a motion to transfer or dismiss the second-filed Florida action and requested stay of all discovery pending the outcome of that motion. *Id.* Tempur + Sealy should be held accountable for failing to allow this Court the opportunity, as the first-filed forum, to decide application and scope of the "first-to-file rule" and instead vigorously pursue premature relief in the Kentucky Second-Filed Action—the same relief that Tempur + Sealy could have sought in the Present Action.

In sum, controlling case law provides that the first-filed court is to determine whether the "first-to-file rule" applies or whether there are exceptions to the rule. There is no dispute that Purple filed this Present Action first in time, and that the Present Action and Second-Filed Action have similarity of parties and similarity issues. More importantly, unlike what Tempur + Sealy has suggested, there are no circumstances/exceptions justifying departure from the "first-to-file rule". Therefore, Purple has demonstrated a substantial likelihood of success on the merits and this Court should immediately enjoin Tempur + Sealy from prosecuting its Second-Filed Action in the Kentucky Court as the following elements for a TRO/Preliminary Injunction have also been satisfied.

## II.     Purple's Threatened Injury Outweighs Any Damage to Tempur + Sealy

Second, Purple has demonstrated that irreparable injury will be suffered unless this Court issues an injunction against Tempur + Sealy. *Beltronics USA, Inc. v. Midwest Inventory Distrib.,*

*LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).  Specifically, since the Kentucky Court's granting of Tempur + Sealy's TRO, Purple was forced to take down the "Goldilocks Video" that has garnered a lot of attention, currently having more than 15,000,000 "views" on Facebook and 7,000,000 "views" on YouTube since it went public in January 2016.   This "Goldilocks Video" has been hugely successful for Purple: a small fledging company that invested considerable time, resources, and effort in promoting its mattress product in a market that is saturated with much larger corporations that have considerably more money and resources to counter any advertising of smaller companies.   Put simply, Purple has lost traction and momentum in the competitive marketplace from the loss of the viral video.  Since taking down the video last week, Purple has experienced a significant dive in sales as well as amount of overall visits to Purple's website despite other marketing efforts (a 36% drop in average daily visits over the average daily visits during the preceding three weeks).  Purple has used a highly edited shortened version of the video following the TRO issued in Kentucky, but as explained above, this edited version lacks the humor and appeal that has made the Goldilocks video so appealing and valuable in driving consumers to its website to make purchases.   These harms are unquantifiable and relate to Purple's unique market position and momentum in gaining market share, and consequently, are irreparable. Moreover, even though Purple has attempted to further mitigate these harms, by doing a more intensive edit of its full video to render the Tempur-Contour mattress completely unrecognizable, even by Tempur + Sealy, and seeking unequivocal clearance from the Kentucky Court to use that edited version, Tempur + Sealy is actively opposing Purple's request and asking the Kentucky Court to prevent Purple from using that edited version that could not possible cause any harm to Tempur + Sealy.

Third, Purple has demonstrated that the threatened injury to Purple outweighs any damage the proposed injunction may cause Tempur + Sealy.  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).  While Tempur + Sealy argues in its Opposition that it will suffer irreparable harm if this Court grant's Purple's TRO/Preliminary Injunction, there is absolutely no reason why Tempur + Sealy cannot seek in the Present Action the same relief that it obtained in the Kentucky Second-Filed Action, as it should have done in the first place..  Again, Purple is seeking to have this Court take the opportunity, as the case law directs, to decide whether the "first-to-file rule" applies or whether an exception allows the second-filed action to proceed.  This Court did not have the opportunity to preserve its jurisdiction before the Kentucky Court issued rulings on Tempur + Sealy's motion following Tempur + Sealy's decision to ignore the law and this Court's jurisdiction as the first filed action, and Tempur + Sealy cannot be unduly prejudiced by its own gamesmanship.

### III.    An Injunction Serves the Public Interest

Finally, Purple has demonstrated that an injunction from this Court would not be adverse to the public interest.  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).  In fact, it would be prudent for this Court to enjoin Tempur + Sealy in order to prevent and deter future parties from attempting to unfairly circumvent the first-filed jurisdiction and obliterating that rule altogether.  While Tempur + Sealy argues in its Opposition that an injunction will harm the public if Tempur + Sealy is forced to refile its substantive motion for TRO/Preliminary Injunction in the Present Action, and as a result expend court resources, see Opposition, pg. 30, it has no explanation for why it did not file affirmative relief in the Present Action initially when it had full notice of the matter weeks prior to filing the second-filed action

in Kentucky.  An injunction would serve the public interest by preventing Tempur + Sealy from seeking remedies in a forum that is simply too far removed from the issues, and is an inconvenient forum for relevant witnesses and documentation.

**IV.    Purple Should Not Be Required to Post a Bond For Injunctive Relief**

Although Rule 65 of the Federal Rules of Civil Procedure normally calls for the Court to require the applicant to post security, a trial court has "wide discretion" under Rule 65(c) in determining whether to require security.  *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003).  As stated above, Purple has shown that Tempur + Sealy would not suffer any real harm in having to face the jurisdiction of this Court as the controlling law provides that this Court is the appropriate forum to decide the application and scope of the "first-to-file rule." As a result, this Court should waive the requirement that Purple post a bond in light of the balance of equities that weighs in favor of Purple.

**III.    <u>CONCLUSION</u>**

This Court should grant Purple's request for TRO/Preliminary Injunction.  The controlling case law is clear that this Court has initial jurisdiction to decide if the "first-to-file" rule applies or whether an exception to the rule applies.  Purple filed this TRO/Preliminary Injunction in order to correct a procedural error that was perpetuated by Tempur + Sealy.  Tempur + Sealy should not be rewarded by its improper attempt to circumvent this Court's jurisdiction.

Whether Tempur +Sealy believes that the Kentucky Court ultimately will have jurisdiction is irrelevant to this Court's decision.  Tempur + Sealy is operating under the erroneous assumption that its leap-frog attempt over the Present Action to the Kentucky Court will be forgiven and regardless, Purple could correct any wrongdoing by appealing to the Sixth Circuit.  However, the

unspoken truth is that Purple does not have the time or money, unlike Tempur + Sealy, to wait for the Sixth Circuit to correct Tempur + Sealy's race to the courthouse as Purple's "Goldilocks Video" is the lifeblood to its ability to continue to successfully operate its business.

WHEREFORE, Purple respectfully requests the Court grant Purple the relief requested in its Motion, and for other and further relief as this Court deems just and proper.

DATED the _7th_ of April, 2016.

**LEWIS | HANSEN**

_/s/Mark D. Taylor,_____
_Attorneys for Plaintiff WonderGel, LLC d/b/a_
_Purple_

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _7th_ of April, 2016, I have caused a true and correct copy

of the forgoing to be served via CM/ECF on the following:


Kenneth B. Black (#5588)
Email: *ken.black@stoel.com*
David L. Mortensen (#8242)
Email: *david.mortensen@stoel.com*
STOEL RIVES LLP
201 S. Main Street, Suite 1100 Salt Lake City, UT 84111
Telephone: (801) 328-3131
Facsimile: (801) 578-6999


David A. Owen (Pending *Pro Hac Vice* admission)
Email: *DOwen@dickinsonwright.com*
Matthew A. Stinnett (Pending *Pro Hac Vice* admission)
Email: *MStinnett@dickinsonwright.com*
Dickinson Wright PLLC
300 West Vine Street, Suite 1700
Lexington, KY 40507
Telephone: (859) 899-8700
Facsimile: (859) 899-8759




LEWIS | HANSEN


*/s/Mark D. Taylor*
*Attorneys for Plaintiff WonderGel, LLC d/b/a*
*Purple*

22