Kenneth B. Black (#5588)
  Email: *kblack@stoel.com*
David L. Mortensen (#8242)
  Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

David A. Owen (Admitted *Pro Hac Vice*)
  Email: *DOwen@dickinsonwright.com*
Matthew A. Stinnett (Admitted *Pro Hac Vice*)
  Email: *MStinnett@dickinsonwright.com*
Dickinson Wright PLLC
300 West Vine Street, Suite 1700
Lexington, KY  40507
Telephone:  (859) 899-8700
Facsimile: (859) 899-8759

*Attorneys for Defendant Tempur Sealy International Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DISTRICT**

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE,<br><br>    Plaintiff,<br><br>  v.<br><br>TEMPUR SEALY INTERNATIONAL, INC.,<br><br>    Defendant. | **TEMPUR SEALY INTERNATIONAL, INC.'S MOTION TO DISMISS, TRANSFER OR STAY**<br><br>Case No.:  2:16-cv-00162-BSJ<br><br>The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

I.     RELIEF SOUGHT & GROUNDS FOR THE MOTION .................................................. 1

II.    RELEVANT FACTUAL BACKGROUND ...................................................................... 2

       A.     Tempur-Sealy Has Expended Significant Time and Resources to Establish
              Its Brand in the Marketplace .......................................................................... 2

       B.     Purple's Goldilocks Video is Unlawful and Harmful to Tempur Sealy ............... 6

       C.     Correspondence Between the Parties and Prior Proceedings in the District
              Courts ........................................................................................................ 10

III.   ARGUMENT ....................................................................................................... 12

IV.    CONCLUSION ..................................................................................................... 22

86268689.2 0200589-00001

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir.1991) ...............................................................................13

*Alter v. F.D.I.C.*,
  57 F. Supp. 3d 1325 (D. Utah 2014)....................................................................15

*American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge
  North America, Inc.*,
  474 F. Supp. 2d 474 (S.D. N.Y. 2007).................................................................13

*AmSouth Bank v. Dale*,
  386 F.3d 763 (6th Cir. 2004) .........................................................................17, 18

*Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*,
  189 F.3d 477, 1999 WL 682883 (10th Cir. Sept. 2, 1999) .........................13, 14, 15

*Catholic Health Partners v. CareLogistics, LLC*,
  973 F. Supp. 2d 787 (N.D. Ohio 2013).................................................................17

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ...............................................................................19

*Church of Scientology of California v. U.S. Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979) ........................................................................13, 14, 21

*Continental Grain Co. v. Barge, F.B.L.–585*,
  364 U.S. 19 (1960)...............................................................................................12

*Crawford v. Bell*,
  599 F.2d 890 (9th Cir. 1979) ........................................................................13, 21

*DigiTrax Entertainment, LLC v. Universal Music Corp.*,
  21 F. Supp. 3d 917 (E.D. Tenn. 2014)............................................................18, 19

*E.E.O.C. v. Univ. of Pennsylvania*,
  850 F.2d 969 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed.
  2d 571 (1990).........................................................................................13, 14, 15

*Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,
  Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005) .............18

ii

# TABLE OF AUTHORITIES

**Page**

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc*.,
   522 F.3d 271 (2d Cir. 2008)..................................................................13, 21

*Ervin and Assoc., Inc. v. Cisneros*,
   939 F. Supp. 793 (D. Colo. 1996).......................................................12

*Great Northern Railway Co. v. National Railroad Adjustment Board*,
   422 F.2d 1187 (7th Cir. 1970) ............................................................14

*ICON Health & Fitness, Inc. v. Beachbody, LLC*,
   No. 1:11-CV-00024-TC, 2011 WL 1899390 (D. Utah May 19, 2011)................15, 16, 17, 19

*MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*,
   No. 1:05 CV 115, 2006 WL 581018 (D. Utah Mar. 7, 2006).....................14, 15, 20

*In re Morgan David Wine Corp.*,
   372 F.2d 539, 152 USPQ 593 (CCPA 1967) .......................................3

*Nacogdoches Oil & Gas, v. Leading Solutions*,
   No. 06–2551–CM, 2007 WL 2402723 (D.Kan. Aug. 17, 2007) ............................14

*O'Hare Int'l Bank v. Lambert*,
   459 F.2d 328 (10th Cir. 1972) ............................................................20, 21

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ................................................................14, 21

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)...........................................................................12

*Plymouth Press v. Klutz, Inc.*,
   1997 U.S. Dist. LEXIS 12185 (E.D.Mich.1997) ...................................14

*Shannon's Rainbow, LLC v. Supernova Media, Inc.*,
   683 F. Supp. 2d 1261 (D. Utah 2010)..................................................13

*Sutter Corp. v. P & P Indus., Inc*.,
   125 F.3d 914 (5th Cir.1997) ...............................................................14

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
   819 F.2d 746 (7th Cir.1987) ...............................................................17

*Tempur Sealy International, Inc., et al v. WonderGel, LLC, et al*,
   Civ. Act. No. 5:16-CV-00083-JMH .................................................1, 2, 15

# TABLE OF AUTHORITIES

**Page**

*UAW v. Dana Corp.*,
    1999 WL 33237054 (N.D. Ohio 1999)..........................................................................17, 18

*Van Andel Institute v. Thorne Research, Inc.*,
    Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012) ..............17, 18

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)....................................................................................................................12

*Wada v. United States Secret Service*,
    525 F.Supp.2d 1 (D. D.C. 2007) ...............................................................................................12

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
    679 F. Supp. 2d 1287 (D. Kan. 2010).......................................................................................14

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*,
    16 Fed. Appx. 433 (6th Cir. 2001).....................................................................................15, 20

## Statutes

28 U.S.C. § 1404(a) ...........................................................................................................................2, 12

35 U.S.C. § 171.........................................................................................................................................3

Lanham Act.............................................................................................................................10, 16, 19

## Other Authorities

*Goldilocks (Lead)*, BACKSTAGE, http://www.backstage.com/casting/goldilocks-
    94777/goldilocks-352438/ (last visited March 24, 2016) ........................................................6

https://www.youtube.com/watch?v=TYgaMWGjUXY ..................................................................5

Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last
    visited March 24, 2015) .............................................................................................................8, 9

Purple, *How to Use a Raw Egg to Determine if Your Mattress is Awful - #Purple*,
    YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg (last visited
    March 24, 2016)..............................................................................................................................8

PURPLE, http://onpurple.com/ (last visited March 24, 2016) .........................................................8

*Purple: The Latest Technology in Comfort and Sleep*, KICKSTARTER,
    https://www.kickstarter.com/projects/227992716/purple-the-latest-
    technology-in-comfort-and-sleep?ref=nav_search (last visited March 24,
    2016) ................................................................................................................................................6

# TABLE OF AUTHORITIES

**Page**

*Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA
https://www.sleepsherpa.com/performance-mattresses/purple-mattress-
review-purple-reign/ (last visited March 24, 2015) ...................................................................9

www.tempurpedic.com ...................................................................................................................5

v

Pursuant to 28 U.S.C. § 1404(a), defendant Tempur Sealy International, Inc. ("Tempur Sealy") moves the Court to dismiss the present action without prejudice to allow Plaintiff Wondergel, LLC's (d/b/a Purple) ("Purple") to refile its claims in an action pending in the Eastern District of Kentucky, captioned *Tempur Sealy International, Inc., et al v. WonderGel, LLC, et al*, Civ. Act. No. 5:16-CV-00083-JMH (the "Kentucky Action"). Alternatively, Tempur Sealy moves the Court to either (a) transfer the present action for consolidation with the Kentucky Action, a well-advanced case involving similar parties as well as similar issues to the present case; or (b) stay the present action pending resolution of the Kentucky Action.

## I.    RELIEF SOUGHT & GROUNDS FOR THE MOTION

1.      The first-to-file rule is not woodenly applied. Indeed, every federal circuit -- including the Tenth and Sixth Circuits -- provides for a presumption that a first-filed declaratory judgment action should be deferred in favor of a second-filed substantive suit, especially where there is evidence of procedural fencing.

2.      Purple filed the present declaratory action in anticipation of litigation ***after Tempur Sealy sent Purple a cease and desist letter*** requesting that Purple stop violating the Lanham Act's prohibition against false advertisement. After filing this action, Purple did not serve a summons or make any other filings in this case. Rather, Purple only began pursuing this action after Tempur Sealy filed suit in Kentucky, served Purple in Kentucky, moved for injunctive relief, and scheduled a hearing on the requested injunction.

3.      The Kentucky District Court has already denied Purple's motion to dismiss, transfer, or stay the Kentucky Action in favor of this case. In doing so, the Kentucky court determined that the first-to-file should not apply given Purple's procedural fencing. The

1

Kentucky court also ordered Purple to remove the false advertisement, an order Purple has indicated it will appeal to the Sixth Circuit Court of Appeals.

4.      Moreover, application of the first-to-file rule in this case defeats the rule's own goal of judicial efficiency where the Kentucky Action is well under way on the merits.

5.      Tempur Sealy seeks an order from this Court dismissing the present action without prejudice to allow Purple to refile its claim against Tempur Sealy in the Eastern District of Kentucky where the parties are already proceeding with litigation on these same issues.  The case in Kentucky is captioned as *Tempur Sealy International, Inc., et al v. WonderGel, LLC, et al*, Civ. Act. No. 5:16-CV-00083-JMH.

6.      Alternatively, under 28 U.S.C. § 1404(a), Tempur Sealy moves the Court to transfer the present action to the Eastern District of Kentucky for consolidation with *Tempur Sealy International, Inc., et al v. WonderGel, LLC, et al*, Civ. Act. No. 5:16-CV-00083-JMH, or to stay the present action pending resolution of the Kentucky Action.

## II.      RELEVANT FACTUAL BACKGROUND

### A.      TEMPUR-SEALY HAS EXPENDED SIGNIFICANT TIME AND RESOURCES TO ESTABLISH ITS BRAND IN THE MARKETPLACE

Tempur Sealy promotes and sells high-quality TEMPUR-PEDIC products nationwide, including on television and on the Internet, under the TEMPUR-PEDIC, TEMPUR-PEDIC & RECLINING FIGURE Designs and the TEMPUR word marks.[1]  As part of those efforts and as is common in the industry, Tempur Sealy designed and utilizes distinctive trade dress in connection with the TEMPUR-PEDIC products that distinguishes its products from those of its

---

[1] *See* Affidavit of Tiffane Thompson, Director of Marketing at Tempur Sealy International, ¶¶ 9, 13 (March 15, 2016) ("Tempur Sealy Affidavit"); a copy of the Tempur Sealy Affidavit is attached as Exhibit 1.

2

competitors ("Tempur Sealy Trade Dress").[2]  Tempur Sealy has even obtained a design patent that protects the distinctive features of the TEMPUR-Contour mattress cover.  Tempur Sealy's investment in patent protection for its TEMPUR-CONTOUR mattress design is further evidence of the Plaintiffs' investment in its products.[3]

Mattresses can be difficult to mark with traditional word marks.  As a result, consumers often look to distinctive exterior product features to determine the mattress brand, including Tempur Sealy's TEMPUR-PEDIC brand.[4]  For example, the TEMPUR-CONTOUR mattress includes a distinctive contoured pattern on the surface and sides of the mattress, a specifically placed orange zipper band around the sides of the mattress, and a contrasting colored fabric on the lower one-third of the mattress.[5]  An example of the TEMPUR-CONTOUR mattress design is set forth below:

---

[2] *See* Tempur Sealy Affidavit, Exhibit 1, ¶¶ 4-7.

[3] Design Patent, No. US D746,082 S issued December 29, 2015.  A copy of the patent is attached as Exhibit 2.  Design patents protect non-functional, ornamental features and configurations for new and non-obvious features of an article of manufacture.  *See* 35 U.S.C. § 171.  Dual protection under trademark law and patent law is always possible where the configuration or shape of an article serves to identify and distinguish the commercial source of the goods and otherwise meets design patent requirements.  One form of protection does not preclude the other. *In re Morgan David Wine Corp.*, 372 F.2d 539, 152 USPQ 593 (CCPA 1967).

[4] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.

[5] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.

3



This design has become so distinctive that a customer only needs to see a TEMPUR-PEDIC mattress to know that it is a TEMPUR-PEDIC mattress.[6]

To promote and establish the Tempur Sealy Trade Dress, Tempur Sealy has spent millions of dollars in advertisement efforts, including the prominent display of its distinctive trade dress.[7]  Since at least March 2014, Tempur Sealy has used the Tempur Sealy Trade Dress on the TEMPUR-CONTOUR mattress as a commercial marker to designate and communicate to consumers that the product comes from Tempur Sealy.[8]  In fact, Tempur Sealy designed the Tempur Sealy Trade Dress and has undertaken extensive targeted advertising to ensure the distinctive nature and the commercial significance of the trade dress in the minds of relevant consumers.[9]

---

[6] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.

[7] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.

[8] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.

[9] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.

4

As one example, Tempur Sealy's broadcast television advertisement titled "Tempur-Pedic Covers" is intended to, and does in fact, draw the attention of the relevant consumers directly to the commercially distinctive features of the product and the Tempur Sealy Trade Dress.[10] The "Tempur-Pedic Covers" advertisement is effective in emphasizing the Tempur Sealy Trade Dress as applied to the product by featuring the trade dress prominently.[11] The "Tempur-Pedic Covers" advertisement aired on national broadcast television over 4,000 times during 2014 alone, including most recently during the highly ranked nationally broadcast television show NCIS.[12] The "Tempur-Pedic Covers" television advertisement prominently featuring the Tempur Sealy Trade Dress created 939,916,133 commercial impressions among consumers who have viewed the advertisement.[13]

All advertising for Tempur Sealy's TEMPUR-CONTOUR product, including advertising on Tempur Sealy's commercial website www.tempurpedic.com, prominently features the TEMPUR-CONTOUR Trade Dress.[14] Although Tempur Sealy could display its mattresses in advertisements with sheets in a "made bed" fashion, it intentionally displays and emphasizes the

---

[10] Tempur Sealy Affidavit, Exhibit 1, ¶¶ 9-10; screen shots taken from the "Tempur-Pedic Covers" advertisement featuring the trade dress are attached, collectively, as Exhibit 3. *See also* https://www.youtube.com/watch?v=TYgaMWGjUXY. The Affidavit of Amy Sullivan Cahill authenticating the website references and screen shots contained herein is attached hereto as Exhibit 4.

[11] Tempur Sealy Affidavit, Exhibit 1, ¶ 9.

[12] Tempur Sealy Affidavit, Exhibit 1, ¶ 11.

[13] Tempur Sealy Affidavit, Exhibit 1, ¶ 12.

[14] Tempur Sealy Affidavit, Exhibit 1, ¶ 13; *see* an example of Tempur Sealy's TEMPUR-CONTOUR trade dress as featured on Tempur Sealy's web site appears below and is attached hereto as Exhibit 5.

5

Tempur Sealy Trade Dress as a way for consumers to identify Tempur Sealy as the source of the Tempur Sealy products.[15]

All told, Tempur Sealy has spent millions of dollars advertising its products bearing the Tempur Sealy Trade Dress.  As a result, its trade dress has become well-known among consumers as an indicator of a single commercial source and a reputation for high quality.[16]  In fact, sales of the TEMPUR-CONTOUR model alone were $135,998,639 in 2014 and exceeded $148,838,218 in 2015.[17]  Total sales of products bearing the TEMPUR-CONTOUR Trade Dress have exceeded $300,000,000 since its introduction in early 2014.[18]

**B.    PURPLE'S GOLDILOCKS VIDEO IS UNLAWFUL AND HARMFUL TO TEMPUR SEALY**

On information and belief, Purple engaged in a crowd-funding campaign to raise capital to promote its new business beginning in September 2015, using the Internet based crowd-funding website Kickstarter.[19]  After the capital fundraising campaign, in or around December 2015, Purple hired a third-party well-known for "viral" Internet advertising to conduct a "talent search" and to create an online advertisement with the hope that it would "go viral."  Purple and its production company used an interactive website, inviting applicants to submit an audition video for this purpose.[20]  A script for the advertisement was included on the website used to

---

[15] Tempur Sealy Affidavit, Exhibit 1, ¶ 14.

[16] Tempur Sealy Affidavit, Exhibit 1, ¶ 13.

[17] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[18] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[19] *See Purple: The Latest Technology in Comfort and Sleep*, KICKSTARTER, https://www.kickstarter.com/projects/227992716/purple-the-latest-technology-in-comfort-and-sleep?ref=nav_search (last visited March 24, 2016).

[20] *See Goldilocks (Lead)*, BACKSTAGE, http://www.backstage.com/casting/goldilocks-94777/goldilocks-352438/ (last visited March 24, 2016).

solicit actors to submit an audition tape for the video advertisement.  The script specifically

includes a reference to the intended use of the "Tempurpedic logo" in one frame of the video.[21]

In December 2015 and/or January 2016, Purple created and published the "Goldilocks

Video" ("False Advertisement") in which it featured the TEMPUR-CONTOUR mattress as

shown in the screenshot shown below.



The False Advertisement features an actor/spokesperson identified by Purple as "Goldilocks"

who makes the following statements directed to the TEMPUR-Contour mattress:

> Looking for some shoulder pain?
> Try a hard mattress.
> It may feel like a rock and put pressure on your hips.
> But it's the perfect way to tell your partner:
> "Hey baby; Want some arthritis?"[22]

---

[21] A copy of the script is attached as Exhibit 6 ("False Advertisement Script").

The False Advertisement includes the Goldilocks character falling back onto the TEMPUR-CONTOUR mattress in a manner and accompanied by a facial expression and sound effects that suggest that the mattress is extremely hard and painful for those who use it, as shown in the screenshot below.



The False Advertisement was posted to YouTube.com in January 2016 and was viewed over three million (3,000,000) times by March 25, just three months later.[23]  The False Advertisement was also posted on the home page of Purple's commercial website[24] and Facebook page.[25]  The

---

[22] False Advertisement Script, Exhibit 6 (emphasis added).

[23] Purple, *How to Use a Raw Egg to Determine if Your Mattress is Awful - #Purple*, YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg (last visited March 24, 2016).

[24] PURPLE, http://onpurple.com/ (last visited March 24, 2016).

[25] Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last visited March 24, 2015) (showing the video as the initial post on Purple's timeline and on its "ABOUT" page).

8

False Advertisement on Facebook had received nearly fourteen million (14,000,000) views, over seventy-nine thousand (79,000) likes and had been shared over fifty-three thousand (53,000) times by late March.[26]  Some of the comments to the Facebook post include:

> Just bought a $5000 Tempurpedic.  wish I saw this first ☹
> This looks like an affordable alternative to Tempurpedic
> maybe we can try this before buying a tempurpedic?   100 day
> money back guarantee?[27]

The False Advertisement was also posted on the Sleep Sherpa website.[28]

Consumers who have viewed the False Advertisement have shown that they recognize the mattress as a TEMPUR-PEDIC product by leaving "comments" on the YouTube site where the video is displayed.[29]  For example, one consumer writes:

> Awesome commercial and rather convincing, but I must say - the
> Purple Bed could have been tweaked to where it would keep an
> egg from breaking (the purple bedding accommodates an egg
> rather well) but that doesn't necessarily mean it is a good bed for
> human support. For example, **a tempur pedic might be great for
> support but might not keep an egg for breaking simply because
> it wasn't designed for that**.[30]

And another consumer offers the separate comment:

> **[T]he only thing that gives me pause to question is the fact that
> it doesn't mention if it is better than the tempurpedic**. I want

---

[26] *Id.* (the video information indicates that it has been viewed over thirteen million (13,000,000) times and shared over fifty-two thousand (52,000) times).

[27] Screenshots of these comments on Facebook are attached as Exhibit 7.

[28] *Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA https://www.sleepsherpa.com/performance-mattresses/purple-mattress-review-purple-reign/ (last visited March 24, 2015).

[29] *See supra* note 22; *see also* YouTube comments, all YouTube comments are attached collectively as Exhibit 8 (emphasis added) ("YouTube Comments").

[30] YouTube Comments, Exhibit 8 (emphasis added).

one but if I'm going to get it I want to make sure that it is truly the
best bed I can get.[31]

Similarly, the Facebook comments demonstrate that individuals who viewed the False

Advertisement on Facebook recognized that it was a Tempurpedic mattress.[32]  And if there was

any question regarding what brand of mattress Purple intended to display in the False

Advertisement, it was put to rest by this comment from Purple itself:

> PURPLE RESPONSE: **Tempurpedic was the hard mattress in
> the video.**[33]

## C.  CORRESPONDENCE BETWEEN THE PARTIES AND PRIOR PROCEEDINGS IN THE DISTRICT COURTS

On February 19, 2016, counsel for Tempur Sealy sent Purple a cease and desist letter,

explaining that the False Advertisement violated the Lanham Act.[34]  Seven days later, Purple

responded, refusing to remove the False Advertisement and giving notice that it had filed a pre-

emptive declaratory judgment action ("Utah Pre-emptive Action") against Tempur Sealy.[35]  The

Utah Pre-emptive Action seeks, among other things, a declaratory judgment that the False

Advertisement does not violate the Lanham Act.[36]  Despite filing the Utah Pre-emptive Action,

Purple did not bother to issue a summons or to serve Tempur Sealy until over a month later.  In

---

[31] YouTube Comments, Exhibit 8 (emphasis added).

[32] *See* Exhibit 8.

[33] YouTube Comments, Exhibit 8 (emphasis added).

[34] February 19, 2016 Letter is attached as Exhibit 9.

[35] A copy of the February 26, 2016 Letter is attached as Exhibit 10.

[36] *See generally* Complaint, R. 2.  The Complaint also includes a count for abuse of process
(even though Tempur Sealy had yet to file suit), a claim for monopolization (that does not even
bother to define the geographical scope of the market in question) and a tortious interference
claim (despite never even identifying any specific customers of Purple for which Tempur Sealy
was allegedly interfering).  As the Kentucky District Court noted at oral arguments, these
additional claims are specious, at best.

fact, Purple did not serve Tempur Sealy with the Utah Pre-emptive Action until March 29, 2016, the eve of the injunction hearing in Kentucky.

Meanwhile, on March 15, 2016, Tempur Sealy filed an action in the Eastern District of Kentucky ("Kentucky Coercive Action") against Purple and EdiZone, LLC (collectively, the "Kentucky Defendants")[37] and immediately issued a summons to each defendant.[38]  The Kentucky Coercive Action was served on Purple a day later.[39]  Shortly thereafter, on March 25, 2016, Tempur Sealy filed a motion for temporary restraining order and preliminary injunction ("Tempur Sealy's Motion for Injunctive Relief").[40]  In response, Purple filed a Motion to Dismiss, Stay or Transfer, based on the first to file rule, asking the Kentucky Court to dismiss the Kentucky Coercive Action or, alternatively, to transfer it to this Court.  The Kentucky District Court heard oral argument on Tempur Sealy's Motion for Injunctive Relief and on Purple's Motion to Dismiss on March 30, 2016.[41] A few days later, the Kentucky District Court denied Purple's Motion to Dismiss, Stay or Transfer, holding that the first-to-file rule was not properly applied under the present circumstances.[42]  The Kentucky District Court found that all of the relevant factors were met, the injunctive relief was warranted, and it issued the Kentucky Injunction Order.[43]

---

[37] A copy of the Complaint filed in the Kentucky Coercive Action is attached as Exhibit 11 ("Kentucky Coercive Action Complaint").

[38] Kentucky Coercive Action Complaint, Exhibit 11.

[39] Kentucky Coercive Action Complaint, Exhibit 11.

[40] Kentucky Coercive Action Complaint, Exhibit 11.

[41] Kentucky Coercive Action Complaint, Exhibit 11.

[42] A copy of the Kentucky Injunction Order is attached as Exhibit 12.

[43] Kentucky Injunction Order, Exhibit 12.

After all of the above was completed in the Kentucky Coercive Action, Purple then sought a temporary restraining order and preliminary injunction in this case. That same day, Purple filed a motion in the Kentucky Coercive Action requesting a stay of the Kentucky Injunction Order pending an as yet unfiled appeal ("Kentucky Motion to Stay").[44] Consequently, if Purple's pleadings are correct, Purple's actions in this matter will result in three courts hearing this dispute -- this Court, the Kentucky District Court and the Sixth Circuit Court of Appeals.

## III.   ARGUMENT

Congress enacted 28 U.S.C. § 1404(a) in 1948 "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system."[45] The relevant statute provides that a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice." Underlying this statute are the goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.'"[46] The district court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness.[47] While a plaintiff's choice of forum is typically given deference in this analysis, such deference is far from

---

[44] A copy of the Motion to Stay filed by Purple in the Kentucky Coercive Action is attached as Exhibit 13 ("Kentucky Motion to Stay").

[45] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964)).

[46] *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge, F.B.L.–585*, 364 U.S. 19, 26–27 (1960)).

[47] *Wada v. United States Secret Service*, 525 F.Supp.2d 1, 9 (D. D.C. 2007); *Ervin and Assoc., Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

dispositive when dealing with the first-to-file rule and the dichotomy of filing competing actions.[48]

The first-to-file rule provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the district court in the subsequently filed action is **permitted** to decline jurisdiction.[49]  Three threshold elements must be shown before the first-to-file rule is applicable: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues.[50]  Both the letter and the spirit of the first-to-file rule are grounded in the foregoing principles of equity and comity.[51]  "Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for

---

[48] *See*, *e.g.*, *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge North America, Inc.*, 474 F. Supp. 2d 474 (S.D. N.Y. 2007).

[49] *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477 (table), 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999)) (the first-to-file rule "**permits** a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court) (emphasis added); *see Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278 (D. Utah 2010) ("A Federal District Court which first obtains jurisdiction of parties and issues **may** preserve its jurisdiction by enjoining proceedings involving the same issues and parties") (emphasis added).

[50] *Shannon's Rainbow*, 683 F. Supp. 2d at 1278 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)).

[51] *See Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) ("embodies considerations of judicial administration and conservation of resources" and duplicative litigation); *see E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990); *see Buzas Baseball*, 1999 WL 682883, at *2 (the first to file rule was developed to "aid" in these goals); *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (quoting *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979)).

a uniform result.'"[52]   The rule "is not a rigid or inflexible rule to be mechanically applied, but

rather is to be applied with a view to the dictates of sound judicial administration."[53]

"District courts have always had discretion to retain jurisdiction given appropriate

circumstances justifying departure from the first-filed rule."[54]   Circumstances that have

historically been considered grounds for departing from the rule include: (1) bad faith;[55]   (2)

forum shopping;[56]   (3) when the second action has been litigated further than the initial suit;[57]   and

(4) when a party filed the initial litigation in one forum in anticipation that another suit was

imminent in another forum.[58]   For example, in *Buzas Baseball*, the Tenth Circuit held that the

---

[52] *Buzas Baseball*, 1999 WL 682883, at *2 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir.1997)); *see Church of Scientology*, 611 F.2d at 750 (quoting *Great Northern Railway Co. v. National Railroad Adjustment Board*, 422 F.2d 1187, 1193 (7th Cir. 1970)) ("The doctrine [of comity] is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."); *see E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 974 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990) (citing quoting *Kline*, 260 U.S. at 229, 43 S.Ct. at 81).

[53] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)

[54] *Univ. of Pennsylvania*, 850 F.2d at 972; *see MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006) ("District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand.").

[55] *See, e.g., Plymouth Press v. Klutz, Inc.*, 1997 U.S. Dist. LEXIS 12185, *5–6 (E.D.Mich.1997) (did "plaintiff in the earlier-filed declaratory action misle[a]d the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse.").

[56] *See, e.g., Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. 2010) (citing *Nacogdoches Oil & Gas, v. Leading Solutions*, No. 06–2551–CM, 2007 WL 2402723, *2 (D. Kan. Aug. 17, 2007) (a court may suspend application of the first-to-file rule for "bad faith, anticipatory filing, and forum shopping")).

[57] *Church of Scientology*, 611 F.2d at 750 ("Under the circumstances, the goal of judicial efficiency will be best met if we overlook the "first to file" rule, and defer to the litigation in progress in the D.C. Circuit.").

[58] *See, e.g., Buzas Baseball*, 1999 WL 682883 at *3 ("A district court may decline to follow the first-to-file . . . if that action was filed for the purpose of anticipating a trial of the same issues

14

district court did not abuse its discretion by declining to follow the first-to-file rule.[59]   There, the

plaintiff's admission that "one consideration" in its decision to file the action was a concern that

the other party would file suit first in a court of concurrent jurisdiction was sufficient for the

court to decline to follow the rule.[60]   Indeed, as another court in this District previously stated,

the exceptions should "discourage a race 'to the courthouse door in an attempt to preempt a later

suit in another forum.'"[61]   Consequently, district courts are given "the discretion to dispense with

the first-to-file rule where equity so demands."[62]

   Another example is *ICON Health and Fitness v. Beachbody, LLC*,[63] where both parties

were home fitness program competitors.[64]   On February 1, 2011, Beachbody sent a cease and

desist letter to ICON "notifying ICON that it was making false and unsubstantiated advertising

claims disparaging to Beachbody's products."[65]   While the parties were discussing Beachbody's

---

in a court of coordinate jurisdiction"); *see Univ. of Pennsylvania*, 850 F.2d at 977 (the Court found that after "viewing the totality of the circumstances, the district court did not abuse its discretion by declining to dismiss the second-filed suit.").

[59] *Buzas Baseball*, 1999 WL 682883, at *3 ("A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction").

[60] *Id.* ("plaintiff has admitted that one consideration in filing this action was its concern that defendant would file suit.").

[61] *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331 (D. Utah 2014) (*MedSpring Grp.*, 2006 WL 581018 at *3).

[62] *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001).

[63] *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *1 (D. Utah May 19, 2011).

[64] *Id.*

[65] *Id.*

claims, ICON filed a declaratory judgment action, but did not serve Beachbody.[66]   When discussions collapsed, Beachbody filed a false advertisement complaint in the United States District Court for the Central District of California.[67]   Beachbody immediately served ICON with a copy of its coercive complaint.[68]   Subsequently, ICON served Beachbody with the declaratory judgment complaint.

Upon its review of the first-to-file rule, the Utah district court found that ICON engaged in "procedural fencing" and refused to apply the rule.[69]   Specifically, the court stated that the fact that ICON filed a declaratory judgment action made the complaint suspect.[70]   The court was additionally persuaded to reject the first-to-file rule because: (1) "Beachbody delayed filing the California action in a good faith attempt to pursue settlement negotiations[;]" (2) Beachbody's letter stated that the "dissemination by ICON of false and misleading claims is likely to cause serious injury to Beachbody, LLC, and give rise to liability under the federal Lanham Act" and that Beachbody would take all necessary actions if ICON did not comply with its request; (3) "ICON's complaint makes clear that it filed the declaratory judgment action in anticipation of Beachbody's threatened action;" (4) "ICON, by its own admission, understood Beachbody's February 1 letter as 'rais[ing] a reasonable apprehension of the filing of a lawsuit against

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at *3.

[70] *Id.*

16

ICON[;]'" and (5) "ICON did not serve its declaratory judgment complaint on Beachbody until March 9, one day after Beachbody filed its false advertising complaint."[71]

Similarly, the Sixth Circuit, the jurisdiction in which the Kentucky District Court sits, has held that "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing.  Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping."[72]   Indeed, the Sixth Circuit and district courts within it have generally refused to apply the first-to-file rule when a declaratory judgment action is filed before a coercive action involving the same parties and issues.[73]  As the Sixth Circuit wrote in *AmSouth Bank v. Dale*, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, **a presumption**

---

[71] *Id.*; *see also MedSpring Grp.*, 2006 WL 581018 at *4 (holding that "[a] declaratory suit is immediately suspect as an improper anticipatory filing because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense.").

[72] *Id.* (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987) ("[T]he mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation ... to adopt such a rule here.") (internal citations omitted)).

[73] *See*, *e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004) ("In any case, the first-to-file rule is not a strict rule and more often than not gives way in the context of a coercive action filed subsequent to a declaratory action."); *UAW v. Dana Corp.*, 1999 WL 33237054 at *6 (N.D. Ohio 1999) ("Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit."); *Van Andel Institute v. Thorne Research, Inc.*, Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012); *Catholic Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, (N.D. Ohio 2013).

**that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit.**"[74]

The Sixth Circuit's holding was adopted and applied in *Van Andel*.  In *Van Andel*, plaintiffs filed suit alleging trademark infringement and unfair trade practices. The parties had previously made efforts to resolve the dispute, but, on the day those discussions collapsed, defendants filed a declaratory judgment action in Idaho.  Shortly thereafter, the plaintiffs filed their coercive action in the Western District of Michigan.  Relying on the precedents in the Sixth Circuit, the court declined to follow the first-to-file rule.[75]   The court cited several factors, including defendants' filing of the complaint at 7:30 p.m. the night following settlement discussions as clear indication that defendants were forum shopping.[76]  Likewise, in *Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,[77] a declaratory judgment action was filed by the defendant in its home state before the coercive action was filed by the natural plaintiffs in the Eastern District of Michigan.  Upon review of the factors that weigh against application of the first-to-file rule, the district court rejected defendant's motion to transfer and proceeded with the coercive action.[78]  And, in *DigiTrax Entertainment, LLC v. Universal Music Corp.*,[79] the district court rejected the first-to-file rule and refused to exercise jurisdiction over the pending declaratory judgment action holding that:

---

[74] 386 F.3d at 791 n. 8 (citing *UAW v. Dana Corp.*, Civil Act. No. 3:99-CV-7603, 1999 WL 33237054, *6 (N.D. Ohio Dec.6, 1999)) (emphasis added).

[75] *Van Andel*, 2012 WL 5511912, at *3.

[76] *Id.*

[77] Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005).

[78] *Id.* at *3.

[79] 21 F. Supp. 3d 917 (E.D. Tenn. 2014).

18

DigiTrax's [Declaratory Judgment Action] states, in the very first paragraph, that "DigiTrax brings this complaint seeking declaratory relief because Universal has *threatened it with litigation*, claiming copyright infringement of Universal's copyrighted content used in DigiTrax's Karaoke Cloud Platform." (emphasis supplied). Thus, there is no dispute that DigiTrax knew that Universal asserted copyright claims against it.[80]

In light of these Sixth Circuit cases, the Kentucky District Court agreed with Tempur Sealy and found that application of the first-to-file rule in this case was inappropriate and, based on this ruling, granted Tempur Sealy's Motion for Injunctive Relief.[81]

Here, as in *ICON* and *DigiTrax*, Purple's filing of the Utah Pre-emptive Action was nothing more than procedural fencing.  Purple, in its first-ever correspondence with Tempur Sealy on the topic, said as much when it stated that the Utah Pre-emptive Action was designed "to protect [Purple's] interests."[82]  That Action seeks, among other things, a declaratory judgment that the False Advertisement does not violate the Lanham Act, the mirror image of Tempur Sealy's claims in the Kentucky Coercive Action.  And, like the parties in *DigiTrax*, Purple blatantly states in this Utah Pre-emptive Action that, "[h]aving received Tempur+ Sealy's threat of suit, Purple is forced to initiate this action for a declaratory judgment and the recovery of damages cause by that wrongful conduct."[83]  And like in *ICON*, Purple only issued the summons after Tempur Sealy filed and served the Kentucky Coercive Action, something that

---

[80] *Id*. at 925-26.

[81] Kentucky Injunction Order, Exhibit 13, p. 3 (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)) ("The court sees no reason to apply the rule in the context of a coercive action filed subsequent to Defendant's anticipatory suit filed in Utah which is, at its heart, an action for a declaratory judgment.").

[82] A copy of the February 26, 2016 Letter is attached as Exhibit 10; *see* Complaint, D.E. 2.

[83] Complaint, D.E. 2, ¶ 11.

courts have previously described as evidence of "bad faith" and "procedural fencing."[84] Meanwhile, Tempur Sealy delayed filing its litigation believing that it was negotiating with Purple in good faith, in hopes of avoiding involvement of the courts.[85]   As these facts demonstrate, the Utah Pre-emptive Action was filed for no reasons other than the hope of keeping any litigation in the confines of Purple's chosen forum and to avoid litigating the False Advertisement in Kentucky where Tempur Sealy is headquartered and is the natural plaintiff.

In support of its application of the first-to-file rule, Purple previously cited the Tenth Circuit decision in *O'Hare*.[86]   In *O'Hare*, the initial suit was filed in Illinois, but the opinion about whether the first-to-file rule is appropriate stems from an Oklahoma district court decision, a "second-filed" court.[87]   The Illinois case was dismissed for lack of jurisdiction and while the appeal was pending, litigation was filed in Arkansas, Texas and Oklahoma.[88]   Subsequently, the Seventh Circuit found that jurisdiction was appropriate and reinstated the Illinois cause of action.[89]   As a result, the Tenth Circuit held "[w]here, as here, the complaint and cause of action is identical to that first filed in another federal forum having prima facie jurisdiction, the United States District Court for the Western District of Oklahoma abused its discretion in not granting the Bank's motion to stay proceedings until the first suit had been determined by the United

---

[84] *Zide Sport Shop*, 16 Fed. Appx. at 437.

[85] *See MedSpring Grp.*, 2006 WL 581018 at *4 ("the first-to-file rule is used to protect "those parties who were prepared, and had every intention, to pursue foreseeable legal action but failed to bring suit first due solely to their attempt to settle the matter without court involvement.").

[86] *See* Motion, D.E. 6, pp. 14-15.

[87] *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 330 (10th Cir. 1972) ("During the pendency of [the Seventh Circuit] appeal from the dismissal order entered by the Illinois Federal District Court, the Bank commenced identical actions in the court below").

[88] *Id*.

[89] *Id*.

20

States District Court for the Northern District of Illinois and after all appellate avenues had been availed or waived."[90]  Thus, it was the second-filed court that determined that the rule should be applied and a stay should be invoked, not the first-filed court in Illinois, enjoining a different court from enforcing its orders.[91]

Ultimately, Purple asks this Court to wade into a dispute that is already well under way on the merits in Kentucky.  Such a prospect would result in the parties undertaking multiple fights on multiple fronts with the chance of contradictory outcomes.  It would also unnecessarily waste the Courts' and the parties' resources.

In this situation, the Ninth Circuit case of *Church of Scientology* is informative.  There, the Ninth Circuit held that, because the litigation in the second lawsuit already proceeded, judicial efficiency would no longer be met by following the first-to-file rule and the goals of the rule would be better met by overlooking the rule and deferring to the litigation that was already underway.[92]  In that case, the court held that the realities of the modern judicial system may lead a court to determine that it is better to exercise its discretion and decline to follow the first-to-file approach.[93]

Here, as in *Church of Scientology*, the Kentucky District Court has acted in this matter and made decisions related to the parties' respective positions, including the application of the

---

[90] *Id.*

[91] *Id.*

[92] *Church of Scientology*, 611 F.2d at 750 (quoting *Crawford*).  Despite Purple's argument otherwise, the Kentucky District Court found that it had both subject matter and personal jurisdiction over Purple.

[93] *Pacesetter Sys.*, 678 F.2d at 95; *see Employers Ins. of Wausau*, 522 F.3d at 275 ("two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action; . . . and (2) where 'special circumstances' warrant giving priority to the second suit").

21

first-to-file rule based on Sixth Circuit law.  As Purple has shown by filing a Motion to Stay in the Kentucky District Court, it understands that its avenue for judicial relief from the Kentucky Injunction Order is the Sixth Circuit Court of Appeals, not a competing action in this Court.

Given these circumstances, this case is a perfect example of when a court should decline to follow the first-to-file rule.  Accordingly, Tempur Sealy asks that the Court dismiss, transfer, or stay the present dispute so the parties may continue their respective dispute in a single court in Kentucky.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Tempur Sealy respectfully requests that this Court grant its motion to dismiss or, alternatively, either (a) transfer the present dispute to Kentucky; or (b) stay the present action pending resolution of the Kentucky Action.

DATED: April 12, 2016

*/s/ Kenneth B. Black*
Kenneth B Black
David L. Mortensen
STOEL RIVES LLP

David A. Owen (pending admission)
Matthew A. Stinnett (pending admission)
DICKINSON WRIGHT PLLC

*Attorneys for Tempur Sealy International, Inc.*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April, 2016, I caused a true and correct copy of

the foregoing **TEMPUR SEALY INTERNATIONAL, INC.'S MOTION TO DISMISS OR**

**TRANSFER** to be served via CM/ECF on the following:

- Casey K. McGarvey  casey@edizone.com
- Mark D. Taylor  mtaylor@lewishansen.com


*/s/ Kenneth B. Black*

23