Kenneth B. Black (#5588)
   Email: *kblack@stoel.com*
David L. Mortensen (#8242)
   Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

David A. Owen (Pending *Pro Hac Vice* admission)
   Email: *DOwen@dickinsonwright.com*
Matthew A. Stinnett (Pending *Pro Hac Vice* admission)
   Email: *MStinnett@dickinsonwright.com*
Dickinson Wright PLLC
300 West Vine Street, Suite 1700
Lexington, Kentucky  40507
Telephone:  (859) 899-8700
Facsimile: (859) 899-8759

*Attorneys for Defendant Tempur Sealy International Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| WONDERGEL, LLC dba PURPLE<br><br>        Plaintiff,<br><br>  v.<br><br>TEMPUR SEALY INTERNATIONAL,<br>INC.,<br><br>        Defendant. | **TEMPUR SEALY INTERNATIONAL, INC.'S OPPOSITION TO WONDERGEL, LLC'S MOTION FOR ORDER ENJOINING DEFENDANT'S PROSECUTION OF SECOND-FILED ACTION**<br><br>Case No.:  2:16-cv-00162-BSJ<br><br>The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................ 2

      A.      Tempur-Sealy Has Expended Significant Time and Resources to Establish Its Brand in the Marketplace .................................................................. 2

      B.      Purple's Goldilocks Video is Unlawful and Harmful to Tempur Sealy ............... 5

      C.      Correspondence Between the Parties and Prior Proceedings in the District Courts ................................................................................................... 9

III.    ARGUMENT .................................................................................................... 11

      A.      Purple Fails to Cite the Correct Legal Issue In Dispute When Addressing the Merits of the Case ............................................................................ 11

      B.      The Court, In Its Discretion, Should Not Apply the First-To-File Rule .............. 13

      C.      The Kentucky Court had the Authority to Proceed with the Litigation .............. 21

IV.     CONCLUSION ................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir.1991) ........................................................................................13

*Alter v. F.D.I.C.*,
    57 F. Supp. 3d 1325, 1331 (D. Utah 2014) (*MedSpring Grp.*, 2006 WL
    581018 at *3) ...............................................................................................................15

*AmerisourceBergen Corp. v. Roden*,
    495 F.3d 1143 (9th Cir. 2007) .....................................................................................22

*AmSouth Bank v. Dale*,
    386 F.3d 763 (6th Cir. 2004) ..................................................................................18, 22

*Baker v. Microsoft Corp.*,
    797 F.3d 607 (9th Cir. 2015), cert. granted in part, 136 S. Ct. 890, 193 L. Ed.
    2d 783 (2016) ...............................................................................................................21

*Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*,
    189 F.3d 477, 1999 WL 682883 (10th Cir. Sept. 2, 1999) .........................................13, 15, 16

*Catholic Health Partners v. CareLogistics, LLC*,
    973 F. Supp. 2d 787 (N.D. Ohio 2013) ......................................................................18

*Cedars–Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997) .......................................................................................22

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) .......................................................................................19

*Cherokee Nation v. Nash*,
    724 F. Supp. 2d 1159 (N.D. Okla. 2010) ....................................................................22

*Chieftain Royalty Co. v. XTO Energy, Inc.*,
    No. CIV-11-29-FHS, 2011 WL 1533073 (Apr. 22, 2011 E.D. Ok.) ...........................22

*Church of Scientology of California v. U.S. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) .................................................................................13, 15, 24

*Comprehensive Health Sys., Inc. v. Chamberlain*,
 648 F. Supp. 247 (D. Utah 1986) ........................................................................14

*Crawford v. Bell*,
 599 F.2d 890 (9th Cir. 1979) ........................................................................13, 24

*DigiTrax Entertainment, LLC v. Universal Music Corp.*,
 21 F. Supp. 3d 917 (E.D. Tenn. 2014) ...........................................................19, 20

*E.E.O.C. v. Univ. of Pennsylvania*,
 850 F.2d 969 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed.
 2d 571 (1990) ...............................................................................13, 14, 15, 24

*Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,
 Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005) ........................19, 22

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc*,
 522 F.3d 271 (2d Cir. 2008).........................................................................13

*Great Northern Railway Co. v. National Railroad Adjustment Board*,
 422 F.2d 1187 (7th Cir. 1970) ........................................................................13

*ICON Health & Fitness, Inc. v. Beachbody, LLC*,
 No. 1:11-CV-00024-TC, 2011 WL 1899390 (D. Utah May 19, 2011) ......................16, 17, 19

*MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*,
 No. 1:05 CV 115, 2006 WL 581018 (D. Utah Mar. 7, 2006)....................................14, 17, 18

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*,
 685 F.3d 977 (10th Cir. 2012) ........................................................................16

*In re Morgan David Wine Corp.*,
 372 F.2d 539, 152 USPQ 593 (CCPA 1967) ..........................................................2

*Nacogdoches Oil & Gas, v. Leading Solutions*,
 No. 06–2551–CM, 2007 WL 2402723 (D.Kan. Aug. 17, 2007) ...............................14

*Nall v. Piper*,
 948 F.2d 1282 (4th Cir. 1991) ........................................................................22

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ........................................................24

86305982.2 0081966-00001

*O'Hare Int'l Bank v. Lambert*,
    459 F.2d 328 (10th Cir. 1972) ("During the pendency of [the Seventh Circuit]
    appeal from the dismissal order entered by the Illinois Federal District Court,
    the Bank commenced identical actions in the court below")..................................................23

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) ...............................................................................24

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ..................................................................................14

*Plymouth Press v. Klutz, Inc.*,
    1997 U.S. Dist. LEXIS 12185 (E.D.Mich.1997) ...................................................14

*Polaroid Corp. v. Casselman*,
    213 F. Supp. 379 (S.D. N.Y.1962) ........................................................................24

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) .................................................................................15

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2nd Cir. 1970).............................................................................14

*Shannon's Rainbow, LLC v. Supernova Media, Inc.*,
    683 F. Supp. 2d 1261 (D. Utah 2010) ("A Federal District Court which first
    obtains jurisdiction of parties and issues **may** preserve its jurisdiction by
    enjoining proceedings involving the same issues and parties").................................13

*Sutter Corp. v. P & P Indus., Inc.*,
    125 F.3d 914 (5th Cir.1997) .................................................................................13

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir.1987) ...........................................................................14, 18

*Tommy Hilfiger Licensing, Inc v. Nature Labs, LLC*,
    221 F. Supp. 2d 410 (S.D. N.Y. 2002).............................................................12, 16

*UAW v. Dana Corp.*,
    1999 WL 33237054 (N.D. Ohio 1999)............................................................18, 22

*Van Andel Institute v. Thorne Research, Inc.*,
    Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012) ..............18, 19

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
    679 F. Supp. 2d 1287 (D. Kan. 2010)...............................................................14, 22

iv

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)........................................................................................................16

*Yankee Publ'g Inc v. News Am. Publ'g Inc.*,
   809 F. Supp. 267 (S.D. N.Y. 1992) ..............................................................................12

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*,
   16 Fed. Appx. 433 (6th Cir. 2001)................................................................................15

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ....................................................................................................11

15 U.S.C. § 1125(a)(1)(B) ....................................................................................................11

35 U.S.C. § 171 .......................................................................................................................2

federal Lanham Act...............................................................................................................17

**Other Authorities**

*#Purple*, YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg (last
   visited March 24, 2016) ....................................................................................................7

BACKSTAGE, http://www.backstage.com/casting/goldilocks-94777/goldilocks-
   352438/ (last visited March 24, 2016) .............................................................................6

*Comfort and Sleep*, KICKSTARTER,
   https://www.kickstarter.com/projects/227992716/purple-the-latest-
   technology-in-comfort-and-sleep?ref=nav_search (last visited March 24,
   2016) ..................................................................................................................................5

 "Goldilocks Video" ("False Advertisement") ......................................................................6

https://www.youtube.com/watch?v=TYgaMWGjUXY .........................................................4

Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last
   visited March 24, 2015) ....................................................................................................8

PURPLE, http://onpurple.com/ (last visited March 24, 2016) ............................................7

*Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA
   https://www.sleepsherpa.com/performance-mattresses/purple-mattress-
   review-purple-reign/ (last visited March 24, 2015) .......................................................8

86305982.2 0081966-00001

Defendant Tempur Sealy International, Inc. ("Tempur Sealy"), by counsel, submits the following memorandum in opposition to Wondergel, LLC's (d/b/a Purple) ("Purple") Motion for Order Enjoining Tempur Sealy's Prosecution of Second-Filed Action ("Motion").   For the reasons set forth below, Purple's Motion should be denied.

## I.      <u>INTRODUCTION</u>

Between litigation here in Utah and in Kentucky, the parties have now submitted thirteen documents to two different courts setting forth their views on the first-to-file rule.  The first-to-file rule, as both parties agree, is a discretionary rule created by federal courts to promote equity and comity among the district courts.  The filing of over a dozen motions, responses and  replies dedicated to this procedural rule, however, undercuts these principles. With its procedural posturing,  Purple is attempting to draw attention away from the key issue in dispute – whether Purple is permitted to falsely claim in its advertisements that Tempur Sealy's mattress causes injury and arthritis.

A federal district court in the Eastern District of Kentucky (the "Kentucky Court") has reviewed both the first-to-file rule and Tempur Sealy's likelihood of success on its claims against Purple.  The Kentucky Court correctly held that, under these circumstances and in line with numerous Sixth Circuit decisions, the first-to-file rule is inapplicable in this case.  The Kentucky federal court then granted Tempur Sealy's request for an injunction and ordered Purple to immediately remove the false advertisement ("Kentucky Injunction Order").  Having lost in the Kentucky Court, Purple now seeks not only judicial review of the Kentucky Injunction Order from the Sixth Circuit, but also asks this Court to enjoin proceedings in the Kentucky Court.  As

a result, Purple is now litigating this issue in three separate courts in the desperate hope of perpetuating its false advertisement.

For the reasons set forth below, this Court should deny Purple's motion.

## II.      BACKGROUND

### A.      Tempur-Sealy Has Expended Significant Time and Resources to Establish Its Brand in the Marketplace

Tempur Sealy promotes and sells high-quality TEMPUR-PEDIC Products nationwide, including on television and on the Internet, under the TEMPUR-PEDIC, TEMPUR-PEDIC & Reclining Figure DESIGNS and the TEMPUR word marks.[1]  As part of those efforts and as is common in the industry, Tempur Sealy designed and utilizes distinctive trade dress in connection with the TEMPUR-PEDIC products that distinguishes its products from those of its competitors ("Tempur Sealy Trade Dress").[2]  Tempur Sealy has even obtained a design patent that protects the distinctive features of the TEMPUR-Contour mattress cover.  Tempur Sealy's investment in patent protection for its TEMPUR-CONTOUR mattress design is further evidence of the Plaintiffs' investment in its products.[3]

Mattresses can be difficult to mark with traditional word marks.  As a result, consumers often look to distinctive exterior product features to determine the mattress brand, including

---

[1] *See* Affidavit of Tiffane Thompson, Director of Marketing at Tempur Sealy International, ¶¶ 9, 13 (March 15, 2016) ("Tempur Sealy Affidavit"); a copy of the Tempur Sealy Affidavit is attached as Exhibit 1.

[2] *See* Tempur Sealy Affidavit, Exhibit 1, ¶¶ 4-7.

[3] Design Patent, No. US D746,082 S issued December 29, 2015; a copy of the patent is attached as Exhibit 2.  Design patents protect non-functional, ornamental features and configurations for new and non-obvious features of an article of manufacture.  35 U.S.C. § 171. Dual protection under trademark law and patent law is always possible where the configuration or shape of an article serves to identify and distinguish the commercial source of the goods and otherwise meets design patent requirements.  One form of protection does not preclude the other. *In re Morgan David Wine Corp.*, 372 F.2d 539, 152 USPQ 593 (CCPA 1967).

2

Tempur Sealy's TEMPUR-PEDIC brand.[4]  For example, the TEMPUR-CONTOUR mattress includes a distinctive contoured pattern on the surface and sides of the mattress, a specifically placed orange zipper band around the sides of the mattress and a contrasting colored fabric on the lower one-third of the mattress.[5]  An example of the TEMPUR-CONTOUR mattress design is set forth below:



This design has become so distinctive that a customer only needs to see a TEMPUR-PEDIC mattress to know that it is a TEMPUR-PEDIC mattress.[6]

To promote and establish the Tempur Sealy Trade Dress, Tempur Sealy has spent millions of dollars in advertisement efforts, including the prominent display of its distinctive trade dress.[7]  Since at least March 2014, Tempur Sealy has used the Tempur Sealy Trade Dress on the TEMPUR-CONTOUR mattress as a commercial marker to designate and communicate to

---

[4] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.

[5] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.
[6] Tempur Sealy Affidavit, Exhibit 1, ¶ 6.
[7] Tempur Sealy Affidavit, Exhibit 1, ¶ 4.

3

consumers that the product comes from Tempur Sealy.[8]  In fact, Tempur Sealy designed the Tempur Sealy Trade Dress and has undertaken extensive targeted advertising to ensure the distinctive nature and the commercial significance of the trade dress in the minds of the relevant consumers.[9]

As one example, Tempur Sealy's broadcast television advertisement titled "Tempur-Pedic Covers" is intended to, and does in fact, draw the attention of the relevant consumers directly to the commercially distinctive features of the product and the Tempur Sealy Trade Dress.[10]  The "Tempur-Pedic Covers" advertisement emphasizes the Tempur Sealy Trade Dress as applied to the product by featuring the trade dress prominently.[11]  The "Tempur-Pedic Covers" advertisement aired on national broadcast television over 4,000 times during 2014 alone, including most recently during the highly ranked nationally broadcast television show NCIS.[12]  The "Tempur-Pedic Covers" television advertisement prominently featuring the Tempur Sealy Trade Dress created 939,916,133 commercial impressions among consumers who have viewed the advertisement.[13]

All advertising for Tempur Sealy's TEMPUR-CONTOUR product, including advertising on Tempur Sealy's commercial website www.tempurpedic.com, prominently features the

---

[8] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.
[9] Tempur Sealy Affidavit, Exhibit 1, ¶ 5.
[10] Tempur Sealy Affidavit, Exhibit 1, ¶¶ 9-10; screen shots taken from the "Tempur-Pedic Covers" advertisement featuring the trade dress are attached, collectively, as Exhibit 3.  *See also* https://www.youtube.com/watch?v=TYgaMWGjUXY. The Affidavit of Amy Sullivan Cahill authenticating the website references and screen shots contained herein is attached hereto as Exhibit 4.
[11] Tempur Sealy Affidavit, Exhibit 1, ¶ 9.
[12] Tempur Sealy Affidavit, Exhibit 1, ¶ 11.
[13] Tempur Sealy Affidavit, Exhibit 1, ¶ 12.

4

TEMPUR-CONTOUR Trade Dress.[14]  Although Tempur Sealy could display its mattresses in advertisements with sheets in a "made bed" fashion, it intentionally displays and emphasizes the Tempur Sealy Trade Dress as a way for consumers to identify Tempur Sealy as the source of the Tempur Sealy products.[15]

All told, Tempur Sealy has spent millions of dollars advertising its products bearing the Tempur Sealy Trade Dress.  As a result, its trade dress has become well-known among consumers as an indicator of a single commercial source and a reputation for high quality.[16]  In fact, sales of the TEMPUR-CONTOUR model alone were $135,998,639 in 2014 and exceeded $148,838,218 in 2015.[17]  Total sales of products bearing the TEMPUR-CONTOUR Trade Dress have exceeded $300,000,000 since its introduction in early 2014.[18]

**B.**     **Purple's Goldilocks Video is Unlawful and Harmful to Tempur Sealy**

On information and belief, Purple engaged in a crowd-funding campaign to raise capital to promote its new business beginning in September 2015 using the Internet based crowd-funding website Kickstarter.[19]  After the capital fundraising campaign, in or around December 2015, Purple hired a third-party well-known for "viral" Internet advertising to conduct a "talent search" and to create an online advertisement with the hope that it would "go viral."  Purple and its production company used an interactive website inviting applicants to submit an audition

---

[14] Tempur Sealy Affidavit, Exhibit 1, ¶ 13; *see* an example of Tempur Sealy's TEMPUR-CONTOUR trade dress as featured on Tempur Sealy's web site appears below and is attached hereto as Exhibit 5.

[15] Tempur Sealy Affidavit, Exhibit 1, ¶ 14.

[16] Tempur Sealy Affidavit, Exhibit 1, ¶ 13.

[17] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[18] Tempur Sealy Affidavit, Exhibit 1, ¶ 15.

[19] *See Purple: The Latest Technology in Comfort and Sleep*, KICKSTARTER, https://www.kickstarter.com/projects/227992716/purple-the-latest-technology-in-comfort-and-sleep?ref=nav_search (last visited March 24, 2016).

86305982.2 0081966-00001

video for this purpose.[20]   A script for the advertisement was included on the website used to solicit actors to submit an audition tape for the video advertisement.   The script specifically includes a reference to the intended use of the "Tempurpedic logo" in one frame of the video.[21]

In December 2015 and/or January 2016, Purple created and published the "Goldilocks Video" ("False Advertisement") in which it featured the TEMPUR-CONTOUR mattress as shown in the screenshot shown below.



The False Advertisement features an actor/spokesperson identified by Purple as "Goldilocks" who makes the following statements directed to the TEMPUR-Contour mattress:

> Looking for some shoulder pain?
> Try a hard mattress.

---

[20]   *See Goldilocks (Lead)*, BACKSTAGE,   http://www.backstage.com/casting/goldilocks-94777/goldilocks-352438/ (last visited March 24, 2016).

[21]   A copy of the script is attached as Exhibit 6 ("False Advertisement Script").

> It may feel like a rock and put pressure on your hips.
> But it's the perfect way to tell your partner:
> "Hey baby; Want some arthritis?"[22]

The False Advertisement includes the Goldilocks character falling back onto the TEMPUR-CONTOUR mattress in a manner and accompanied by a facial expression and sound effects that suggest that the mattress is extremely hard and painful for those who use it, as shown in the screenshot below.



The False Advertisement was posted to YouTube.com in January 2016 and was viewed over three million (3,000,000) times by March 25, just three months later.[23]  The False Advertisement

---

[22] False Advertisement Script, Exhibit 6 (emphasis added).

[23]  Purple, *How to Use a Raw Egg to Determine if Your Mattress is Awful - #Purple*, YOUTUBE, https://www.youtube.com/watch?v=gN9ayoV1EXg (last visited March 24, 2016).

86305982.2 0081966-00001

was also posted on the home page of Purple's commercial website[24] and Facebook page.[25]   The

False Advertisement on Facebook had received nearly fourteen million (14,000,000) views, over

seventy-nine thousand (79,000) likes and had been shared over fifty-three thousand (53,000)

times by late March.[26]   Some of the comments to the Facebook post include:

> Just bought a $5000 Tempurpedic.  wish I saw this first ☹
> This looks like an affordable alternative to Tempurpedic
> maybe we can try this before buying a tempurpedic?   100 day
> money back guarantee?[27]

The False Advertisement is also posted on the Sleep Sherpa web site.[28]

Consumers who have viewed the False Advertisement have shown that they recognize

the mattress as a TEMPUR-PEDIC product by leaving "comments" on the YouTube site where

the video is displayed.[29]   For example, one consumer writes:

> Awesome commercial and rather convincing, but I must say - the
> Purple Bed could have been tweaked to where it would keep an
> egg from breaking (the purple bedding accommodates an egg
> rather well) but that doesn't necessarily mean it is a good bed for
> human support. For example, **a tempur pedic might be great for
> support but might not keep an egg for breaking simply because
> it wasn't designed for that**.[30]

And another consumer offers the separate comment:

---

[24] PURPLE, http://onpurple.com/ (last visited March 24, 2016).

[25] Purple, FACEBOOK, https://www.facebook.com/LifeOnPurple/?fref=nf (last visited March 24, 2015) (showing the video as the initial post on Purple's timeline and on its "ABOUT" page).

[26] *Id.* (the video information indicates that it has been viewed over thirteen million (13,000,000) times and shared over fifty-two thousand (52,000) times).

[27] Screenshots of these comments on Facebook are attached as Exhibit 7.

[28] *Purple Mattress Review: Purple Reign*, THE SLEEP SHERPA https://www.sleepsherpa.com/performance-mattresses/purple-mattress-review-purple-reign/ (last visited March 24, 2015).

[29] *See also* YouTube comments, all YouTube comments are attached collectively as Exhibit 8 (emphasis added) ("YouTube Comments").

[30] YouTube Comments, Exhibit 8 (emphasis added).

> [T]he only thing that gives me pause to question is the fact that
> **it doesn't mention if it is better than the tempurpedic**. I want
> one but if I'm going to get it I want to make sure that it is truly the
> best bed I can get.[31]

Similarly, the Facebook comments demonstrate that individuals who viewed the False

Advertisement on Facebook recognized that it was a Tempurpedic mattress.[32]  And if there was

any question regarding what brand of mattress Purple intended to display in the False

Advertisement, it was put to rest by this comment from Purple itself:

> PURPLE RESPONSE: **Tempurpedic was the hard mattress in
> the video**.[33]

## C.    Correspondence Between the Parties and Prior Proceedings in the District Courts

On February 19, 2016, counsel for Tempur Sealy sent Purple a cease and desist letter

explaining that the False Advertisement violated the Lanham Act.[34]  Seven days later, Purple

responded refusing to remove the False Advertisement and giving notice that it had filed a pre-

emptive declaratory judgment action ("Utah Pre-emptive Action") against Tempur Sealy.[35]  The

Utah Pre-emptive Action seeks, among other things, a declaratory judgment that the False

Advertisement does not violate the Lanham Act.[36]  Despite filing the Utah Pre-emptive Action,

Purple did not bother to issue a summons or to serve Tempur Sealy until over a month later.  In

---

[31] YouTube Comments, Exhibit 8 (emphasis added).

[32] *See* YouTube Comments, Exhibit 8.

[33] YouTube Comments, Exhibit 8 (emphasis added).

[34] February 19, 2016 Letter is attached as Exhibit 9.

[35] A copy of the February 26, 2016 Letter is attached as Exhibit 10.

[36] *See generally* Complaint, R. 2.  The Complaint also includes a count for abuse of process (even though Tempur Sealy had yet to file suit), a claim for monopolization (that does not even bother to define the geographical scope of the market in question) and a tortious interference claim (despite never even identifying any specific customers of Purple for which Tempur Sealy was allegedly interfering).  As the Kentucky District Court noted at oral arguments, these additional claims are specious, at best.

9

fact, Purple did not serve Tempur Sealy with the Utah Pre-emptive Action until March 29, 2016, the eve of the injunction hearing in Kentucky.

Meanwhile, on March 15, 2016, Tempur Sealy filed an action in the Eastern District of Kentucky ("Kentucky Coercive Action") against Purple and EdiZone, LLC (collectively, the "Kentucky Defendants")[37] and immediately issued a summons to each defendant.[38]   The Kentucky Coercive Action was served a day later.[39]   Shortly thereafter, on March 25, 2016, Tempur Sealy filed a motion for temporary restraining order and preliminary injunction ("Tempur Sealy's Motion for Injunctive Relief").[40]   In response, Purple filed a Motion to Dismiss, Stay or Transfer, based on the first to file rule, asking the Kentucky Court to dismiss the Kentucky Coercive Action or, alternatively, to transfer it to this Court.  The Kentucky District Court heard oral argument on Tempur Sealy's Motion for Injunctive Relief on March 30, 2016.[41] A few days later, the Kentucky District Court denied Purple's Motion to Dismiss, Stay or Transfer, holding that the first-to-file rule was not applicable under the present circumstances.[42] The Kentucky District Court also heard oral arguments on the injunctive relief requested by Tempur Sealy.[43]   The Kentucky District Court found that all of the relevant factors were met, the injunctive relief was warranted, and it issued the Kentucky Injunction Order.[44]

---

[37] A copy of the Complaint filed in the Kentucky Coercive Action is attached as Exhibit 11 ("Kentucky Coercive Action Complaint").
[38] Kentucky Coercive Action Complaint, Exhibit 11.
[39] Kentucky Coercive Action Complaint, Exhibit 11.
[40] Kentucky Coercive Action Complaint, Exhibit 11.
[41] Kentucky Coercive Action Complaint, Exhibit 11.
[42] A copy of the Kentucky Injunction Order is attached as Exhibit 12.
[43] Kentucky Coercive Action Complaint, Exhibit 11.
[44] Kentucky Injunction Order, Exhibit 12.

10

Only after all of the above was completed in the Kentucky Coercive Action did Purple file the present Motion.  That same day, Purple filed a motion in the Kentucky Coercive Action requesting a stay of the Kentucky Injunction Order pending an as yet unfiled appeal ("Kentucky Motion to Stay").[45]  The Kentucky District Court denied that motion on April 11, holding that Purple was not likely to prevail on its appeal and that any harm to Purple was far outweighed by the substantial harm caused to Tempur Sealy by Purple's false advertisements.[46]  Consequently, if Purple's pleadings are correct, Purple's actions in this matter will result in three courts hearing this dispute - this Court, the Kentucky District Court and the Sixth Circuit Court of Appeals.

## III.   ARGUMENT

### A.   Purple Fails to Cite the Correct Legal Issue In Dispute When Addressing the Merits of the Case

Before turning to the first-to-file rule, Tempur Sealy is compelled to correctly frame the merits of the case.  Tempur Sealy undertakes this discussion not only because Purple seeks permission to promote the False Advertisement, but because Purple has repeatedly and incorrectly framed the legal issue at hand.[47]

Tempur Sealy has asserted a claim that the False Advertisement is just that – a false advertisement under the Lanham Act.  Specifically, the Lanham Act or 15 U.S.C. § 1125(a)(1)(B) states that a false advertisement is something that "**misrepresents the nature, characteristics, qualities**, or geographic origin of his or her or another person's goods, services,

---

[45] A copy of the Motion to Stay filed by Purple in the Kentucky Coercive Action is attached as Exhibit 13 ("Kentucky Motion to Stay").

[46] A copy of the Memorandum Opinion and Order denying Kentucky Motion to Stay as well as Purple's Motion to Clarify is attached as Exhibit 14.

[47] *See* D.E. 13.

86305982.2 0081966-00001

or commercial activities."[48]   In contrast, 15 U.S.C. § 1125(a)(1)(A) discusses trademark infringement.   To be clear, Tempur Sealy is not seeking redress for trademark infringement. Indeed, Tempur Sealy's Complaint does not even mention "product confusion."  Rather, Tempur Sealy's claim concerns Purple's false advertisement.

Nevertheless, Purple has repeatedly argued and cited cases exclusively dealing with trademark infringement.  Trademark infringement cases, such as *Yankee Publ'g Inc v. News Am. Publ'g Inc.*[49] and *Tommy Hilfiger Licensing, Inc v. Nature Labs, LLC*,[50] have no bearing on the present dispute concerning a false advertisement.  To the contrary, the issue is whether Purple can say the following, without any scientific evidence, about Tempur Sealy's mattress:

> **Looking for some shoulder pain?**
> **Try a hard mattress.**
> **It may feel like a rock and put pressure on your hips.**
> **But it's the perfect way to tell your partner:**
> **"Hey baby; Want some arthritis?"**[51]

These commercial statements are literally false under the Lanham Act because they deliver an immediate message that Tempur Sealy's mattresses are so hard and uncomfortable as to be unusable and physically painful and harmful.  There is no need for viewers or consumers to integrate the components of the message to draw the conclusion.[52]  This is **not** a discussion about trademark confusion; this is a discussion about how Purple's statements "misrepresent[] the nature, characteristics, qualities" of Tempur Sealy's mattress.  Purple has attempted to argue that there should be an exception in the Lanham Act because the advertisement was made in jest,

---

[48] (Emphasis added).
[49] 809 F. Supp. 267 (S.D. N.Y. 1992).
[50] 221 F. Supp. 2d 410 (S.D. N.Y. 2002).
[51] False Advertisement Script, Exhibit 6 (emphasis added).
[52] *Novartis*, 290 F.3d at 586–87.

because the violation was only *de minimis* or because Purple is the "little guy."  In the end, no matter if the advertisement had "the tone of a light-hearted parody,"[53] a violation of the law is a violation of the law.  And Purple has violated the Lanham Act.

**B.      The Court, In Its Discretion, Should Not Apply the First-To-File Rule**

The first-to-file rule provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the district court in the subsequently filed action is permitted to decline jurisdiction.[54]  Both the letter and the spirit of the "first-to-file" rule are grounded in principles of equity and comity.[55]  "Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'"[56]  Three threshold elements must be shown before the first-to-file rule is

---

[53] D.E. 13, p. 6.

[54] *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477 (table), 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999)) (the first-to-file rule "**permits** a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court) (emphasis added); *see Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d 1261, 1278 (D. Utah 2010) ("A Federal District Court which first obtains jurisdiction of parties and issues **may** preserve its jurisdiction by enjoining proceedings involving the same issues and parties") (emphasis added).

[55] *See Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) ("embodies considerations of judicial administration and conservation of resources" and duplicative litigation); *see E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990); *see Buzas Baseball*, 1999 WL 682883, at *2 (the first to file rule was developed to "aid" in these goals); *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (quoting *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979)).

[56] *Buzas Baseball*, 1999 WL 682883, at *2 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir.1997)); *see Church of Scientology*, 611 F.2d at 750 (quoting *Great Northern Railway Co. v. National Railroad Adjustment Board*, 422 F.2d 1187, 1193 (7th Cir. 1970)) ("The doctrine [of comity] is designed to avoid placing an unnecessary burden on the

applicable: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues.[57]

Even when those elements are satisfied, the first-to-file rule is purely discretionary, with exceptions nearly as pervasive as the rule.  For instance, the Ninth Circuit has stated that the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."[58]  Similarly, the Sixth Circuit held that "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing."[59]  Likewise, Courts in this District have held that "[d]istrict courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule."[60]  With all of these decisions, courts set aside the three-part test for application of the first-to-file rule where there is evidence of the following:  (1) bad faith;[61] (2) forum shopping;[62] (3) when the second action has

---

[57] *Shannon's Rainbow*, 683 F. Supp. 2d at 1278 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)).

[58] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)

[59] *Id.* (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987) ("[T]he mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation ... to adopt such a rule here.") (internal citations omitted)).

[60] *Univ. of Pennsylvania*, 850 F.2d at 972; *see also MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006) ("District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand."); *Comprehensive Health Sys., Inc. v. Chamberlain*, 648 F. Supp. 247, 250 (D. Utah 1986) (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2nd Cir. 1970) ("While demonstrating the continuing viability of the 'First to File Rule,' all of the aforesaid authorities recognize the broad discretion vested in trial judges and that the ultimate determination often rests upon a balancing of convenience.").

[61] *See, e.g., Plymouth Press v. Klutz, Inc.*, 1997 U.S. Dist. LEXIS 12185, *5–6 (E.D.Mich.1997) (did "plaintiff in the earlier-filed declaratory action misle[a]d the defendant

14

been litigated further than the initial suit;[63] and (4) when a party filed the initial litigation in one

forum in anticipation that another suit was imminent in another forum.[64]

There is no special burden to overcome application of the first-to-file rule.[65]  Rather,

evidence of these factors will negate application of the first-to-file rule.  For example, in *Buzas*

*Baseball*, the Tenth Circuit held that the district court did not abuse its discretion by declining to

follow the first-to-file rule.[66]  There, the plaintiff's admission that "one consideration" in its

decision to file the action was a concern that the other party would file suit first in a court of

concurrent jurisdiction was sufficient to decline to follow the rule.[67]  Indeed, as another Court in

this District previously stated, the exceptions should "discourage a race 'to the courthouse door

---

into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse.").

[62]  *See, e.g., Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1298 (D. Kan. 2010) (citing *Nacogdoches Oil & Gas, v. Leading Solutions*, No. 06–2551–CM, 2007 WL 2402723, *2 (D.Kan. Aug. 17, 2007) (a court may suspend application of the first-to-file rule for "bad faith, anticipatory filing, and forum shopping")).

[63]  *Church of Scientology*, 611 F.2d at 750 ("Under the circumstances, the goal of judicial efficiency will be best met if we overlook the "first to file" rule, and defer to the litigation in progress in the D.C. Circuit.").

[64]  *See, e.g., Buzas Baseball*, 1999 WL 682883 at *3 ("A district court may decline to follow the first-to-file . . . if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction"); *see Univ. of Pennsylvania*, 850 F.2d at 977 (the Court found that after "viewing the totality of the circumstances, the district court did not abuse its discretion by declining to dismiss the second-filed suit.").

[65]  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010) (responding to the argument that "the party filing second has a burden to demonstrate 'special circumstances' in order to overcome the first-to-file rule," the Seventh Circuit stated that it "decline[d] to impose such a burden").

[66]  *Buzas Baseball*, 1999 WL 682883, at *3 ("A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction").

[67]  *Id.* ("plaintiff has admitted that one consideration in filing this action was its concern that defendant would file suit.").

86305982.2 0081966-00001

in an attempt to preempt a later suit in another forum.'"[68]  Consequently, district courts are given

"the discretion to dispense with the first-to-file rule where equity so demands."[69]

These cases also comport with the discretion every district court has to refuse to exercise

jurisdiction over a declaratory judgment action.[70]  One of the critical factors is "whether the

declaratory remedy is being used merely for the purpose of procedural fencing or to provide an

arena for a race to res judicata."[71]  In many of the cases where the courts reject the application of

the first-to-file rule, such as in *Buzas Baseball*, procedural fencing serves as the leading factor in

a court's decision to decline application of the first-to-file rule.

None of this is new in this District.  Like with *Buzas Baseball*, the *ICON Health and

Fitness v. Beachbody, LLC* matter is instructive.[72]  In that case, both parties were home fitness

program competitors.[73]  On February 1, 2011, Beachbody sent a cease and desist letter to ICON

"notifying ICON that it was making false and unsubstantiated advertising claims disparaging to

Beachbody's products...."[74]  Beachbody identified the specific advertisement and informed ICON

that the false advertisement would cause Beachbody injury and liability under the Lanham Act.[75]

While the parties were discussing Beachbody's claims, ICON filed a declaratory judgment

---

[68] *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331 (D. Utah 2014) (*MedSpring Grp.*, 2006 WL 581018 at *3).

[69] *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assoc. Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001).

[70] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

[71] *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980-81 (10th Cir. 2012).

[72] *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *1 (D. Utah May 19, 2011).

[73] *Id.*

[74] *Id.*

[75] *Id.*

16

action.[76]  ICON did not, however, serve Beachbody with the complaint and continued to correspond with Beachbody.[77]  After Beachbody sent ICON an additional letter asking it to comply with the request to remove the false advertisement, Beachbody filed a false advertisement complaint in the United Stated District Court for the Central District of California.[78]  Beachbody immediately served ICON with a copy of its coercive complaint.[79]  Subsequently, ICON served Beachbody with the declaratory judgment complaint.

Upon its review of the first-to-file rule, the Utah district court found that ICON engaged in "procedural fencing" and refused to apply the rule.[80]  Specifically, the court stated that the fact that ICON filed a declaratory judgment action made the complaint suspect.[81]  The court was additionally persuaded to reject the first-to-file rule because: (1) "Beachbody delayed filing the California action in a good faith attempt to pursue settlement negotiations[;]" (2) Beachbody's letter stated that the "dissemination by ICON of false and misleading claims is likely to cause serious injury to Beachbody, LLC, and give rise to liability under the federal Lanham Act" and that Beachbody would take all necessary actions if ICON did not comply with its request; (3) "ICON's complaint makes clear that it filed the declaratory judgment action in anticipation of Beachbody's threatened action;" (4) "ICON, by its own admission, understood Beachbody's February 1 letter as 'rais[ing] a reasonable apprehension of the filing of a lawsuit against

---

[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.* at *3.
[81] *Id.*

86305982.2 0081966-00001

ICON[;]'" and (5) "ICON did not serve its declaratory judgment complaint on Beachbody until March 9, one day after Beachbody filed its false advertising complaint."[82]

Similarly, the Sixth Circuit, the circuit where the Kentucky District Court sits, has held that "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing."[83]   Indeed, the Sixth Circuit and district courts within it have generally refused to apply the first-to-file rule when a declaratory judgment action is filed before a coercive action involving the same parties and issues.[84]   As the Sixth Circuit wrote in *AmSouth Bank v. Dale*, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, **a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit**."[85]

The Sixth Circuit's holding was adopted and applied in *Van Andel*.  In *Van Andel*, plaintiffs filed suit alleging trademark infringement and unfair trade practices. The parties had

---

[82] *Id.; see also MedSpring Grp.*, 2006 WL 581018 at *4 (holding that "[a] declaratory suit is immediately suspect as an improper anticipatory filing because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense.").

[83] *Id.* (citing *Tempco*, 819 F.2d at 749–50) ("[T]he mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation ... to adopt such a rule here.") (internal citations omitted)).

[84] *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 (6th Cir. 2004) ("In any case, the first-to-file rule is not a strict rule and more often than not gives way in the context of a coercive action filed subsequent to a declaratory action."); *UAW v. Dana Corp.*, 1999 WL 33237054 at *6 (N.D. Ohio 1999) ("Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit."); *Van Andel Institute v. Thorne Research, Inc.*, Civil Act. No. 1:12–CV–731, 2012 WL 5511912 (W.D. Mich. Nov. 14, 2012); *Catholic Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, (N.D. Ohio 2013).

[85] 386 F.3d at 791 n. 8 (citing *Dana Corp.*, 1999 WL 33237054 *6) (emphasis added).

previously made efforts to resolve the dispute, but, on the day those discussions collapsed, defendants filed a declaratory judgment action in Idaho.  Shortly thereafter, the plaintiffs filed their coercive action in the Western District of Michigan.  Relying on the precedents in the Sixth Circuit, the court declined to follow the first-to-file rule.[86]  The court cited several factors, including defendants' filing of the complaint at 7:30 p.m. the night following settlement discussions as clear indication that defendants were forum shopping.[87]  Likewise, in *Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,[88] a declaratory judgment action was filed by the defendant in its home state before the coercive action was filed by the natural plaintiffs in the Eastern District of Michigan.  Upon review of the factors that weigh against application of the first-to-file rule, the district court rejected defendant's motion to transfer and proceeded with the coercive action.[89]  And, in *DigiTrax Entertainment, LLC v. Universal Music Corp.*,[90] the district court rejected the first-to-file rule and refused jurisdiction over the pending declaratory judgment action holding that:

> DigiTrax's [Declaratory Judgment Action] states, in the very first paragraph, that "DigiTrax brings this complaint seeking declaratory relief because Universal has *threatened it with litigation*, claiming copyright infringement of Universal's copyrighted content used in DigiTrax's Karaoke Cloud Platform." (emphasis supplied). Thus, there is no dispute that DigiTrax knew that Universal asserted copyright claims against it.[91]

---

[86] *Van Andel*, 2012 WL 5511912 at *3.
[87] *Id*.
[88] Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005).
[89] *Id*. at *3.
[90] 21 F. Supp. 3d 917 (E.D. Tenn. 2014).
[91] *Id*. at 925-26.

In light of these Sixth Circuit cases, the Kentucky District Court agreed with Tempur Sealy and found that application of the first-to-file rule in this case was inappropriate and, based on this ruling, granted Tempur Sealy's Motion for Injunctive Relief.[92]

Here, as in *ICON* and *DigiTrax*, Purple's filing of the Utah Pre-emptive Action was nothing more than an effort to beat Tempur Sealy to the courthouse.  Indeed, the following facts demonstrate that Purple has simply engaged in procedural forum shopping:

- Purple, in its first-ever correspondence with Tempur Sealy in response to the cease and desist letter, said that the Utah Pre-emptive Action was filed "to protect [Purple's] interests."[93]

- Like the parties in *DigiTrax*, Purple's Utah Pre-emptive Action blatantly states that, "[h]aving received Tempur + Sealy's threat of suit, Purple is forced to initiate this action for a declaratory judgment and the recovery of damages cause by that wrongful conduct."[94]

- Purple's Utah Pre-emptive Action asserts a claim for abuse of process even though Tempur Sealy had yet to suggest, much less actually file, suit.  As the Kentucky District Court noted at oral arguments, this claim is specious, at best, and indicates that Purple was racing to the courthouse.

---

[92] Kentucky Injunction Order, Exhibit 13, p. 3 (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)) ("The court sees no reason to apply the rule in the context of a coercive action filed subsequent to Defendant's anticipatory suit filed in Utah which is, at its heart, an action for a declaratory judgment.").

[93] February 26, 2016 Letter, Exhibit 10; *see* Complaint, D.E. 2.

[94] Complaint, D.E. 2, ¶ 11.

- After filing suit in Utah on February 26th, Purple made no effort to pursue the Utah Pre-emptive Action, failing even to issue a summons until March 23rd, nearly one month later.

- Even after being served by Tempur Sealy in the Kentucky Coercive Action, Purple still took no steps to issue a summons or pursue the Utah Pre-emptive Action.

- Only of the eve of an injunction hearing in Kentucky did Purple finally file the present Motion and issue a summons on Tempur Sealy.

- And only after the injunction hearing in Kentucky did Purple take the extraordinary step[95] of moving for entry of a temporary restraining order or preliminary injunction under Rule 65.

These undisputed facts clearly establish that the Utah Pre-emptive Action was filed for no reasons other than the hope of keeping any litigation in the confines of Purple's chosen forum and to avoid litigating the False Advertisement in Kentucky.

Accordingly, this dispute, like so many of the cases discussed above, is a perfect example of when a court should decline to follow first-to-file rule.  Purple has not shown that it is likely ever to succeed on the merits of its first-to-file arguments.

## C.    <u>The Kentucky Court had the Authority to Proceed with the Litigation</u>

Purple recently changed tactics, no longer arguing over whether exceptions to the first-to-file rule apply, and instead arguing that the Kentucky Court lacked authority even to address the

---

[95] Purple has failed to cite to a single case in the country in which a district court has issued a temporary restraining order or preliminary injunction under Rule 65 in relation to the first-to-file rule.

issue.[96]  According to Purple, only the first-filed court has the authority to decide the application of the first-to-file rule or its exceptions.  The Tenth Circuit, however, disagrees with Purple's newly-minted argument.

"The first-to-file rule is technically an abdication by the district court; if subject matter jurisdiction exists, **the second court is not required by any constitutional principle to desist**. It does so for the unremarkable reason that the public interest - conservation of judicial resources and minimization of the risk of inconsistent decisions - is better served by so doing."[97]  While the court of first filing will often decide whether to apply the first-to-file rule, the Tenth Circuit has "recognize[d] that the second court may exercise its discretion to enforce the rule" or its exceptions.[98]  In fact, there are several examples within the Tenth Circuit where district courts have expressly recognized the right of the second-filed court to address the first-to-file rule.[99]

This is similar to holdings from other circuits.  For example, in *Nall v. Piper*,[100] the Fourth Circuit affirmed a decision by the District Court of South Carolina to proceed with the second-filed action.  The Fourth Circuit held that the "district court in this instance reasonably concluded . . . that the balance of convenience tipped in favor of the second action having priority. From a review of the record, it is clear that the district court cannot be said to have abused its discretion by this decision."  Similarly, the Ninth Circuit has stated that "[w]hen two

---

[96] D.E. 13.

[97] *Baker v. Microsoft Corp.*, 797 F.3d 607, 618 n.6 (9th Cir. 2015), cert. granted in part, 136 S. Ct. 890, 193 L. Ed. 2d 783 (2016).

[98] *Wallace B. Roderick Revocable Living Trust*, 679 F. Supp. 2d at 1296-97 (discussing numerous Tenth Circuit precedents).

[99] *See*, *e.g.*, *id.*; *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-FHS, 2011 WL 1533073, at *1 (Apr. 22, 2011 E.D. Ok.); *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010).

[100] 948 F.2d 1282 (4th Cir. 1991).

cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the second district court to exercise its discretion to transfer, stay, or dismiss the second suit in the interests of efficiency and judicial economy."[101]  As already discussed above, the Sixth Circuit has "a presumption" in favor of the coercive action over the declaratory action, regardless of which action was filed first.[102]  For example, in *Emergency Dictation Serv., Inc. v. Cray Systems, Ltd.*,[103] the district court was the second-filed action and faced a motion to dismiss or transfer.  The district court denied the motion, rejected the application of the first-to-file rule, and proceeded with the litigation.

In fact, one of the best examples in the Tenth Circuit where the second-filed court dealt with the first-to-file rule was actually cited by Purple.[104]  In the *O'Hare* case, the initial suit was initiated in Illinois, but the opinion about whether the first-to-file rule was appropriate stems from an Oklahoma district court decision, the "second-filed" court.[105]  The Illinois Case was dismissed for lack of jurisdiction and during the pendency of the appeal, litigation was also initiated in Arkansas, Texas and Oklahoma.[106]  Subsequently, the Seventh Circuit found that jurisdiction was appropriate and reinstated the Illinois cause of action.[107]  As a result, the Tenth Circuit held "[w]here, as here, the complaint and cause of action is identical to that first filed in another federal forum having prima facie jurisdiction, the United States District Court for the

---

[101] *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1156 (9th Cir. 2007) (citing *Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).

[102] *AmSouth Bank*, 386 F.3d at 791 n. 8 (citing *Dana Corp.*, 1999 WL 33237054 *6).

[103] Civil Act. No. 05-72137, 2005 WL 2769006 (E.D. Mich. Oct. 25, 2005).

[104] *See* Motion, D.E. 6, pp. 14-15.

[105] *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 330 (10th Cir. 1972) ("During the pendency of [the Seventh Circuit] appeal from the dismissal order entered by the Illinois Federal District Court, the Bank commenced identical actions in the court below").

[106] *Id.*

[107] *Id.*

23

Western District of Oklahoma abused its discretion in not granting the Bank's motion to stay proceedings until the first suit had been determined by the United States District Court for the Northern District of Illinois and after all appellate avenues had been availed or waived."[108] Thus, it was the second-filed court that determined that the rule should be applied and a stay should be invoked, not the first-filed court in Illinois, enjoining a different court from enforcing its orders.[109]

Not only is it completely permissible under the Tenth Circuit and in numerous other circuits for the second-filed court to proceed, but permitting the second-filed court to proceed also supports the first-to-file rule's underpinnings of comity and equity.   "**[C]ourts have rejected the [first-to-file] rule when the second-filed action had developed further than the initial matter.**"[110]  In *Polaroid Corp. v. Casselman*,[111] the court noted that the first-to-file rule is generally applied where there has been significant investment of time and resources by the court of first-filing and where "a second suit in such circumstances would be a wasteful duplication of effort and work havoc with the orderly administration of justice."  The same is true in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,[112] *Orthmann v. Apple River Campground, Inc.*,[113] and *Church of Scientology of California v. U.S. Dept. of Army*.[114]  With all of these cases, the court determined that "[i]t would be presumptuous for this [first-filed court] to

---

[108] *Id.*

[109] *Id.*

[110] *Univ. of Pennsylvania*, 850 at 976 (emphasis added; citing several examples).

[111] 213 F. Supp. 379, 381 (S.D. N.Y.1962)

[112] 2012 WL 3277222, at *9 (N.D. Cal. Aug. 9, 2012) ("[T]he Kansas litigation is more developed with that court having invested greater of time and resources into the matter than this Court. It would be presumptuous of this Court to enjoin the Kansas litigation given its relative progress relative to the instant case.").

[113] 765 F.2d 119, 121 (8th Cir. 1985).

[114] 611 F.2d 738, 750 (9th Cir. 1979).

enjoin the [second-filed] litigation given its relative progress relative to the instant case." These courts correctly recognized that judicial efficiency would no longer be met by following the first-to-file rule and that the goals of the rule would be better met by overlooking the rule and deferring to the litigation that was already underway.[115]

As in these cases, the Kentucky Court has already heard and ruled upon a motion for injunction as well as a motion to dismiss, stay or transfer filed by Purple.[116] The Kentucky Court also denied Purple's motion for a stay pending appeal and a motion to clarify the Kentucky Injunction Order.[117] Ultimately, this Court is faced with the prospect of wading into a dispute that is already well under way on the merits in Kentucky. Such a prospect would require the parties to engage in multiple fights on multiple fronts with the chance of contradictory outcomes. It would also unnecessarily waste the Courts' and the parties' time and resources.

Contrary to Purple's new argument, the Kentucky Court clearly had the authority to determine whether the first-to-file rule was applicable in this case. And the Kentucky Court considered the applicable law and facts and correctly concluded that the first-to-file rule was inapplicable. This Court should not reach a contrary conclusion.

---

[115] *Church of Scientology*, 611 F.2d at 750 (quoting *Crawford*). Despite Purple's argument otherwise, the Kentucky District Court found that it had both subject matter and personal jurisdiction over Purple.

[116] See Exhibit 12.

[117] *See* Exhibit 13.

25

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Tempur Sealy respectfully requests that this Court deny Purple's Motion.

DATED: April 12, 2016

<div style="margin-left: 50%">

*/s/ Kenneth B. Black*
Kenneth B Black
David L. Mortenson
STOEL RIVES LLP


David A. Owen (pending admission)
Matthew A. Stinnett (pending admission)
DICKINSON WRIGHT PLLC

Attorneys for Tempur Sealy International, Inc.

</div>

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2016, I caused a true and correct copy of the foregoing **OPPOSITION TO WONDERGEL, LLC'S MOTION FOR ORDER ENJOINING DEFENDANT'S PROSECUTION OF SECOND-FILED ACTION** to be served via CM/ECF on the following:

- Casey K. McGarvey  casey@edizone.com
- Mark D. Taylor  mtaylor@lewishansen.com


*/s/ Kenneth B. Black*